FREUND LEGAL
Jonathan D. Freund (SBN 157357)
    *jonathan@freundlegal.com*
Craig A. Huber (SBN 159763)
    *craig@freundlegal.com*
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310-247-2165
Fax: 310-247-2190

Attorneys for Plaintiff,
        JOAN CELIA LEE, as Trustee for the
        Lee Family Survivor's Trust A Date October 12, 1985

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN CELIA LEE, as Trustee for the Lee Family Survivor's Trust "A" Date October 12, 1985;<br><br>        Plaintiff,<br><br>    v.<br><br>POW! ENTERTAINMENT, INC., a Delaware Corporation; and DOES 1 through 10, inclusive, in their individual and official capacities;<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **Declaratory Relief (IP Assets) (28 U.S.C. §§2201-02);**<br><br>2. **Declaratory Relief (Name and Likeness);**<br><br>3. **Cybersquatting in Violation of 15 U.S.C. § 1125(d); and**<br><br>4. **Injunctive Relief**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JOAN CELIA LEE, as Trustee for the Lee Family Survivor's Trust A Date October 12, 1985:

**PARTIES**

1.      Plaintiff JOAN CELIA LEE, known as JC Lee (hereinafter "JC") is the only child of the late Stan Lee (hereinafter "Stan Lee") and is the trustee for the Lee Family Survivor's Trust A Date October 12, 1985 (hereinafter "Lee Trust").   Both JC and The Lee Trust have an interest in and co-manage and continue to co-own and co-manage, Stan Lee's intellectual property rights since his death on November 12, 2018.

2.      The Lee Trust is operated in Los Angeles County, California.  The Lee Trust is successor in interest as assignor of intellectual property rights of Stan Lee, and a co-owner of the intellectual property rights of Stan Lee and is authorized and obligated to pursue this litigation to obtain a declaration regarding certain valuable intellectual property rights, including a range of copyrights and trademarks, as well Stan Lee's publicity rights to his name and likeness.

3.      Defendant, POW! ENTERTAINMENT, INC. (hereinafter "POW!") is a corporation organized and existing under the laws of the State of Delaware and has conducted business and had a principal office in Beverly Hills, California located within the Central District of California, as well as in its capacity as subsidiary and affiliate of companies incorporated in other foreign jurisdictions.

4.      The true names and capacities of the Defendants named in this action as Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue them by such fictitious names.  Plaintiff will amend this Complaint to set forth their true names and capacities when their identity has been ascertained.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims advanced here pursuant to 28 U.S.C. § 1331 and §1138 and 28 U.S.C. §§ 2201-02 (the Declaratory Judgment Act) in that the issues arise under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*. and the

Lanham Act under 15 U.S.C. § 1121.  This Court also has jurisdiction in all other claims under 28 U.S.C. 1338(b) and pendent jurisdiction.

6.     At all times material hereto, the defendants and their controlling individuals knew that their wrongful actions, would cause the damages claimed herein within the Central District of California and around the world, such that it would not offend principles of fairness for this Court to exercise jurisdiction over the named defendants.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the activities and events occurred within this district and the defendants are conducting business, have principal office locations and/or are residents within this district.

## PRELIMINARY STATEMENT

8.     This is an action to vindicate the creator rights and brand of Stan Lee, the most influential and successful creator of superhero characters in history.  It is an effort to fulfill the covenant Stan Lee made with his namesake company and to remedy the wrongs inflicted by trusted business associates over the last two decades.

9.     Stan Lee became the father of the modern superhero by creating characters who, along with their superpowers, also possessed human foibles and frailties, such as amity, goodwill and trust, which made these characters relatable to his readers.  Mr. Lee's varied slate of superhero characters, while assorted and distinct in their appearances and powers, all shared the same goal:  to right the wrongs visited upon the innocent by the miscreants and ne'er-do-wells operating only to further their own self-interest at the expense of everyone else.  Many of the lurid villains in his stories emerged from the ranks of those once trusted by the avenging superhero—individuals who were uniquely situated to exploit their once trusted position to further their dastardly enterprises.  The facts of this case, while not involving a superhero character or menacing other-worldly villain, read just like one Stan Lee's fictional comic-book stories.  The difference here is, unfortunately, the

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

characters are real and the wrongs alleged to have been visited upon Mr. Lee by those he most trusted, actually happened.  Truth is indeed sometimes stranger than fiction.

