FREUND LEGAL LLP
Jonathan D. Freund (SBN 157357)
        *jonathan@freundlegal.com*
Craig A. Huber (SBN 159763)
        *craig@freundlegal.com*
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310-247-2165
Fax: 310-247-2190

Attorneys for Plaintiff,
        JOAN CELIA LEE, as Trustee for the
        Lee Family Survivor's Trust A Date October 12, 1985

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOAN CELIA LEE, as Trustee for the Lee Family Survivor's Trust "A" Date October 12, 1985;

        Plaintiff,

        v.

POW! ENTERTAINMENT, INC., a Delaware Corporation; and DOES 1 through 10, inclusive, in their individual and official capacities;

        Defendants.

Case No.: 2:19-cv-08353
*[Hon. Otis Wright]*

**PLAINTIFF JOAN CELIA LEE'S OPPOSITION TO DEFENDANT POW! ENTERTAINMENT, INC'S MOTION FOR SANCTIONS; REQUEST FOR ATTORNEY'S FEES AND COSTS AS COUNTER SANCTIONS PURSUANT TO FRCP 11(c)(2)**

***Declaration of Jonathan D. Freund and Evidentiary Objections Filed Concurrently Herewith***

Hearing Date:  January 6, 2019
Time:              1:30 p.m.
Dept.:             5-D

<u>*Motion Filed*</u>:              ***December 3, 2019***
<u>*Safe Harbor Expired*</u>: ***December 5, 2019***

1    Plaintiff JOAN CELIA LEE, as Trustee for the Lee Family Survivor's Trust A Date

2    October 12, 1985 (hereafter "JC"), hereby Opposes the Motion for Sanctions Under Rule

3    11 by Defendant POW! Entertainment, Inc. (hereafter "POW!").

4    In addition to denying POW!'s Motion for the reasons set forth below, JC

5    respectfully requests this Court, pursuant to Rule 11(c)(1)(A) "[to] award to [JC as the]

6    prevailing on the motion [for sanctions] [her] reasonable expenses and attorney's fees

7    incurred in . . . opposing the motion." Fed.R.Civ.P. 11(c)(1)(A).  JC will bring her Motion

8    with all proper evidentiary support to be set for hearing on a date to be determined by this

9    Court.

10

11   Dated: December 16, 2019                    FREUNDLEGAL

12

13                                               By:_/x/  Jonathan D. Freund_____
                                                 Jonathan D. Freund,
14                                               Craig A. Huber,
                                                 Attorneys for plaintiff,
15                                               JOAN CELIA LEE

16

17

18

19

20

21

22

23

24

25

26

27

28

2
Opposition to Motion for Rule 11 Sanctions

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………3

II.     STATEMENT OF FACTS…………………………………………….....6

III.    LEGAL ANALYSIS………………...………………………………….....6

    A.      POW! Failed to Comply With the Rule 11 Safe Harbor Provisions and its Motion Should be Denied Outright.……….…………………………….....6

        1.      *POW! filed its motion before 21 days had lapsed from the date it served its letter and incomplete motion on JC.*……………………………………7

        2.      *POW! failed to serve a "file ready" motion on JC and thus, the sage harbor time frame never commenced.*…………………….………………9

    B.      Even Assuming POW!'s Motion is not Procedurally Deficient, it has Failed to Prove JC's Complaint is Frivolous or Being Advanced for an Improper Purpose.………………………………………….………………………12

        1.      *JC's Complaint is not frivolous because none of the cases cited by POW! bar the instant case and JC's counsel conducted an objectively reasonable inquiry into the status of the rights at issue before the Complaint was filed.*………………………………………………….………………13

            a.      The rights at issue in the instant Complaint are severable from any issues arising from the Employment Agreement.…………13

            b.      *Res judicata* does not apply here because different parties and different rights were at issue in each of the matters cursorily analyzed by POW!...................................................................15

        2.      *Counsel for JC conducted a reasonable and competent inquiry before filing the Complaint at issue*…...………………………………………19

        3.      *JC's Complaint was not filed for an improper purpose but rather to seek a determination regarding the status of certain very important rights held by Stan Lee.*………………......………………………………………21

i

**C.**   **JC Should be Awarded her Reasonable Attorney's Fees and Costs Incurred in Opposing POW!'s Procedurally Flawed and Substantively Meritless Motion for Rule 11 Sanctions.**……………………………………………………………23