10.     By this lawsuit, Stan Lee's heir and Estate seek to perform the covenant Stan Lee made with his namesake company and remedy the wrongs inflicted by trusted business associates over the last two decades.  It is intended to restore the rights he assigned to the namesake company he founded when he was liberated from a 60-year career with Marvel Comics, the comic book company he founded and creatively directed to become the preeminent Superhero entertainment company in the world.

11.     Stanley Martin Lieber—the creator and owner of the "Stan Lee" persona and identity— began his iconic career as the world's most successful comic book publisher and Superhero creator rather humbly in 1939 as an employee of the predecessor of Marvel Comics, Films and Entertainment.

12.     After devoting 60 years of service to Marvel, during which his vision and creative output elevated the company he founded and created to the pinnacle of the comic book publishing world, in August of 1998 Stan Lee was unceremoniously fired by the purchasers of Marvel after the entity filed for Chapter 11 Bankruptcy protection.

13.     The purchasers took advantage of the Chapter 11 provision that permitted avoidance of all executory contracts to void Stan Lee's exclusive lifetime employment agreement that Stan had received in consideration for his creation of the majority of its world-famous Superhero characters.

14.     Following his severance from Marvel in August 1998, Stan Lee took advantage of the restoration of all of his previously licensed rights to form his own namesake internet-based Superhero entertainment company—Stan Lee Entertainment Inc. a Delaware corporation. This entity was incorporated on October 13, 1998 and Lee was named Chairman, Chief Creative Officer and majority shareholder.  In exchange, he capitalized this new enterprise with a perpetual and unconditional assignment of every

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

imaginable creator right he owned or would own in the future, along with the exclusive rights to his name and likeness.

15.     From October 1998 through December 2000 Lee took advantage of the brand and good will he created with three generations of fans around the world to establish his own publicly traded multi-media entertainment company. It quickly became the largest internet animation studio for superhero entertainment in the world, based in Hollywood. He crafted his first new team of digital age superheroes since the Avengers. Stan Lee was Chairman and Chief Creative Officer of his company but he needed people he could trust with the business experience necessary to run his company. He assembled a team of "trusted partners" to run his company. Kenneth Williams, the President of Sony Digital Studios became CEO. Stan selected entertainment industry veteran, Gill Champion, to serve as his COO and trusted friend. Stan asked his closest friend and personal lawyer, Arthur Lieberman, to serve as Intellectual Property lawyer for the company to oversee and protect the company's intellectual property.

16.     The success of Lee's company sparked his "trusted partners" to join together to devise a plan to take advantage of the dot.com crash of November 2000, to engineer the financial collapse of Lee's company through a series of financing guaranteed to collapse the company's stock so that the company could be placed into Chapter 11 Bankruptcy protection. In this way, they were enabled to loot the assets of Stan Lee Entertainment, a/k/a Stan Lee Media, and enrich themselves at the expense of Stan Lee, the creditors and shareholders. These "trusted" partners achieved their dastardly goals with alacrity and through their betrayal of Stan Lee's trust and lack of business and legal acumen they engineered the misappropriation and theft of Stan Lee's intellectual property rights.

17.     Following the bankruptcy filing, Champion and Lieberman quickly formed a new company—POW! Entertainment—a company wholly owned and controlled by them and Stan. They induced Stan Lee to abandon Stan Lee Entertainment and join with them to attempt to replicate the success of Lee's company for their personal benefit by

purloining its assets under the subterfuge of a fraudulent and unconsummated Bankruptcy sale while convincing Stan Lee to take actions they knew violated the exclusive rights and obligations that Stan Lee had bestowed on his namesake company.