**IV.**   **CONCLUSION**………………………………………………………………...…24

## __TABLE OF AUTHORITIES__

<u>CASES</u>

*Abadin v. Marvel Entm't, Inc.*

      09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010)……………………....16

*Barber v. Miller*

      146 F.3d 707. (9th Cir. 1998)…………………………………….....…..8, 9

*Cal. Arc. Bldg. Prods. v. Franciscan Ceramics*

      818 F.2d 1466 (9th Cir. 1987)………………………………………………..20

*Carruthers v. Flaum*

      450 F. Supp. 2d 288 (S.D.N.Y. 2006)……………………………………………8

*Chong v. Kwo, Shin Chang*

      599 Fed. App'x 18 (2d Cir. 2015)………………………………………………10

*Christian v. Mattel, Inc.*

      286 F.3d 1118 (9th Cir. 2002)…………………………………..……12

*Cooter & Gell v. Hartmarx Corp.*

      496 U.S. 384 (1990)…………………………………………………21

*Folta v. Van Winkle*

      2016 U.S. Dist. LEXIS 98681 (AZ 2016)……………………………………8

*G.C. and K.B. Invest., Inc. v. Wilson*

      326 F.3d 1096 (9th Cir. 2003)……………………………………………19–21

*Gelb v. Royal Globe Ins. Co.*

      798 F.2d 38 (2d Cir. 1986)………………………………………………....17

*Holgate v. Baldwin*

      425 F.3d 671 (9th Cir. 2005)………………………………………………8

*Hudson v. Moore Business Forms, Inc.*

      827 F.2d 450 (9th Cir. 1987)………………………………………………20

*Hurd v. Ralphs Grocery Co.*

824 F.2d 806 (9th Cir. 1987)…………...........................................................……20

*Hydranautics v. Fimtec Corp.*

204 F.3d 880 (9th Cir. 2000)…………………………………..………..……15

*Islamic Shura Council of S. Cal. v. FBI*

757 F.3d 870 (9th Cir. 2014)…………………………………………………..8

*Martin v. Henley*

452 F.2d 295 (9th Cir. 1971)…………………………………………………....17

*Metcalf v. Anchorage Daily News, Inc.*

78 F. App'x 24 (9th Cir 2003)………………………………………………...11

*MetLife Bk., N.A. v. Riley*

2010 U.S. Dist. LEXIS 112560 (D. Nev. 2010)…………………………….……9

*Moore v. Keegan Mgmt. Co.*

78 F.3d 431 (9th Cir. 1996)……………………………………………...12, 19, 20

*More v. Chase, Inc.*

2016 WL 928671 (E.D. Cal. Mar. 10, 2016)…………………………………….7

*Nordhorn v. Ladish Co., Inc.*

9 F.3d 1402 (9th Cir. 1993)………………………………………………...15

*Operating Eng'rs Pension Trust v. A-C Co.*

859 F.2d 1336 (9th Cir. 1988)…………………………………………12–13, 20, 22

*Plastic Container Corp. v. Continental Plastics*

607 F.2d 885 (10th Cir. 1979)……………………………………………...17

*ProShipline Inc. v. Aspen Infrastructures LTD*

609 F.3d 960 (9th Cir. 2010)………………………………………………16

*Radcliffe v. Rainbow Constr. Co.*

254 F.3d 772 (9th Cir. 2001)………………………………………………6–8, 10

*Roth v. Green*

466 F.3d 1179 (10th Cir. 2006)…………………………………...…...9

iv

*Safe-Strap Co. v. Koala Corp.*

  270 F.Supp.2d 407 (S.D.N.Y. 2003)…………..………………………………….23

*Sidhu v. Flecto Co.*

  279 F.3d 896 (9th Cir. 2002)…………..……………………………….………....15

*Stiglich v. Contra Costa County Bd. of Supervisors*

  1997 U.S.App. LEXIS 897 (9th Cir. 1997)……………………………………….20

*Taylor v. Sturgell*

  553 U.S. 880 (2008)…………………………………………..…....................16

*Thomas v. Horn*

  570 F.3d 105 (3d Cir. 2009)………………………………………………………17

*Townsend v. Holman Consulting Corp.*

  929 F.2d 1358 (9th Cir. 1990)………………………………………………....22

*Truesdell v. S. Cal. Permanente Med. Grp.*

  293 F.3d 1146 (9th Cir. 2002)…………..…………………………...6, 9, 10n.6

*Winterrowd v. Am. Gen. Annuity Ins. Co.*

  556 F.3d 815 (9th Cir. 2009)…………..………………………………………....8

*Woods v. Truckee Water Auth.*

  2007 WL 2264509 (D. Nev. 2007) ………..………………………………...10

*Zaldivar v. City of Los Angeles*

  780 F.2d 823 (9th Cir. 1986)……………………………………………...21–22

<u>STATUTES</u>

California Civil Code

  Section 3344.1……………………………………………………...…5, 16

Federal Rules of Civil Procedure

  Rule 5…………………………………………………………………….6, 8

  Rule 6(d)………………………………………………………………...6, 8, 9

  Rule 11…………………………………………………….....6–10, 12, 13, 19–23

Opposition to Motion for Rule 11 Sanctions

Rule 11(b)(2)……………………………………………………………………………………12

Rule 11(c)(1)(A)…………………………………………………………………..……2, 23

Rule 11(c)(2)…………………………………………………………………………………10

Rule 12(b)(6)……………………………………………………………………………………6

Rule 56…………………………………………………………………………….....6

Local Rules of the Central District of California

Local Rule 7-5……………………………………………………………………....9

Local Rule 7-5(b) …………………………………………………………………10

TREATISES

Georgene M. Vairo, *Rule 11 Sanctions: Case Law Perspectives And Preventive Measures*

Section 4.01[c][3][F]……………………………………………………………………23

Section 7.03(d)(1)(C)…………………………………………………………….....23–24

Miller, Federal Practice and Procedure (2d Ed. 2002)

Section 4405………………………………………………………………….....16

Moore's Federal Practice

Section 0.443[5]……………………………………………………………...17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In its zeal to thwart JC's righteous effort to vindicate and settle questions regarding her later father, Stan Lee's post-mortem publicity and other intellectual property rights—to effectively stifle her in the same way it did Stan Lee during his lifetime—POW! has become the very thing it accuses JC of being: a trafficker in a procedurally deficient and substantively meritless pleading.  In fact, POW!'s Rule 11 Motion is so bereft of adherence to the strict procedures governing such a motion that by filing it when it did and in the manner it did, POW! has subjected itself to Rule 11 sanctions.

More specifically, because Rule 11 sanctions constitute a very serious accusation against a party and its counsel, the law requires strict compliance with all procedural mandates to even warrant presenting the substance of such a motion to a court for consideration.  The Rule requires that before a court may even consider levying sanctions, the moving party must provide the target of its motion with safe harbor, which is to say the opposing party must be served with a "file-ready" motion at least 21 days before any Rule 11 motion may be filed during which the opposing party may opt to withdraw the allegedly offending pleading.  And where a party seeks to commence the Rule 21-day safe harbor by service of its "file-ready" motion either by first class mail or electronic service, an additional 3 days must be added to the safe harbor time period.

Here, as shown below, POW! admittedly served what it apparently believed to be a draft motion on counsel for JC on November 11, 2019 by way of "email and first-class certified mail" and then, on December 3, 2019—only 22 days later—POW! filed this motion.  The law is clear, however, by serving the supposed draft motion in the manner served, POW! was required to add 3 days to the safe harbor, which means that it must have waited until December 5, 2019 for safe harbor to expire before filing this motion.  On this ground alone this Court must deny POW!'s motion.

As if that were enough, the document POW! mailed to JC's counsel on November

FREUNDLEGAL PC
427 North Camden Drive
Beverly Hills, CA 90210

11, 2019 was far from a "file-ready" motion.  The draft motion, while making repeated reference to Exhibits (over 17 of them comprising 174 pages of documents filed with POW!'s Request for Judicial Notice, served for the first time with this instant motion), failed to include a single exhibit to support the motion.  What is more, the document ultimately filed prematurely on December 3, 2019 is substantively different than the draft served on counsel.  The arguments are changed in both substance and format.  Whole paragraphs are deleted.  The exhibits are cited and purport to be analyzed (though, as shown below, the analysis is clearly wanting).  And the preposterous demand for "5 Million Dollars in fees and Costs" was removed from the filed document (though the demand remains in the Table of Contents in the filed document) after JC's counsel pointed out just how ridiculous that claim was.  The simple fact is the document served on November 11, 2019, which POW! claims commenced the safe harbor, is not the same document ultimately filed and certainly was not "file-ready" as required under Rule 11.[1] Again, given Rule 11's strict procedural rules, this Court must deny POW!'s motion on procedural grounds.