18.    In fact, from November 2001 through Stan Lee's death in November 2018, the former management of Stan Lee Entertainment, Gill Champion, Arthur Lieberman and Junko Kobyashi, used their new company POW! Entertainment to deceive and manipulate Stan into believing he had retained his creator rights and rights to his name and likeness, which they knew and concealed remained assigned to and the property of Stan Lee Entertainment Inc.  Between 2001- 2017, they misled Stan into believing that he could and should reassign those rights to POW! Entertainment on no less than 6 occasions, each based on convincing Stan he had retained rights that he had in fact validly assigned to Stan Lee Entertainment.

19.    When Stan Lee died in November, 2018, his daughter, as his only heir and Trustee of his Estate, gathered a forensic team of lawyers and accountants to investigate the facts surrounding the actions of Stan Lee's supposed partners with whom Lee had stopped communicating during the last year of his life.  In so doing, it was learned the extent to which the rights to Stan Lee's intellectual property had been looted, muddied and entangled by POW! and a range of bad actors enabled by POW!.  In fact, it was discovered that POW! and Champion had purported to assign Stan Lee's name and rights of publicity to Camsing International, a demonstrably criminal Chinese enterprise that appears to have taken a majority stake in POW!.

20.    Through this action, Stan Lee's only heir, operating as trustee for the Lee Family Trust, has joined forces with Stan Lee's original company, Stan Lee Entertainment Inc., to not only expose manifold frauds visited upon Stan Lee from 2001 through 2018 by Defendant, its CEO Gill Champion and a range of unsavory characters, but to also vindicate and clear title to Stan Lee's intellectual property while prohibiting Defendant

from further conversion and infringement of Stan Lee's creator rights and rights to his name and likeness.

### STATEMENT OF FACTS

21.     Stan Lee was a 95-year old American Hollywood executive, producer, comic book writer, editor, actor, publisher, television personality, and the founder and creator of Marvel Comics and the majority of characters that populate the most successful universe of movie character franchises in history.  He was considered the godfather of the modern-day superhero and a global pop culture icon.  He has been attributed to have exerted more influence over the comic book and entertainment industry, and the global pop culture,  than any other modern figure. He was revered by fans and enthusiasts of all ages world-wide and amongst all cultures.  He died in November of 2018.

22.     Upon his death, Mr. Lee's only child, JC, as the trustee for the Stan Lee and Joan B. Lee Family Trust ("Trust"), took over ownership and management of the Trust, which owns and manages Lee's personal property rights.

23.     During his lifetime, Stan Lee co-created some of Marvel's most recognizable characters including Spider-Man, Iron Man, The Incredible Hulk, The Fantastic Four, X-Men, The Avengers, Thor, Doctor Strange, Black Panther,  Ant Man,  Daredevil and hundreds more fictional characters, introducing complex, naturalistic characters and a thoroughly shared universe into superhero comic books.  Lee subsequently led the expansion of Marvel Comics from a small division of a publishing house to a large multi-media company which was acquired by the Walt Disney Company in 2010.

24.     Stan Lee received the Vanguard Award from the Producer's Guild of America in 2012 and was inducted into the comic book industry's Will Eisner Comic Book Hall of Fame in 1994 and The Jack Kirby Hall of Fame in 1995. In 2008, President George Bush presented Stan with the National Medal of Art at the White House for his consummate skills as one of America's foremost story tellers.   He received a Star on the Hollywood Walk of Fame in 2011.

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

25.    Lee spent approximately 60 years of his career as an employee of Marvel and when that entity filed for Chapter 11 bankruptcy in or about August of 1998, Stan Lee was fired by Marvel's purchaser, thus freeing him from his exclusive employment agreement with Marvel.  This, in turn, enabled him to found, Stan Lee Entertainment Inc as an internet based Super Hero animation publishing and entertainment company - to join in the dot.com revolution and create a new universe of Stan Lee Global Super Heroes for the digital age.