Even assuming POW!'s motion somehow survives its blatant procedural shortcomings, POW! has failed to demonstrate JC's Complaint is either frivolous or being advanced for an improper purpose.  Where, as here, a complaint is the subject of a Rule 11 motion, the moving party is tasked with proving the pleading lacks substantive merit and was filed without a reasonably competent inquiry into the subject matter of the complaint. This is a two-prong analysis and POW! did not even bother addressing the second prong. Nonetheless, JC's counsel has more than amply shown the investigation and factual basis for the Complaint was both reasonable from an objective standpoint and competent.

On the merits, what POW! apparently refuses to understand is the agreement at issue in this case has two distinct subjects:  Stan Lee's lifetime employment and his

---

[1] In fact, it appears counsel for POW! perjured himself by certifying that he served the instant motion on counsel on November 11, 2019 when the motion now before the Court is not the same motion served on that date.  See Rule 11(c)(2) Certificate at pg. 23 of POW!'s Motion.

wholesale alienation "forever" of certain intellectual property rights. Those rights are severable, and the latter rights have not been addressed squarely by any court. Indeed, POW!'s sole argument with respect to the supposed lack of merit to JC's case here is that a range of other lawsuits, brought by and against parties distinct from those here, and involving rights that are not the subject of this lawsuit, somehow still act as a *res judicata* bar to this action. POW! is wrong. Not one of those cases or decisions is on point here.

For one thing, at least some of the rights being examined here did not even exist when those other matters were decided, *i.e.*, Stan Lee's post-mortem rights to publicity and his name and likeness under California Civil Code § 3344.1. Moreover, none of those cases dealt with the assignment clause of the 1998 Agreement. They were all concerned with enforcement of the employment terms or statute of limitations bars and other matters that are distinct from what JC is advancing here. Simply put, there is no *res judicata* bar presented by any of the decisions referenced by POW! in its flawed motion.

POW! has also failed to introduce any admissible evidence to even remotely suggest JC's Complaint was filed for an improper purpose. Simply because POW! does not like being sued and prefers to hurl stones from the porch of its glass house does not equate to an improper purpose underlying this lawsuit. JC has no control over how the media may choose to present her allegations in the press or the particular vulnerability and sensitivity POW! may have to be taken to task for its actions. All JC can do is follow the law—both in terms of its procedure and substance—something POW! should be compelled to learn here.

On that, given the wholesale disregard of Rule 11 strict procedural mandates, and the utter lack of merit to its motion, this Court should order POW! liable to JC for her attorney's fees and costs in defending against this sham motion, and she respectfully asks this Court to set a hearing date for the same.

In the final analysis, POW! motion is nothing more than a failed attempt circumvent JC's lawful right to seek redress in the courts. If POW! believes the Complaint to be

deficient or that the claims lack substantive merit then it should file a Motion to Dismiss under FRCP Rule 12(b)(6) or bring a Motion for Summary Judgment under Rule 56.  A procedurally flawed and substantively meritless Rule 11 Motion is not the vehicle to address what POW! appears to be driving toward.  All the same, this Court must halt the wayward vehicle that is POW!'s Rule 11 motion and cite and sanction it for operating well outside the bounds of the law.

## II.   STATEMENT OF FACTS

JC's Complaint contains a full and complete Statement of Facts at paragraphs 21 through 39 and the limitations imposed on briefing precludes a complete recapitulation of them here.  JC respectfully incorporates by this reference here the Statement of Facts in her Complaint.  Given the sole focus of POW!'s instant motion is the Complaint itself it is appropriate for this Court to consider the entire document, which is Docket Entry No. 1.

## III.   LEGAL ANALYSIS

### A.   **POW! Failed to Comply With the Rule 11 Safe Harbor Provisions and its Motion Should be Denied Outright.**

To stress the seriousness of a request for Rule 11 sanctions, in addition to meeting certain substantive thresholds on the merits, a moving party is also required to comply with very stringent notice and filing requirements.  Specifically, the moving party must serve a "file-ready motion" for sanctions on the non-moving party at least twenty-one days before that very motion can be filed thereby giving the non-moving party the chance to withdraw whatever pleading is being attacked. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 788-89 (9th Cir. 2001).  These procedural requirements are to be "strictly followed" and informal notice by way of a letter or an incomplete motion is insufficient. *Id*. at 788; *Truesdell v. S. Cal. Permanente Med. Grp*., 293 F.3d 1146, 1151 (9th Cir. 2002).  And where safe harbor notice is given either electronically or by first class mail then three additional days are added to the safe harbor time frame making a total of twenty-four days. FRCP Rules 5 and 6(d).

FREUNDLEGAL PC
427 North Camden Drive
Beverly Hills, CA 90210

1    Here, as shown below, not only did POW! fail to provide JC with the appropriate

2  safe harbor time period but that time never actually commenced because POW! failed to

3  serve JC with a "file-ready motion."  And the safe harbor document first served is

4  markedly different than what POW! ended up filing.  Thus, this Court should deny

5  POW!'s motion on procedural grounds.

6          **1.    *POW! filed its motion before 21 days had lapsed from the date it***

7                   ***served it letter and incomplete motion on JC.***

8    This Court need look no further than POW!'s own chronology regarding its

9  supposed service "electronically and via certified mail a letter and copy of the [sanctions]

10  motion to counsel on November 11, 2019" (Mt. at pg. 2, ll. 19-20, pg. 23, ll. 2-4) to

11  conclude POW! failed to provide JC with the requisite safe harbor under Rule 11 before

12  filing its motion.   Simply put, even if the document and letter sent to counsel

13  "electronically" and by "certified mail" on November 11, 2019 were sufficient to

14  commence the safe harbor time period,[2] *POW! filed its motion prematurely* on December

15  3, 2019 because it failed to add 3 additional days to the safe harbor time period as required

16  by the Federal Rules.  The safe harbor rules are "strictly construed" and for this reason

17  alone this Court must deny POW!'s motion.

18    Once more, to stress the seriousness of a Rule 11 motion for sanctions, stringent

19  notice and filing requirement are placed on parties seeking sanctions.  Explicitly, to

20  comply with the Rule, POW! was required to "serve its Rule 11 motion on [JC] with a

21  demand for retraction of the allegedly offending allegations, and then to allow [her] at least

22  twenty-one days to retract the pleading before filing the motion with the court.  *Radcliffe,*

23  *supra*, 254 F.3d at 788-89.  These procedural requirements are to be strictly followed."  *Id*.