26.    On or about October 15, 1998, Stan Lee executed an "Employment Agreement/Rights Assignment with Stan Lee Entertainment, Inc. (hereinafter referred to simply as the "October 15, 1998 Agreement").  This agreement was intended to and did in fact create an unconditional, irrevocable, and perpetual assignment of all of Stan Lee's pertinent IP rights and states in pertinent part:

> "I [Stan Lee] assign, convey and grant to [Stan Lee Entertainment, Inc.] forever, all right, title and interest I may have or control, now or in the future, in the following: Any and all ideas, names, titles, characters, symbols, logos, designs, likenesses, visual representations, artwork, stories, plots, scripts, episodes, literary property, and the conceptual universe related thereto, including my name and likeness (the 'Property') which will or have been in whole or part disclosed in writing to, published, merchandised, advertised, and/or licensed by [Stan Lee Entertainment, Inc.], its affiliates and successors in interest and licensees (which by agreement inures to [Stan Lee Entertainment, Inc.'s] benefit) or any of them and any copyrights, trademarks, statutory rights, common law, goodwill, moral rights and any other rights whatsoever in the Property in any and all media and/or fields, including all rights to renewal or extensions of copyright and make applications or institute suits therefore (the 'Rights')."

27.    In return for Stan Lee's assignment of all of his rights of any kind to his creative universe as of October 15, 1998 and into the future, Stan Lee Entertainment, Inc. and its successors in interest conveyed to Stan Lee shares in the companies, agreed to pay and did, in fact, pay to Stan Lee approximately $250,000.00 per year in salary, bonuses,

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

stock options, expenses, fringe benefits, insurance and other consideration as set forth therein, including over 3.5 million shares in plaintiff's stock, which had a market value of over $100 million in February of 2000, in addition to more than $750,000 in additional compensation paid on behalf of the company by other shareholders.

28.     The October 15, 1998 Agreement was also ratified by Stan Lee over a year later on or about October 19, 1999, in an Amendment to Employment Agreement/Assignment Agreement.  Said Amendment to Employment Agreement/ Assignment Agreement contained express representations by Stan Lee that the Amendment and ratification was being signed after consultation with his financial consultants and legal counsel. The Agreement further bound Stan Lee's successors in interest, heirs and assigns to provide ongoing support and protection of the rights that were unconditionally assigned.  Around this time, Gill Champion, the then COO of Stan Lee Entertainment, caused to be filed a 10K report incorporating the Assignment Agreement therein further ratifying the Assignment Agreement.

29.     At the time the October 15, 1998 Agreement was executed, Stan Lee was not under contract with any other person or entity with regard to any of his intellectual property rights and he had full authority and rights to convey all of his rights to Stan Lee Entertainment, Inc.

30.     The company was an immediate success and built the foremost Hollywood internet animation and entertainment studio with 165 employees and topped Disney and Warner Bros in winning the Web Award for the best Entertainment Portal on the internet. In fact, from October 1998 through December 2000 Lee once more exhibited a level of fecundity and creative output that not only belied his advancing age but further cemented his legacy as a true visionary and tireless wellspring of creative endeavor.  During this time, Lee created the largest internet animation studio for superhero entertainment in the world.  He crafted his first new team of digital age superheroes since the Avengers.

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

31.     During this time, Stan Lee enlisted an entertainment veteran named Gill Champion as the company's COO as well as hiring the former CEO of Sony Digital Studios, Ken Williams as President and using Lee's personal lawyer, Arthur Lieberman, to oversee and protect the company's intellectual property.

32.     With the dot.com crash of December 2000,  Lee's company ran out of operating capital due to deals negotiated by Williams and Champion.  As it turns out, the goal of these supposed partners was to, through their poor business deals, force the company to cease operations due to a lack of operating capital and then seek Chapter 11 bankruptcy protection so they themselves could loot the assets of Stan Lee Entertainment, a/k/a Stan Lee Media, and enrich themselves at the expense of Stan Lee, the creditors and shareholders.  These "trusted" partners achieved their dastardly goals with alacrity.

33.     Following the bankruptcy filing, Champion and Lieberman quickly formed a new company—POW! Entertainment—a company wholly owned and controlled by them and them alone.  It was during this time these characters induced Lee to abandon Stan Lee Entertainment and join with them to attempt to replicate the success of Lee's company by purloining its assets under the subterfuge of a Bankruptcy sale.

34.     POW! was incorporated by Lieberman on November 8, 2001, with the express purpose of exploiting the Stan Lee IP assets which Lee created with Stan Lee Media, which were placed into Chapter 11 Bankruptcy protection in February of 2001.