24  at 788.  The "failure to comply with the mandatory procedural requirements makes Rule

25  11 sanctions inappropriate." *More v. Chase*, *Inc*., 2016 WL 928671, at *7 (E.D. Cal. Mar.

26  10, 2016).

27  ────────────────

28  [2] As argued below, they are not sufficient for the reason the pleading sent to JC's lawyer was not a "file ready" motion within the meaning of Rule 11 and thus, could not have commenced the safe harbor time period.

Where a Rule 11 safe harbor notice is given either electronically or by first class mail pursuant to Rule 5, "three days are added after the period would otherwise expire." *Folta v. Van Winkle*, 2016 U.S. Dist. LEXIS 98681 (AZ 2016)[*citing* FRCP Rules 5 and 6(d) and finding Rule 11 motion filed 2 days before safe harbor expired rendered motion defective]; *see also Carruthers v. Flaum*, 450 F.Supp.2d 288, 305 (S.D.N.Y. 2006)(explaining that if a motion for Rule 11 sanctions were served via first class mail the safe harbor period is extended by three days pursuant to Rule 6 thereby giving the non-moving party 24 rather than 21 days within which to withdraw).

The cases are legion invalidating a Rule 11 motion for failure to comply strictly with the safe harbor timing provisions. *See, e.g., Islamic Shura Council of S. Cal v. FBI*, 757 F.3d 870, 872 (9th Cir. 2014) ("A motion for sanctions may not be filed, however, unless there is strict compliance with Rule 11's safe harbor provision."); *Barber v. Miller*, 146 F.3d 707, 710-711 (9th Cir. 1998)("An award of sanctions cannot be upheld" where the movant does not comply with the twenty-one day notice requirement); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009)(affirming district court's ruling that there was "no basis" for awarding Rule 11 sanctions where moving party did not comply with safe harbor provision); *Radcliff, supra*, 254 F.3d at 789 (reversing district court's grant of Rule sanctions where the moving party failed to comply with the safe harbor provision); *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005)("We must reverse the award of sanctions when the [moving] party failed to comply with the safe harbor provisions, even when the underlying filing is frivolous.").

At bar, POW! purports to have commenced Rule 11's safe harbor time period on "the 11th day of November, 2019" by serving "counsel of record for Plaintiff" a copy of its Motion for Sanctions Pursuant to Fed. R. Civ. P. 11" along with a letter, both of which were served "by mail and first class certified mail." *See*, Mt. at pg. 23 "Rule 11(c)(2) Certificate and pg. 2, Notice of Motion and Motion, ll. 19-21. Because the twenty-one-day safe harbor was commenced by way of electronic and first-class mail, Federal Rule of

Opposition to Motion for Rule 11 Sanctions

Civil Procedure 6(d) adds three additional days making the total safe harbor period twenty-four days, not twenty-one.  Twenty-four days from November 11, 2019 is December 5, 2019.  POW! filed the instant motion on December 3, 2019[3] and that *two days too early*.  Consequently, POW!'s motion must be denied outright for failing to comply with Rule 11's time-based safe harbor provisions.

> ## 2.    *POW! failed to serve a "file ready" motion on JC and thus, the safe harbor time frame never commenced.*

In addition to violating the temporal aspects of Rule 11's procedure, POW! also did not serve JC with a "file ready" Rule 11 motion twenty-four days prior to filing its motion.  In fact, not only was the motion served incomplete, but the motion filed on December 3, 2019 is markedly different than the threadbare document sent to JC's counsel on November 11, 2019.  For this additional reason POW!'s motion must be denied outright.

As previously observed, the current iteration of Rule 11 places inflexible notice and filing requirements on parties seeking sanctions.  Not only must the Rule's explicit time frame be observed but the moving party must also serve the allegedly offending party with a "file-ready motion" as notice that it intends to seek sanctions.  *Truesdell, supra,* 293 F.3d at 1151("The movant serves the allegedly offending party with a filing-ready motion as notice that it plans to seek sanctions."); *accord, MetLife Bk., N.A. v. Riley*, 2010 U.S. Dist. LEXIS 112560 (D. Nev. 2010)("Notably, court find that failure to 'serve a copy of the full motion that will be filed with the Court' does not satisfy safe harbor provision."); *Barber, supra,* 146 F.3d 707 (informal warnings not substitute for service of a motion); *Roth v. Green*, 466 F.3d 1179 (10th Cir. 2006)(Rule requires service of the actual motion).

Under Local Rule 7-5, a "file-ready" motion must be served with a "notice of motion" as well as "(a) A brief but complete memorandum in support thereof and the points and authorities upon which the moving party will rely; and (b) the evidence upon which the moving party will rely in support of the motion."

---

[3] See Docket No. 10

On November 11, 2019, POW! emailed and mailed to counsel for JC a document it titled, "Defendant POW! Entertainment, Inc.'s Motion for Sanctions Pursuant to Fed. R. Civ. P. 11."[4]  The document was not served with a declaration of counsel or any exhibits whatsoever, *i.e.*, it lacked "evidence" per LR 7-5(b); yet it repeatedly references "exhibits" claiming they are "attached."  In fact, the points and authorities references exhibit after exhibit claiming them to be "attached" and "incorporated by reference;"[5] but not one of the documents is actually attached to the motion.  The motion POW! filed on December 3, 2019 includes a separate Request for Judicial Notice, which includes Exhibit "A" through "Q" *and not one of those documents was served on JC's counsel on November 11. 2019 as part of the safe harbor warning*.

It is anticipated POW! will argue it substantially complied given the letter that accompanied the inchoate motion and the fact some (though demonstrably few) of the exhibits are either referenced in JC's Complaint or are a matter of public record (such as the lawsuits claimed by POW! to have preclusive effect on the instant case).  This Court is bound, however, by the Ninth Circuit's strict interpretation of Rule 11's "safe harbor" provisions (*Radcliffe, supra,* 245 F.3d t 789) and substantial compliance is simply insufficient.  The "pleading" served by POW! was incomplete and not a motion and the letter is obviously not a "motion" served under Rule 5."  Fed. R. Civ. P. 11(c)(2).  *See, Woods v. Truckee Water Auth.*, 2007 WL 2264509 at *3 (D. Nev. 2007)(finding parties compliance with "sprit" of Rule 11 safe harbor insufficient); *Chong v. Kwo, Shin Chang*, 599 Fed.App'x 18, 19 (2d Cir. 2015)(finding an email insufficient).  This Court therefore need not further analyze POW!'s arguments for Rule 11 sanctions because the procedural flaws are fatal.[6]  What is more, the motion filed is markedly different than the original,

---

[4] Freund Decl. at ¶ 12 Ex. B and C.