35.     The supposed Sale of Assets that was intended to convey Stan Lee Media created IP to POW! was never legally accomplished.   This Court having already ruled in 2009 that the Lee IP rights had never transferred from Stan Lee Media, Inc. to POW! or any affiliate of POW!

36.     From November 2001 through the Stan Lee's death in November 2018, Champion and Lieberman, and other of their cohorts, manipulated and induced Lee into believing he had retained ownership of his creator rights and rights to his name and

likeness, which they knew and concealed were assigned to Stan Lee Entertainment Inc,
and yet continued to attempt to have Lee assign to POW! over the years.

37.     Again, the most glaring unscrupulous activity was falsely claiming the IP
rights to Stan Lee's Identity.  Under the operative agreements, Stan Lee, and by virtue of
being its successor in interest, the Lee Trust—and obligee under the assignment agreement
and co-holder of Stan Lee's rights, had agreed under Paragraph 4(b) of the agreement to
execute upon request any document deemed necessary to effect the purposes of the
agreement - and in 4(c) that it will not assist others in claiming any rights.

38.     In June, 2019 it was revealed in multiple media outlets in China and around
the world with the arrest and jailing of Vivian Lo, the Founder and Chairman of Camsing
International, the current alleged and erstwhile parent of POW!,  that Lo and Camsing,
aided by Champion, have been engaged over the last three years in a massive $1.2 billion
finance fraud on the major investment funds in China using the credibility and perceived
value of the Lee Rights to advance their criminal enterprise. It has been reported that the
entire executive staff of 11 people, including the CFO, have been arrested and jailed in
connection with this historic finance fraud in China in which they are facing prosecution
for a range of unlawful acts and conduct, besmirching the name and brand of Stan Lee as a
principal asset used by the alleged criminals to gain the trust and investment of the largest
investment funds in the People's Republic of China. The ongoing frauds by POW! in
assigning licenses to use the Lee Rights to innocent parties around the world must be
curtailed at the earliest opportunity for this Court to act.

39.     By this action, the Lee Trust intends to correct Stan Lee's breaches of the
terms and covenants in the 1998 Agreement with his original company, Stan Lee
Entertainment Inc. of Delaware (which were unwittingly committed by him under undue
influence and fraudulent inducement of his partners in POW! and others acting by and
through and in association or at the behest of POW!), and remedy the results of the various
invalid assignments made by Stan Lee since his inducement to abandon Stan Lee

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

1  Entertainment Inc. and its successor, Stan Lee Media Inc. in February, 2001.

2  Furthermore, through this action, the Lee Trust intends to erase and clear the cloud on the

3  intellectual property delineated herein.  The intent is to ensure the Lee Trust is able to

4  perform the duties it assumed under Stan Lee's Rights Assignment Agreement and act in

5  accord with the obligations under the Assignment by obtaining a Declaratory Judgment to

6  the effect that all rights, title and interest to Stan Lee's IP assets and name and publicity

7  rights now reside, and have always resided, with Stan Lee Entertainment Inc. since their

8  unconditional and perpetual assignment by Stan Lee in October, 1998 and now in

9  association with the Lee Trust.

10  **COUNT I: ACTION FOR DECLARATORY RELIEF**

11  **[Against All Defendants and Does 1-10]**

12  **[As to Ownership of the IP Assets]**

13  40.    Plaintiff realleges and incorporates by reference each and every allegation set

14  forth in paragraphs 1 through 39 inclusive.

15  41.    Plaintiff seeks a declaratory judgment that defendants are not the rightful and

16  legal owner of the IP Assets and that defendants are barred from so contending.

17  42.    Plaintiff is the rightful party in interest and legal co-owner of the Assets.

18  43.    The defendants have asserted an actual, present, adverse and antagonistic

19  interest to the Assets.

20  44.    As a direct and proximate result of the actions of the defendants as described

21  herein, plaintiff has also suffered damages and continues on a daily basis to suffer

22  monetary and brand damages.