[5] See Freund Dec. at Exhibit C, and Exhibit C, which references non-existent exhibits at pg. 3, ll. 12-13 (Ex. "A"); pg. 4, ll. 3-5 (Ex. "B"); pg. 4, ll. 9-10 (Ex. "C"); pg. 4, ll. 13-15 (Ex. "D")

[6] Nor does it matter whether JC was prejudiced or not by POW!'s failure to comply with Rule 11's procedural mandates because prejudice is not the correct legal test under Rule 11—the test is simply whether POW! served a "file-ready" motion on JC 21 days before it filed with this Court.  And it did not.  *See, Truesdell, supra*, 293, F.3d at 1151.

safe harbor motion in many material respects.  *See, Metcalf v. Anchorage Daily News, Inc.*, 78 F.App'x 24, 25 (9th Cir. 2003).

Apart from the lack of any evidence accompanying the draft "motion," the first pleading specifically requests "an assessment of no less than Five Million dollars (USD$5,000,000.00)" (Draft Motion, pg. 2, line 20; pg. 18, ll. 9-14; pg. 19, ll. 21-23 and "Conclusion" at pg. 20, ll. 2-5).  POW! demands this outrageous sum as compensation for its "attorney's fees and costs."[7]  Tellingly, after having been called out for including such a preposterous fees and costs claim in its draft,[8] all of those references were removed from the filed-motion and instead, POW! now demands a sanction in the form of a "fees and costs" award and unspecified sanction "the exact amount of which to be determined" by the Court.  (Mt. at pg. 22, ll. 8-16).  POW! revised its legal argument to delete all references to this outrageous demand in the filed-motion.  (See Point C at pg. 20, ll. 9-13).[9]

The filed-motion, in addition to including exhibits not served with the draft motion, and having a wholly different sanctions demand, also both includes and omits analysis and argument from the draft motion.  For example, point B in the draft includes six full lines of analysis, which was omitted from the file-motion.  (Compare pg. 4, ll. 10-15 in Draft with pg. 4. Point B in the filed-motion).  Point D in the filed Motion includes a reference to the RJN and Exhibit whereas the draft lacks this reference (or document).

Point E in the filed motion *is completely different* from point II. E in the draft motion in that an entire paragraph is deleted (Draft at pg. 6, ll. 14-21) and the argument is wholly reworked (with, again, reference to Exhibits not included in the draft motion).  POW! also attempts to support its supposition made in the filed-motion that certain allegations in the Complaint are "demonstrably untrue" by referencing Exhibit "O" to its RJN (Filed Motion pg. 19, ll. 10-11) whereas that same claim of allegations being

---

[7] It is noteworthy that POW! seeks such a ridiculous sum in "fees and costs" *before* it was even served with the Complaint and thus, before it was compelled to incur either fees or costs.  It is no wonder a declaration was not attached to either motion delineating the fees and costs calculations supporting that fanciful demand.
[8] See Freund Decl. ¶¶ 13-15, Ex. D.
[9] Of course, in yet another careless oversight, POW! kept its "Five Million Dollar" demand in the point heading referenced in its Table of Contents.  See, point C in instant Motion.

FREUNDLEGAL PC
427 North Camden Drive
Beverly Hills, CA 90210

"demonstrably untrue" in the Draft Motion are supported by a reference to a document not served with the draft.  (Draft Motion, pg. 17, ll. 11-14).  These are but a few of the stark differences between the Draft Motion served on JC's counsel on November 11, 2019 without a single supporting document (despite repeated references to documents) and the motion it actually filed two days before the safe harbor time expired.

Given the strict compliance required to advance a Rule 11 motion, and POW! inexplicable decision to serve a demonstrably incomplete and far from "file-ready" motion, Rule 11's safe harbor provisions cannot be said to have commenced and accordingly, POW!'s motion must be denied.

**B.**     **<u>Even Assuming POW!'s Motion is not Procedurally Deficient, it has Failed to Prove JC's Complaint is Frivolous or Being Advanced for an Improper Purpose.</u>**

Rule 11 allows for sanctions where a party presents to the court "claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]". Fed.R.Civ.P. 11(b)(2).  When, as here, a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)(internal quotations and citation omitted). As shorthand for this test, courts use the word "frivolous" "to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 434 (9th Cir. 1996).

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).  Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper

purpose." *Id* at 1344.  "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Id.*

> **1.    *JC's Complaint is not frivolous because none of the cases cited by POW! bar the instant case and JC's counsel conducted an objectively reasonable inquiry into the status of the rights at issue before the Complaint was filed.***

JC's Complaint is not objectively frivolous because none of the cases cited by POW! act as a bar and the sole legal concepts advanced by defendant—those of *res judicata* and *collateral estoppel,* simply do not apply here to bar any of JC's claims.  This is so because the rights at issue in the Complaint are severable from any issues decided in other litigation arising out of the Employment Agreement and because none of the other matters referenced by POW! in its threadbare analysis involve the same issues presented here and were not advanced by identical parties or those in privity with the parties here.

> **a.    <u>The rights at issue in the instant Complaint are severable from any issues arising from the Employment Agreement.</u>**

Notwithstanding that issues and claims may have been decided in other jurisdictions involving other parties pursuing different rights than those involved here, what POW! fails to recognize is the fact the employment agreement component of the 1998 Agreement *is severable from the rights assignment* part of that agreement.  So whatever may have been addressed in other matters relating to the employment part of that agreement are of no moment to the rights assignment.

More particularly, pursuant to paragraph 4 of the 1998 Agreement, Stan Lee "forever" assigned the intellectual property and other rights without reservation to SLE as of October of 1998.  He made an absolute and unconditional assignment of creator rights and name and likeness rights for all time without any condition subsequent to the assignment and thus, unencumbered title to the name and likeness rights and creator rights

owned by Stan Lee at the time of the assignment were transferred irrevocably when the assignment was executed on October 21, 1998.  And, irrespective of whether the employment aspects of the agreement may have later been invalidated, pursuant to paragraph 6 of the 1998 Agreement, the "invalidity of any provision" of the agreement did not "relieve" or extinguish the rights assignment expressed in Paragraph 4. The simple fact is, when Stan Lee agreed to assign the rights delineated in Paragraph 4, title to those rights flowed from him to SLE "forever" and the fact other portions of the agreement, including the perpetual employment portion, may have been called into question or invalidated, does not undo the irrevocable assignment expressed in Paragraph 4.