23  45.    Furthermore, as a direct and proximate result of the actions of the defendants

24  as described herein, plaintiff has also suffered liability to the original Assignee for

25  monetary and brand damages and said damage continues on a daily basis.

26  46.    With regard to those equitable aspects of this cause, plaintiff has no adequate

27  remedy at law.

28

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

47.     Based upon the foregoing, there is a bona fide, actual, present and practical need for a declaratory judgment from this Court.

48.     Based upon the foregoing, the declaratory judgment sought deals with a present, ascertained, or ascertainable state of facts and/or a present controversy as to the state of facts.

49.     Based upon the foregoing, plaintiff is insecure and uncertain with respect to its rights, status and other equitable and legal relations with regard to its defense of the October 15, 1998 Agreement, and is in need of a declaratory judgment from this Court affording relief from such insecurity and uncertainty.

## COUNT II: ACTION FOR DECLARATORY RELIEF

### [Against All Defendants and Does 1-10]

### [As to Rights to Stan Lee's Name and Likeness]

50.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 inclusive.

51.     Plaintiff seeks a declaratory judgment that defendants have no right to use the name, likeness, symbols, logos, designs, and visual representations of Stan Lee.

52.     Pursuant to the October 15, 1998 Agreement, Stan Lee, conveyed to Stan Lee Entertainment Inc. the following:

"I [Stan Lee] assign, convey and grant to [Stan Lee Entertainment, Inc.] forever, all right, title and interest I may have or control, now or in the future, in the following: Any and all . . . symbols, logos, designs, likenesses, visual representations, . . . including my name and likeness (the 'Property') . . . and any copyrights, trademarks, statutory rights, common law, goodwill, moral rights and any other rights whatsoever in the Property in any and all media and/or fields, including all rights to renewal or extensions of copyright and make applications or institute suits therefore (the 'Rights')."

(For purposes of this cause of action, the items described in the foregoing quoted paragraph shall be referred to, for simplicity purposes, as "Stan Lee's Name and Likeness").

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

53.     Plaintiff seeks a declaratory judgment from this Court that defendants are not the rightful and legal owner of Stan Lee's Name and Likeness and that defendants are barred from so contending.

54.     Plaintiff is the Assignor obligated to defend its October 20, 1998 Assignment and is the present co-owner of Stan Lee's Name and Likeness.

55.     The defendants have asserted an actual, present, adverse and antagonistic interest to Stan Lee's Name and Likeness.

56.     As a direct and proximate result of the actions of the defendants as described herein, plaintiff has also suffered damages.

57.     With regard to those equitable aspects of this cause, plaintiff has no adequate remedy at law.

58.     Based upon the foregoing, there is a bona fide, actual, present and practical need for a declaratory judgment from this Court.

59.     Based upon the foregoing, the declaratory judgment sought deals with a present, ascertained, or ascertainable state of facts and/or a present controversy as to the state of facts.

60.     Based upon the foregoing, plaintiff is insecure and uncertain with respect to its rights, status and other equitable and legal relations regard the October 15, 1998 Agreement, and is in need of a declaratory judgment from this Court affording relief from such insecurity and uncertainty.

## COUNT III: CYBERSQUATTING IN VIOLATION OF 15 U.S.C. § 1125(d)

### [Against All Defendants and Does 1-10]

61.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 60 inclusive.

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

62.     The defendants have registered and continue to use the following domain names, and all unnamed social media accounts linked to or related to the Stan Lee persona and brand which are likely to cause confusion among the consuming public, who will be led to believe that plaintiff is affiliated with defendants, and/or has approved of defendants' use and registration of those domain names and the content contained on the website at those domain names or websites linked to the websites:

> *https://therealstanlee.com*
>
> *www.stanleepresents.com*
>
> *http://www.stanleeweb.com;*

63.     Defendants' registration and use of the domain names dilutes the distinctiveness of the name and distinctive mark "Stan Lee" and reduces the ability of the name and mark "Stan Lee" to distinguish goods and services offered by plaintiff from goods and services offered by others, including defendants.

64.     Plaintiff does not have the ability to control the quality of the goods and services offered and sold by defendants and cannot control the information contained on the aforementioned websites and domains.