Contrary to POW!'s sweeping and unsupported statements, no court has addressed whether the assignment contained in Paragraph 4 was irrevocably effective as of the date of the execution of the 1998 Agreement; nor has any court said the "invalidity of [the employment] provision" or any other part of that agreement somehow divested SLE of its rights to the assignment property.  That is what is going to be litigated here for the first time.  What is more, there is no decision anywhere to the effect the 1998 Agreement was somehow rescinded, so Paragraph 4 became, and remains, operative as of the date of execution.

In fact, courts have recognized just the opposite, *i.e.*, that the assigned "rights" are indeed severable from the executory provisions of the employment contract.  POW! claims its "ownership" of the assets at issue stems from their purchase in Bankruptcy Court of those assets from Stan Lee Media.[10]   The Motion itself addressed the sale of the very Assets at issue here and acknowledged that, notwithstanding any issues contained in his employment agreement, the rights were severable and subject to purchase.  Of course, the asset sale was never consummated as, according to this Court: "As an initial matter, the Court finds no merit to Plaintiffs' claim that they acquired rights in the Properties from the transfer of the assets from the bankruptcy estate." (*See Order Judge Wilson*)

---

[10] See Exhibit "A" to Freund Decl. (First Amended Complaint. *QED Productions, LLC vs Nesfield*,).

1   Finally, as this very Court recognized in *Petrella*, there is no statute of limitations

2   bar to a copyright owner claiming an interest in property it owns or to which it is entitled.

3   This case is not about advancing a tardy claim for damages from POW!'s usurpation of

4   SLE's rights but rather, it is about clearing title to those rights.  POW!'s misguided statute

5   of limitations analysis is simply wide of the mark.

6   **b.**      ***Res judicata* does not apply here because**

7   **different parties and different rights were at**

8   **issue in each of the matters cursorily analyzed**

9   **by POW!**

10   None of the cases or determinations cited by POW! precludes JC from advancing

11   this action because none of those actions involved the same parties, or their privies, as are

12   involved here, and not one of those cases resulted in a judgment, ruling or other

13   determination precluding JC from obtaining a declaratory judgment that the rights

14   referenced in the 1998 Agreement were fully and unconditionally assigned by virtue of

15   that contract.

16   To trigger the doctrine of *res judicata*, the earlier suit must have (1) involved the

17   same "claim" or cause of action as the later suit, (2) reached a final judgment on the

18   merits, and (3) involved identical parties or privies.  *Hydranautics v. Fimtec Corp.*, 204

19   F.3d 880, 887 (9th Cir. 2000).  To determine whether two suits contain identical claims,

20   courts will consider:  (1) whether rights or interests established in the prior judgment

21   would be destroyed or impaired by prosecution of the second action; (2) whether the two

22   suits involve infringement of the same right; (3) whether substantially the same evidence is

23   presented in the two actions; and (4) whether the two suits arise out of the same

24   transactional nucleus of facts.  *Nordhorm v. Ladish Co., Inc.,* 9 F.3d 1402, 1405 (9th Cir.

25   1993).  Here, right asserted in two actions can be found different for purposes of *res*

26   *judicata* where the separate lawsuits involved "infringement of different provisions of a

27   contract.  *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)

28

1  Though all four factors are considered, "[r]eliance on the transactional nucleus
2  element is especially appropriate because the element is 'outcome determinative.'"
3  *ProShipline Inc. v. Aspen Infrastructures LTD*, 609 F.3d 960, 968 (9th Cir. 2010).  The
4  party asserting a claim preclusion argument "must carry the burden of establishing all
5  necessary elements."  *Taylor v. Sturgell*, 553, U.S. 880, 907 (2008)(quoting 18 Wright &
6  Miller, *Federal Practice and Procedure* § 4405, at 83 (2d ed. 2002)).  That party here is
7  POW! and it clearly failed to establish the elements necessary to sustain an issue
8  preclusion defense.

9  More specifically, none of the cases cited by POW! involved the plaintiff here, Joan
10 C. Lee as Trustee for the Lee Family Survivor's Trust "A" Date October 12, 1985.  The
11 previous litigation was either brought for or against Stan Lee Media, Inc. and just because
12 JC pleads she has now "joined forces" with that entity to right the myriad of wrongs visited
13 upon Stan Lee does not mean this plaintiff is "identical to" or "in privity with" Stan Lee
14 Media, Inc. for purposes of a claim or issue preclusion analysis.  To be sure, many of the
15 rights at issue here—those arising upon the death of Stan Lee, such as his post-mortem
16 rights of publicity under Cal. Civ. Code §3344.1—could not have been litigated during his
17 lifetime.  POW! has offered no admissible evidence to support it conclusion to the
18 contrary. (See, Mt. at pg. 14, ll. 3-6)

19 More glaring than an obvious lack of identity or privity between the parties in the
20 cited cases is the clear distinction between what was actually litigated and decided in those
21 matters and what it as issue in this case.  In the *Abadin v. Marvel*[11] case, not only was JC
22 not involved as a party or privy, but the issue of whether the "rights" assigned by the 1998
23 Agreement "forever" was severable from the employment-related aspects of the agreement
24 was not addressed at all.  That case only dealt with issues relating to enforcement of the
25 agreement as a personal service contract.

26

27 _____
[11] *Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715(PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) referenced at
28 pg. 14 of POW!'s Motion.

As for the *Lee v. Marvel* and *Lee Marvel Enterprises*[12] cases, they do not act as a bar to this action because the Second District Court of Appeals in the latter matter, in reviewing the former decision, specifically declined to consider the *res judicata* grounds advanced below and affirmed strictly on procedural grounds.  Federal law provides that where an appellate court fails to affirm a lower court ruling on a particular ground, then the appellate decision "strip[s]" the unaddressed ground "of preclusive effect." *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009); see also *Plastic Container Corp. v. Continental Plastics*, 607 F.2d 885, 892 n. 11 (10th Cir. 1979) ("If this court, in its previous decision, had merely affirmed on the basis of obviousness. . . and had not disposed of the other bases of invalidity, there could be collateral estoppel only on the obviousness issue in any subsequent litigation [cits. om.]."); *Martin v. Henley*, 452 F.2d 295, 300 (9th Cir. 1971) (when appellate court affirms on a particular ground, while "refusing to consider" another ground, "the second ground is no longer conclusively established"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986) ("If an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground."); 1B Moore's Federal Practice, section 0.443[5], at 3921 n. 10 (alternative grounds raised on appeal but not decided cannot be "essential to the judgment").