65.     Plaintiff does not have the ability to control defendants' use of the domain name or the websites associated with them.

66.     Stan Lee's name is a distinctive and famous mark, was a distinctive and famous mark at the time the domain names identified in this cause of action were registered, and at all other times relevant hereto, pursuant to the Anti Cybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d).

67.     Plaintiff is informed and believes that defendants had and continue to have a bad faith intent to profit from the name "Stan Lee" which is protected as a distinctive mark and personal name under § 3002(a) of the Anti Cybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d).

FREUND LEGAL
427 North Camden Drive
Beverly Hills, CA 90210

1    68.    Defendants' acts as described herein constitute violations of § 3002(a) of the

2    Anti Cybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d).

3    69.    Plaintiff is entitled to a judgment from this Court compelling defendants to

4    transfer ownership in the domain names identified herein to plaintiff. Alternatively,

5    plaintiff is entitled an order compelling the cancellation of said domain names pursuant to

6    § 3002(a) of the Anti Cybersquatting Consumer Protection Act of 1999, 15 U.S.C. §

7    1125(d).

8    70.    Plaintiff is entitled to a temporary and permanent injunction enjoining

9    defendants from any use of the domain names and website content identified in this cause

10   of action pursuant to § 3003 of the Anti Cybersquatting Consumer Protection Act of 1999,

11   15 U.S.C. § 1116(a).

12   71.    Plaintiff is entitled to a judgment from this Court awarding to plaintiff its

13   actual damages proximately caused by the defendants, or in the alternative, statutory

14   damages in an amount up to the sum of One Hundred Thousand Dollars ($100,000.00)

15   pursuant to § 3003(b) of the Anti Cybersquatting Consumer Protection Act of 1999, 15

16   U.S.C. § 1117(a) and (d).

17   **COUNT IV: INJUNCTIVE RELIEF**

18   **[Against All Defendants and Does 1-10]**

19   72.    Plaintiff realleges and incorporates by reference each and every allegation set

20   forth in paragraphs 1 through 71, inclusive.

21   73.    Through their actions above described, Defendants have, and continue to

22   cause, irreparable harm to Plaintiff and they should be compelled through an affirmative

23   injunction from taking any further action to claim an ownership interest in or otherwise

24   exploit the intellectual property rights subject to this action.

25   74.    Plaintiff has no other plain, speedy or adequate remedy, and injunctive relief

26   prayed for below is necessary and appropriate at this time to prevent irreparable loss to

27   Plaintiff's interests.

28

*FREUND LEGAL*
*427 North Camden Drive*
*Beverly Hills, CA 90210*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JOAN CELIA LEE prays for judgment as follows:

1.     For a declaration that Defendants have no rights to any of Stan Lee's IP, name, likeness, or identity and a declaration that any attempted purported conveyance of rights by Stan Lee to Defendants are void;

2.     For a permanent injunction permanently enjoining the Defendants, and those acting on their behalf or on their authority, from using Stan Lee's identity, name, image or likeness to promote Defendants' business, goods or services;

3.     For a declaration that Defendants do not have any (exclusive or otherwise) right to use Stan Lee's identity, image, name or likeness, or any other form of intellectual property ownership referenced in the Complaint, including all social media, copyrights, trademarks and the like and that any purported assignment to Defendants be deemed void ab initio;

4.     For compensatory damages, plus interest;

5.     For the costs of suit;

6.     For any and all further relief as this Court may deem appropriate.

Dated: September 26, 2019              FREUND LEGAL

                                       By:_____

                                       Jonathan D. Freund,
                                       Craig A. Huber,
                                       Attorneys for plaintiff,
                                       JOAN CELIA LEE

## **DEMAND FOR JURY TRIAL**

Plaintiff, by and through its undersigned counsel, hereby demands a jury trial on any and all issues so triable pursuant to Federal Rules of Civil Procedure, Rule 38(b) and Local Rule 38-1.

Dated: September 26, 2019

FREUND LEGAL

By:_____

Jonathan D. Freund,
Craig A. Huber,
Attorneys for plaintiff,
JOAN CELIA LEE

18
COMPLAINT