Consequently, even though the Court in  *Lee v Marvel* might have made some findings as to the applicability of *Abadin*, any such findings were rendered moot and inapplicable when the reviewing court specifically stated, "[h]aving decided the matter before us on the above grounds, we do not reach the issue of *res judicata*."  Ex. "C" to RJN at pg. *17 [5].

In *Stan Lee Media, Inc. v. Stan Lee, et al.*, brought in this District,[13] the discussion of this Court regarding any *res judicata* effect of the *Abadin* matter was rendered moot and inapplicable because the Ninth Circuit Court of Appeals affirmed the lower court merely

---

[12] Exhibits "B" and "C" respectively to POW!'s RJN.
[13] See "D" to POW!'s RJN.

on the issue of implausibility and specifically did not address any grounds of *res judicata* or *collateral estoppel*.   In fact, that appeal did not deal with any claims to the assets at issue in this case.

Of note is Judge Wilson's observation in the District Court decision as follows:

> SLMI filed a motion to intervene in a related case in the Southern District of New York, *Lee v. Marvel Enters., Inc.* 765 F.Supp.2d 440 (S.D.N.Y. 2011)(hereinafter *"Marvel"* ). The parties eventually reached a settlement, and, on April 27, 2005, the court in *Marvel* issued an order dismissing all claims with prejudice. *Id.* at 444. More than five years later, SLMI filed a motion to vacate that 2005 order and to file a proposed amended complaint against Lee and other defendants asserting claims essentially identical to those before this Court and in *Abadin I.* On February 4, 2011, the court in *Marvel* denied SLMI's motion on multiple grounds. *Id.* at 453–55.
>
> The court in *Marvel* also held that SLMI's proposed amended complaint was barred by *Abadin I* under the doctrine of *res judicata.* SLMI appealed that decision and this Court stayed the instant action, noting that, "[s]hould the Second Circuit reverse *Marvel* or affirm it without addressing the *res judicata* determination, [the opinion in *Marvel]* will have no *collateral estoppel* effect." (Dkt. No. 183)"The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.") (citing cases) (citing Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, 18 Federal Practice & Procedure § 4421 at 570 (2d ed. 2002)  On March 21, 2012, the Second Circuit affirmed the court in *Marvel* in a Summary Order, but expressly declined to reach the issue of *res judicata. Lee v. Marvel,* No. 11–831–cv, 2012 WL 934016, at *2 (2d Cir. Mar. 21, 2012). Accordingly, the Court addresses the issue of *res judicata* in this Order.
>
> --*Wilson*, footnote 4 (Ex. "D" to POW! RJN)

The case, *Stan Lee Media, Inc v Walt Disney Co.*, which is Exhibit "E" to POW!'s RJN does not bar this action because, again, JC was neither a party to that action nor a privy to its litigants, and because the Court there also relied on the *Lee v Marvel Enterprise* case and the *Stan Lee Media v Lee* cases where any claim or issue preclusion findings were

rendered moot on appeal and thus have no application here.  The same is true of Exhibit "H" to POW!'s RJN, which is the *Disney Enterprises v Entertainment Theater Group* as, in addition to involving parties distinct from those here, that decision likewise relies on *Lee vs. Marvel's* analysis of the *Abadin* decision, which as has been demonstrated, was ultimately rendered moot through a failure to address it on appeal.

Finally, Exhibit "I" to POW!'s RJN has no preclusive effect here as that Tenth Circuit case also relies on the earlier matters cited above where any *res judicata* issues were rendered moot and because that decision was only dealing with the Marvel rights and did not speak to Stan Lee's name and likeness rights at issue in this case.

In sum, POW!'s analysis of this myriad and disparate cases from other jurisdictions fails to address the fact none of these other cases dealt with the assignment of rights portion of the 1998 Agreement and not one of them took head on JC's claim at bar that the assignment of rights portion of that agreement vested at the time of execution such that any later attempts to once more alienate those rights are simply invalid.  That is what is at issue in this case and none of the authorities cited by POW! bars this action.

> **2.    *Counsel for JC conducted a reasonable and competent inquiry before filing the Complaint at issue.***

As demonstrated through both the actual merit to the Complaint as well as the declaration of JC's counsel, a reasonable inquiry was undertaken before this action was commenced.  "As shorthand for this test, we use the word 'frivolous' 'to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co.* 78 F.3d 431, 434 (9th Cir. 1996).  The reasonableness standard governing a Rule 11 inquiry is objective. *G.C. and K.B. Invest., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).

Courts are directed to not construe Rule 11 so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible

1   way. Our law is constantly evolving, and effective representation sometimes compels

2   attorneys to take the lead in that evolution. *Operating Engineers Pension Trust v. A-C Co.*,

3   859 F.2d 1336, 1344 (9th Cir. 1988). Rule 11 must not be turned into a bar to legal

4   progress. *See, e.g., Hudson v. Moore Business Forms, Inc.,* 827 F.2d 450, 453-55 (9th Cir.

5   1987)("attempt to seek tort damages under a Seaman's-type action is not frivolous, but

6   rather an attempt to expand a developing area of the law").

7          Courts must also "avoid using the wisdom of hindsight and should test the signer's

8   conduct by inquiring what was reasonable to believe at the time the pleading . . . was

9   submitted." *Id.* The simple fact that an attorney's legal theory failed to persuade the district

10  court "does not demonstrate that [counsel] lacked the requisite good faith in attempting to

11  advance the law." *Hurd. V. Ralphs Grocery Co.*, 824 F.2d 806, 811 (9th Cir. 1987). Rather,

12  we reserve sanctions for the rare and exceptional case where the action is clearly frivolous,

13  legally unreasonable or without legal foundation, or brought for an improper purpose.

14  *Operating Engineers, supra*, 859 F.2d at 1344.

15         The standard for resisting Rule 11 sanctions regarding a complaint is not a high one.

16  *See Cal. Arch. Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir.

17  1987)(reversing an award of sanctions where, although the evidence was weak and could

18  not survive summary judgement, the court could not "say that the complaint [was] so

19  lacking in plausibility as to . . . subject [the attorney] to sanctions under Fed.R.Civ.P. 11").

20  "Rule 11 sanctions are only appropriate if the allegations and other factual contentions

21  entirely lack evidentiary support." *Stiglich v. Contra Costa County Bd. of Supervisors*,

22  1997 U.S.App. LEXIS 897 (9th Cir. 1997).

23         First of all, POW! *has failed to offer any argument whatsoever under the second*

24  *prong of the Rule 11 analysis* for determining whether JC's Complaint is frivolous. It is a

25  conjunctive test with two distinct elements: frivolous denotes "a filing that

26  is *both* baseless *and* made without a reasonable and competent inquiry." *Moore, supra,* 78

27  F.3d at 434. The second element is objective and evaluates the "reasonableness" and

28

"competence" of the pre-filing inquiry. *G.C. and K.B. Invest., Inc., supra,* 326 F.3d at 1109. POW!'s Motion is absolutely silent on this element of the test with no facts and no evidence to support any type of conclusion suggesting a reasonable and competent inquiry was not undertaken prior to filing.

Nonetheless, JC has offered definitive evidence that her counsel did indeed conduct a wholly reasonable and demonstrably competent inquiry before filing this action. Public records were reviewed, experts were consulted, litigation from other jurisdictions was evaluated, and the scope of the relief sought was tailored to address what has yet to be addressed by any court in any jurisdiction: whether the common law rights of publicity and other related intellectual property claims assigned under the 1998 Agreement were "forever" assigned through that document such that POW! could not possible hold lawful title to any of the same rights. This is the essence of effective representation and JC and her counsel are taking the lead in bringing to the fore this discreet issue. (See Freund Decl. at ¶¶ 2-11)

### 3. JC's Complaint was not filed for an improper purpose but rather to seek a determination regarding the status of certain very important rights held by Stan Lee.

As shown above, because JC's complaint here is well-grounded in fact and warranted by existing law, it was not filed for an improper purpose. In fact, POW! has presented no competent evidence whatsoever that JC's lawsuit is anything more than a righteous attempt to regain rights, the alienation of which has never been subjected to judicial scrutiny.

The test imposed by Rule 11 is an objective one. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)(*abrogated on other grounds by Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990)*. The certification requirements of Rule 11 are violated "if the paper filed . . . is frivolous, legally unreasonable or without factual foundation, even though . . . not filed in subjective bad faith." *Id.*

FREUNDLEGAL PC
427 North Camden Drive
Beverly Hills, CA 90210

1    Under this objective, analytic approach to Rule 11, a cause of action is not

2  "warranted by law" where no "plausible, good faith argument can be made by a competent

3  attorney" in support of the proposition asserted.  *Id*. at 829, 833.  The Ninth Circuit has

4  squarely held that a complaint that is well-grounded in fact and warranted by existing law

5  — a complaint that is non-frivolous — can not be filed for an improper purpose under

6  Rule 11.  *Townsend v. Holman Consulting Corp*. 929 F.2d 1358, 1362 (9th Cir.

7  1990)(*citing Zaldivar, supra*, 780 F.2d at 832).  And, where there is a basis for a claim in

8  law and fact, the "subjective intent of the pleader . . . is of no moment."  *Zaldivar, supra*,

9  780 F.2d at 830.  "Rule 11 is an extraordinary remedy, one to be exercised with extreme

10  caution."  *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir.

11  1988).

12    Here, again, JC has advanced plausible causes of action focused on seeking a

13  declaration regarding rights, including those arising under common law rights of publicity

14  for Stan Lee, and other aspects of the 1998 Agreement's assignment provisions, *which*

15  *have never been squarely addressed or decided*.  Notwithstanding the wealth of lawsuits

16  surrounding the late Stan Lee and his creative output brought in courts throughout the

17  country, the issues addressed in the instant complaint have neither been brought by JC or

18  anyone in privity with her nor determined head on by any of those cases.  The fact the

19  operative Complaint is "well-grounded in fact and warranted by existing law," *i.e.*, because

20  it is non-frivolous, conclusively establishes that it was not brought, and could not be

21  brought, for an improper purpose under existing law.  *See, Townsend, supra*, 929 F.2d at

22  1362.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

*FREUNDLEGAL PC*
*427 North Camden Drive*
*Beverly Hills, CA 90210*

**C.** **JC Should be Awarded her Reasonable Attorney's Fees and Costs Incurred in Opposing POW!'s Procedurally Flawed and Substantively Meritless Motion for Rule 11 Sanctions.**

Not only must POW!'s motion be denied but given its manifold procedural infirmities as well as a complete lack of substantive merit, this Court should award JC here attorney's fees and costs incurred in opposing POW!'s decidedly flawed effort.

Rule 11(c)(1)(A) allows this Court to "[to] award to the party prevailing on the motion [for sanctions] reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c)(1)(A) This means that "the filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions. Fed.R.Civ.P. 11 advisory committee's note (1993) Amendment). "Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court may find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." Georgene M. Vairo, *Rule 11 Sanctions: Case Law Perspectives And Preventive Measures* § 4.01[c][3][F] (2d ed. Supp. 1994); *see also Safe-Strap Co. v. Koala Corp.*, 270 F.Supp.2d 407, 421 (S.D.N.Y. 2003) (holding award of fees to prevailing party appropriate where "motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose").

"A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001). *see also* Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments) ("Service of a cross-motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under - whether the movant or the target of the motion- reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion." Georgene M. Vairo, *Rule 11 Sanctions § 7.03(d)(1)(C)* (Richard G. Johnson ed., 3d ed. forthcoming

FREUNDLEGAL PC
427 North Camden Drive
Beverly Hills, CA 90210

2003) ("The safe-harbor provision need not be complied with if a party seeking sanctions is responding to a motion for sanctions.")

JC respectfully request this Court to allow her to file her separate Motion for Attorney's Fees and Costs and set a hearing date for the same following the denial of POW!'s procedurally flawed and substantively meritless motion.  POW! was made aware of many of the flaws in its motion before filing and both it and its lawyers quite obviously sought to deter JC from rightfully seeking redress through the courts by threatening she and her lawyers with a preposterous "Five Million Dollars (USD $5,000,000.00)" in attorney's fees and costs for pursuing her righteous case.  This is precisely the situation where the party moving for Rule 11 sanctions has exposed themselves to the very thing they wrongly sought through an unsupported, hyperbolic motion.

## IV.   CONCLUSION

For all the foregoing reasons, JC respectfully requests this Court to deny POW!'s Motion for Rule 11 sanctions.  In addition, JC respectfully requests this Court to set a hearing and briefing schedule for an award of her fees and costs in connection with opposing POW!'s patently frivolous and procedurally flawed motion, which was clearly intended for the improper purpose of deterring her from pursuing her claims.


Dated: December 16, 2019                    FREUNDLEGAL


                                            By:__/x/ Jonathan D. Freund_____
                                            Jonathan D. Freund,
                                            Craig A. Huber,
                                            Attorneys for plaintiff,
                                            JOAN CELIA LEE