1
2
3
4
5
6
7
8
9

FREUND LEGAL LLP
Jonathan D. Freund (SBN 157357)
    *jonathan@freundlegal.com*
Craig A. Huber (SBN 159763)
    *craig@freundlegal.com*
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310-247-2165
Fax: 310-247-2190

Attorneys for Plaintiff,
        JOAN CELIA LEE, as Trustee for the
        Lee Family Survivor's Trust A Date October 12, 1985

10
11

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JOAN CELIA LEE, as Trustee for the Lee Family Survivor's Trust "A" Date October 12, 1985;<br><br>        Plaintiff,<br><br>    v.<br><br>POW! ENTERTAINMENT, INC., a Delaware Corporation; and DOES 1 through 10, inclusive, in their individual and official capacities;<br><br>        Defendants. | Case No.: 2:19-cv-08353<br>*[Hon. Otis Wright]*<br><br>**DECLARATION OF JONATHAN D. FREUND IN SUPPORT OF PLAINTIFF JOAN CELIA LEE'S OPPOSITION TO DEFENDANT POW! ENTERTAINMENT, INC'S MOTION FOR SANCTIONS;**<br><br>Hearing Date:  January 6, 2019 (sic.)<br>Time:              1:30 p.m.<br>Dept.:             5-D<br><br>*Motion Filed:*        ***December 3, 2019***<br>*Safe Harbor Expired:* ***December 5, 2019*** |

## DECLARATION OF JONATHAN D. FREUND

I, JONATHAN D. FREUND, declare as follows:

1.     I am an attorney at law, duly licensed to practice before all Courts in the State of California, including the Federal District Courts and Ninth Circuit Court of Appeal. I am counsel of record for Plaintiff JOAN CELIA LEE, known as JC Lee (hereinafter "JC") as the trustee for the Lee Family Survivor's Trust A Date October 12, 1985 (hereinafter "Lee Trust"). I have personally knowledge of all facts set forth herein, expect those expressly made under information and belief. I could and would competently testify to these facts if called as a witness.

2.     I have practiced before the Federal District Court and California state Courts for twenty-nine years and have litigated many cases over the years through judgment and appeal. To my knowledge, I have never knowingly or inadvertently filed a frivolous pleading in any Court and have never been accused of filing the same until the Motion at issue here.   Defendant's Motion is the first FRCP Rule 11 Motion ever brought against me and I find it to be an personal affront to my professional integrity as a lawyer.   I believe the Request of $5,000,000 in sanctions against me—a demand suspiciously omitted from the filed-motion, was calculated to intimidate both me and my client and designed to force plaintiff to dismiss this matter.

3.     As is my general practice in all litigation matters in which my name is attached as counsel, I thoroughly review and investigate the facts/legal analysis to assure the matters are, in my opinion, meritorious and brought in good faith.   In this matter, I thoroughly reviewed and investigated many agreements and documents, interviewed witnesses, and reviewed previous litigation matters.   I further reviewed previous witness declarations and consulted expert witness reports as part of my reasonable and competent investigation of the underlying facts.

4.     I reviewed the various cases cited by Defendant in its Motion and determined that, in my opinion, none of the cases cited by Defendant precludes this action by way of *res judicata*. The issues to be decided and the parties to the dispute are different,

1  accordingly there is no identity of issues or parties.   As a preliminary matter, none of these

2  cases addressed the valuable rights to Stan Lee's Name and Likeness, which were prayed

3  for in the Complaint and the issues regarding Stan Lee's post-mortem Right of Publicity

4  only arose after his death in 2018.

5      5.      Additionally, Joan Celia Lee was not a party to any of the previous litigation

6  matters.   Furthermore, none of the previous cases raised by Defendants discussed Joan C.

7  Lee's rights and duties as successor to her father Stan Lee's legal obligation (both under

8  California Law and pursuant to the Rights Assignment obligations of Exhibit "O" to

9  POW!'s RJN) to defend the Rights Assignment and assure her father's wholesome legacy

10  remains intact and is not fraudulently usurped or claimed by Defendant and its owners.  I

11  am informed and believe the at least some of POW!'s owners are in prison in China for a

12  multi-billion dollar fraud scheme.  I further believe that any negative press which POW!

13  blames on the filing of this Complaint is misdirected to the Plaintiff and is instead directly

14  attributable to many reports in t China media outlets detailing how the entire executive

15  staff of POW!'s owners have been arrested for their alleged role in a massive financial

16  fraud as alleged in Paragraph 38 of the Complaint.

17      6.      Generally, my investigation revealed Ms. Lee was the successor in interest to

18  Mr. Lee's Intellectual Property Rights/Life Rights and any of his duties pertaining to said

19  rights. Furthermore, any rights transferred by virtue of the 1998 Employment

20  Agreement/Transfer of Rights Agreement appeared legally severable.   In addition, no case

21  has addressed that notwithstanding any finding regarding Stan Lee's Employment

22  Agreement as having been arguably terminated by virtue of the California Labor code, the

23  valuable creator and identity rights were transferred "forever" in October of 1998 to Stan

24  Lee Media.

25      7.      To prove this point, I reviewed a Notice of Motion for Order to Approve

26  Sale of Assets Free and Clear of Liens filed in November 27, 2001 in the United States

27  Bankruptcy Court in which Defendants and/or its predecessor in interest attempted to

28  purchase the assets at issue in this case free and clear of all liens from the Bankruptcy

DECLARATION OF JONATHAN FREUND

1   Estate of Stan Lee Media Inc., acknowledging that these assets were independent of Stan

2   Lee's Employment Agreement.  I reviewed various litigation documents (including

3   previous complaints filed by POW!), POW! press releases and other statements attributed

4   to defendant POW! under which it admitted to acquiring the assets at issue from the

5   Bankruptcy Estate of Stan Lee Media Inc.  Not only do said statement support the fact that

6   the rights at issue were severable from issues in the Employment Agreement, but said

7   statements indicating that POW! acquired the rights were patently false.

8        8.    I also reviewed the Order Granting in Part Plaintiffs' Motion for Summary

9   Judgment filed January 20, 2009, by Judge Wilson in this Court in Case No. CV- 07-00225

10  issued against Defendants POW! and its wholly owned subsidiary QED Productions, LLC,

11  finding that there was no merit to Plaintiffs' [POW!'s] claim that they acquired rights in

12  the Properties [the assets at issue in this case] from the transfer of the assets from the

13  bankruptcy estate as it had previously claimed. The Court specifically noted, "Plaintiffs

14  ....POW! Entertainment, Inc., ("POW!") claim they have interests in the copyrights and

15  trademarks at issue sufficient to confer standing on Plaintiffs to bring this suit.  However

16  because the purported transfer of the Properties from the chapter 11 bankruptcy estate of

17  Stan Lee Media, Inc., ("SLMI") was not authorized by the bankruptcy court, any such

18  transfer was void as a matter of law.. This Plaintiffs ...Pow! cannot assert an interest in the

19  Properties on this basis."   A true and correct copy of Judge Wilson's Order is attached

20  hereto as ***Exhibit "A."***

21       9.    Accordingly, in my opinion, these facts prove 1) that the valuable intellectual

22  property rights at issue in this case were severable and that Defendants acknowledged

23  remained with Stan Lee Media, Inc. and 2) that as of 2009, any claims by Defendant Pow!

24  that it had acquired said rights were patently false as the Court had ruled that said rights

25  had never been transferred to POW!.

26       10.   Through my investigation, I have not been able to locate an agreement or an

27  Order or Judgment, which purportedly transfers any of the intellectual property at issue

28  from Stan Lee Media, Inc. and/or Stan Lee validly to POW! since 2009.

11.     The Complaint in this matter was prepared, reviewed and filed after a reasonable and competent inquiry into the matters alleged.  It was not filed for an improper purpose but rather, to vindicate the rights involved.

12.     I received in the mail a letter and Draft Motion for Rule 11 Sanctions against both me and my client.  Both the Letter and the Motion indicated they would seek no less that $5,000,000 in sanctions from both me and my client.  The document was not served with a declaration of counsel or any exhibits whatsoever, *i.e.*, it lacked "evidence" per LR 7-5(b); yet it repeatedly references "exhibits" claiming they are "attached."  In fact, the points and authorities references exhibit after exhibit claiming them to be "attached" and "incorporated by reference;" but not one of the documents is actually attached to the motion.  A True and correct copy of the Letter is attached hereto as ***Exhibit "B"*** and a true and correct copy of the Proposed Rule 11 Motion, which I received in the mail is attached hereto as ***Exhibit "C."***

13.     On November 27, 2019, my partner Craig Huber sent an email to Plaintiff's counsel, Chaz. C. Rainey informing him of the infirmities of his proposed Rule 11 Motion. Specifically, Mr. Huber informed Mr. Rainey, counsel at Hamrick and Evans for Defendants, that the Request for $5,000,000 in sanctions was completely unfounded and further informed Mr. Rainey his Proposed Rule 11 Motion was defective in that is was not a "stand alone motion and must meet the procedural requisites for bringing a motion; yet your document cites a range of exhibits throughout but fails to include any of them. Nor are they authenticated by a proper declaration."

14.     Mr. Rainey indeed responded to Mr. Huber's email indicating he disagreed with Mr. Huber's assertions and, "As for your dismissive comments with respect to our forthcoming Rule 11 Letter, I respectfully disagree with your analysis, and I believe the written motion speaks for itself."   A true and correct copy of Mr. Huber's email to Mr. Rainey and Mr. Rainey's response is attached hereto as ***Exhibit "D."***

15.     On December 3, 2019 I received electronic notice through this Court's ECF Filing system that POW!, through counsel, filed the instant motion.  Upon review, it was

1 | clear the Motion filed on December 3, 2019 was not only premature, was is also markedly
2 | different from the supposed Draft motion mailed to me earlier in November.

3 |     16.    The motion POW! filed on December 3, 2019 includes a separate Request
4 | for Judicial Notice, which includes Exhibit "A" through "Q" *and not one of those*
5 | *documents was served on JC's counsel on November 11. 2019 as part of the safe harbor*
6 | *warning*.

7 |     17.    Apart from the lack of any evidence accompanying the draft "motion," the
8 | first pleading specifically requests "an assessment of no less than Five Million dollars
9 | (USD$5,000,000.00)" (Draft Motion, pg. 2, line 20; pg. 18, ll. 9-14; pg. 19, ll. 21-23 and
10 | "Conclusion" at pg. 20, ll. 2-5).  POW! demands this outrageous sum as compensation for
11 | its "attorney's fees and costs."  After having been called out for including such a
12 | preposterous fees and costs claim in its draft, all of those references were removed from
13 | the filed-motion and instead, POW! now demands a sanction in the form of a "fees and
14 | costs" award and unspecified sanction "the exact amount of which to be determined" by
15 | the Court.  (Mt. at pg. 22, ll. 8-16).  POW! revised its legal argument to delete all
16 | references to this outrageous demand in the filed-motion yet it failed to remove this point
17 | from its Table of Contents.  (See Point C at pg. 20, ll. 9-13).

18 |     18.    The filed-motion, in addition to including exhibits not served with the draft
19 | motion, and having a wholly different sanctions demand, also both includes and omits
20 | analysis and argument from the draft motion.  For example, point B in the draft includes
21 | six full lines of analysis, which was omitted from the file-motion.  (Compare pg. 4, ll. 10-
22 | 15 in Draft with pg. 4. Point B in the filed-motion).  Point D in the filed Motion includes a
23 | reference to the RJN and Exhibit whereas the draft lacks this reference (or document).

24 |     19.    Point E in the filed motion *is completely different* from point II. E in the draft
25 | motion in that an entire paragraph is deleted (pg. 6, ll. 14-21) and the argument is wholly
26 | reworked (with, again, reference to Exhibits not included in the draft motion).  POW! also
27 | attempts to support its supposition made in the filed-motion that certain allegations in the
28 | Complaint are "demonstrably untrue" by referencing Exhibit "O" to its RJN (Filed Motion

pg. 19, ll. 10-11) whereas that same claim of allegations being "demonstrably untrue" in the Draft Motion are supported by a reference to a document not served with the draft. (Draft Motion, pg. 17, ll. 11-14). These are but a few of the stark differences between the Draft Motion served on JC's counsel on November 11, 2019 without a single supporting document (despite repeated references to documents) and the motion it actually filed two days before the safe harbor time expired.

20.     On behalf of my client, I respectfully request this Court to allow me to file her separate Motion for Attorney's Fees and Costs and set a hearing date for the same following the denial of POW!'s procedurally flawed and substantively meritless motion. POW! was made aware of many of the flaws in its motion before filing and both it and its lawyers quite obviously sought to deter JC from rightfully seeking redress through the courts by threatening she and her lawyers with a preposterous "Five Million Dollars (USD $5,000,000.00)" in attorney's fees and costs for pursuing her righteous case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 16 day of December, 2019 at Beverly Hills, California.

Jonathan D. Freund, declarant.

# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| QED PRODUCTIONS, LLC, et al., | ) | CV 07-0225 SVW (SSx) |
| | ) | |
| | ) | ORDER DENYING PLAINTIFFS' |
| Plaintiffs, | ) | MOTION FOR PARTIAL SUMMARY |
| | ) | JUDGMENT AS TO STANDING [95, |
| | ) | 108, 121] |
| v. | ) | |
| | ) | |
| | ) | |
| JAMES NESFIELD, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

I.   **INTRODUCTION**

       Plaintiffs Stan Lee, QED Productions, LLC ("QED"), and POW!
Entertainment, Inc. ("POW!") claim that they have interests in the
copyrights and trademarks at issue sufficient to confer standing on
Plaintiffs to bring this suit.[1]  However, because the purported transfer

_____

[1]  The intellectual property rights at issue here are copyrights in
entertainment projects known as The Accuser, Stan's Evil Clone (Evil
Clone), and The Drifter.  (SAC, at 40-41.)  The trademarks at issue
in this case are "Stan Lee Presents," "Excelsior!," "The Accuser (and
Accuser)," "The Drifter," "Stan Lee Media," "Stan Lee," and "Stan Lee

1   of the Properties from the chapter 11 bankruptcy estate of Stan Lee

2   Media, Inc. ("SLMI") was not authorized by the bankruptcy court, any

3   such transfer was void as a matter of law.  Thus, Plaintiffs QED and

4   POW! cannot assert an interest in the Properties on this basis.

5       Plaintiffs, however, assert an ownership interest in the

6   Properties on a separate basis.  Stan Lee claims that the Properties

7   never entered bankruptcy because he allegedly terminated his employment

8   agreement with SLMI before bankruptcy or, alternatively, that the

9   employment agreement was void under California law.  Thus, Plaintiffs

10  contend that they have an interest in the Properties that is not

11  dependent on the transfer from the bankruptcy estate.

12

13  **II.   FACTS**

14

15      Plaintiff Stan Lee is a renowned comic book writer and creator of

16  a number of established comic book heroes, such as Spider-Man, X-Men,

17  and The Fantastic Four.  This dispute dates back to October 13, 1998,

18  when Stan Lee and his associate Peter Paul incorporated Stan Lee

19  Entertainment, Inc., a Delaware corporation ("SLE").  (Second Am.

20  Compl. ("SAC"), at 15.)  In April 1999, SLE merged with a Delaware

21  corporation named Stan Lee Media, Inc. ("SLMI-DE"), the resulting

22  company being named SLMI-DE.  (Id.)  SLMI-DE then entered into a

23  transaction with a Colorado corporation named Stan Lee Media, Inc.

24  ("SLMI-CO"), which resulted in SLMI-DE becoming a wholly-owned

25

26  _____

27  (signature)."  (Id. at 14-15.)  The domain names involved are
    "www.stanleemedia.net" and "www.stanleestudios.com."  (Id. at 47-49.)
    These intellectual properties are hereinafter referred to as the
28  "Properties."

2

subsidiary of SLMI-CO.  (Id. at 15-16.)  Both SLMI-CO and SLMI-DE are named as Defendants in this action.[2]

On October 15, 1998, Stan Lee entered into a agreement with SLE, which was titled "Employment Agreement/Rights Assignment." (Pls.' Ex. 9 ("Employment Agreement"), at 1.)  The Employment Agreement provided that Stan Lee would serve as Chairman and Creative Officer of SLE for life, in return for a salary, stock options, and other employment compensation.  (Id.)  Furthermore, Stan Lee agreed to "assign, convey and grant to [SLE] forever, all right, title and interest I may have or control, now or in the future" in copyrights and trademarks.[3]  (Id. at 4.)

On February 12, 2001, both SLMI-CO and SLMI-DE (collectively "Debtors") filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the Central District of California.  (See Pls.' Ex. 1.)  Just days before the bankruptcy filing, however, Stan Lee wrote to Ken Williams, President of SLMI informing him that Stan Lee considered SLMI to be in material breach of the October 15, 1998 Employment Agreement.  (See Pls.' Ex. 10.)  Stan Lee claimed that the Employment Agreement had been "terminated" and claimed "rights and ownership in the Properties" including trademarks and copyrights. (Id.)

---

[2] At certain points in this Order, the Court refers to both SLMI-CO and SLMI-DE as "SLMI."  This is because both companies entered bankruptcy together, and at certain points in the record the parties do not make a distinction between the two.  The Court makes a distinction between the two whenever legally relevant.

[3] Although the Court does not decide the issue at this time, the parties appear do not dispute that the Employment Agreement remained binding on Stan Lee and SLMI, as SLE's successor in interest.

1    In bankruptcy, the parties in interest negotiated a deal in order

2  to capitalize on the Debtors' intellectual property rights.  This

3  resulted in the bankruptcy court approving the sale of the properties

4  to a company called SLC, LLC, a California corporation ("SLC").  In

5  their Motion for Order to Approve Sale of Assets Free and Clear of

6  Liens, the Debtors noted a potential dispute regarding whether the

7  Employment Agreement was terminated prior to bankruptcy, but noted that

8  any litigation would "likely . . . be time consuming, expensive and may

9  result in 'bad blood' which will jeopardize future exploitation of the

10  Creative Assets."  (Pls.' Ex. 3, at 3.)  Thus, in order to maximize the

11  return to all parties in interest, they agreed to have the properties

12  sold to "an entity creatively controlled by Stan Lee."  (Id.)

13    On April 11, 2002, the bankruptcy court issued an order approving

14  the sale of assets to SLC, LLC ("Sale Approval Order").  (Pls.' Ex. 5.)

15  The Sale Approval Order incorporated by reference the Asset Purchase

16  Agreement ("APA") dated November 19, 2001.  (Id. at 2.)  The APA was

17  entered into by Debtors and "SLC, LLC, a California limited liability

18  company to be formed and controlled by Stan Lee."[4]  (Pls.' Ex. 6, at 1.)

19  The APA provided a mechanism whereby the Debtors' creditors would be

20  paid back in full through the exploitation by Stan Lee and SLC of the

21  assets.  (See id. at 4-5.)  Stan Lee explicitly represented in the APA

22  that the purchaser was "a duly formed limited liability company

23

24  [4] The APA purportedly transferred the rights in (1) the Stanlee.NET
    web site and portal; (2) The Accuser; (3) The Drifter; (4) Stan's
25  Evil Clone; (5) the Backstreet Project; (6) Gene Roddenberry's
    Starship; (7) Mary J. Blige; (8) X-Treme Heroes; (9) Police Force
26  2220; (10) Chrysallis; (11) The Stone Giant; (12) Stan Junior; (13)
    interest in a joint venture call the Lee Schultz Partnership; (14) DC
27  Comics; (15) Toon Boom; (16) Cyberworld; (17) Mobius; and (18)
    Hollywood Christmas Parade.

28

organized under the laws of California." Stan Lee signed the APA on behalf of SLC. (Id. at 6.) The bankruptcy case was finally dismissed on December 6, 2006.

The properties were never transferred to SLC, however, because SLC was never actually formed. Rather, Plaintiffs claim that the properties were transferred to QED, a Delaware limited liability company wholly owned and controlled by Stan Lee. (SAC, at 28.) Stan Lee contends that he transferred the assets to QED rather than to SLC because Stan Lee did not want his name associated with the new company that was going to exploit the assets. (Id. at 27.)

In November 2006, Plaintiffs assert that Defendants Nesfield, Galloway, and Cogan attempted to revive SLMI-CO. (Id. at 29.) These three defendants allegedly conducted a special shareholders meeting and were elected the controlling officers of SLMI-CO. (Id.) They then allegedly began using the Properties and allegedly violated Plaintiffs' asserted copyrights and trademarks. (Id.)

Plaintiffs Stan Lee, QED, and POW! initiated this action on January 9, 2007. Plaintiffs filed a First Amended Complaint on April 16, 2007. (See Docket No. 13.) In an Order issued February 19, 2008, the Court ruled that Defendants Nesfield, Galloway, and Cogan did not properly revive SLMI-CO under Colorado corporate law and, therefore, had not right to use any of SLMI's assets. (See Docket No. 63, at 12.) Thereafter, on August 25, 2008, Plaintiffs filed a Second Amended Complaint. (Docket No. 79.)

The SAC alleges claims arising under federal law for (1) copyright infringement; (2) trademark infringement pursuant to 15 U.S.C. § 1125(a); (3) trademark infringement pursuant to 15 U.S.C. § 1114; (4)

1  trademark dilution, 15 U.S.C. § 1125(c); (5) cybersquatting, 15 U.S.C

2  § 1125(d); and (6) declaratory relief, 28 U.S.C. § 2201. (SAC, at 38-

3  50.)  Plaintiffs also allege nine other state law claims. With regard

4  to copyright infringement, Plaintiffs allege that they are the owners

5  of The Accuser, Stan's Evil Clone, and The Drifter, and that Defendants

6  used, or aided and abetted the others to use, these properties without

7  Plaintiffs' authorization.  (<u>Id.</u> at 38.)  With regard to the federal

8  trademark claims, Plaintiffs allege that Defendants unauthorizedly used

9  the terms "Stan Lee Presents," "Excelsior!," "The Accuser (and

10  Accuser)," "The Drifter," "Stan Lee Media," "Stan Lee," and "Stan Lee

11  (signature)."  (<u>Id.</u> at 41-47.)  With regard to the claim for

12  cybersquatting, Plaintiffs allege that Defendants registered and used

13  the domain names "www.stanleemedia.net" and "www.stanleestudios.com,"

14  without prior authorization.[5]  (<u>Id.</u> at 47.)

15     On November 5, 2008, the Court held a status conference in this

16  matter at which time the Court ordered Plaintiffs to file a new Motion

17  for Summary Judgment in order to resolve the issue of who owns the

18  properties at issue here.

19  ///

20  ///

21  ///

22  ///

23  ///

24

25

26  [5] In the SAC, Plaintiffs added the individual defendants Peter Blume
    Christopher Belland, Peter F. Paul, and John Petrovitz.  The
27  allegations regarding these four defendants are primarily based on
28  aiding and abetting the other alleged violations.  (SAC, at 68-70.)

III.   **ANALYSIS**

    **A.   Legal Standard**

    Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); <u>Tarin v. County of Los Angeles</u>, 123 F.3d 1259, 1263 (9th Cir. 1997).

    The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  See <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325.  Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial.  See <u>id.</u> at 323-34; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1968).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." <u>Addisu v. Fred Meyer</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  Only genuine disputes – where the evidence is such that a reasonable jury could return a verdict for the nonmoving party – over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  See <u>Anderson</u>, 477 U.S. at 248; <u>Aprin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir.

1   2001) (the nonmoving party must identify specific evidence from which a

2   reasonable jury could return a verdict in its favor).

4     **B.  Ownership of the Properties**

6     The issue before the Court is what interests, if any, Plaintiffs

7   have in the copyrights and trademarks at issue, and whether those

8   interests are sufficient to afford Plaintiffs standing to bring the

9   claims alleged.  Standing of course is a threshold requirement for any

10   case brought in federal court.  <u>See</u> <u>Clark v. City of Lakewood</u>, 259 F.3d

11   996, 1006 (9th Cir. 2001) (noting that the requirements for standing

12   are an injury in fact traceable to the conduct of the defendant, and

13   the possibility that the injury will be redressed by a favorable

14   decision).  However, where as here, "the jurisdictional issue and

15   substantive issues are so intertwined that the question of jurisdiction

16   is dependent on the resolution of factual issues going to the merits,

17   the jurisdictional determination should await determination of the

18   relevant facts on either a motion going to the merits or at trial."

19   <u>Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983); <u>see</u>

20   <u>also</u> <u>Data Disc, Inc. v. Systems Tech. Assocs., Inc.</u>, 557 F.2d 1280,

21   1285 n.2 (9th Cir. 1977).

22     Under any of Plaintiffs' theories of relief, Plaintiffs must have

23   some legitimate interest in the Properties at issue.  For example,

24   federal copyright law limits the right to bring suit to the "legal or

25   beneficial owner of an exclusive right under a copyright." 17 U.S.C. §

26   501(b); <u>see also</u> <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 822 (9th

27   Cir. 2002).  Thus, copyright law requires the plaintiff to be the owner

or an exclusive licensee.  See Campbell v. Board of Trustees, 817 F.2d 499, 504 (9th Cir. 1987).  Plaintiffs' claims for trademark infringement similarly require the plaintiff to have at least some discernible interest in the mark.  See, e.g., 15 U.S.C. § 1125(a); 15 U.S.C. § 1125(d) ("A person shall be liable in a civil action by the owner of a mark . . . ." (emphasis added)); 15 U.S.C. § 1125(c)(1) (indicating that the plaintiff must be the "owner of a famous mark that is distinctive."); Waits v. Frito Lay, Inc., 978 F.2d 1093, 1109 (9th Cir. 1992) (holding that standing pursuant to 15 U.S.C. § 1125(a) exists if a party has a commercial interest in a product wrongfully identified with another's mark, or in the misused mark); Shonac Corp. v. AMKO Intern., Inc., 763 F. Supp. 919, 929 (S.D. Ohio 1991) (holding that the plaintiff must have "some discernible interest in the mark").

Accordingly, the Court must determine whether Plaintiffs have rights in the subject properties sufficient to confer standing.

### 1.  Transfer from Bankruptcy Estate

As an initial matter, the Court finds no merit to Plaintiffs' claim that they acquired rights in the Properties from the transfer of the assets from the bankruptcy estate.  In the April 12, 2002 Sale Approval Order, the bankruptcy court approved the sale of certain assets from the estate of the debtors, SLMI-CO and SLMI-DE, to a third party named SLC, LLC.  However, that transfer never took place. Rather, Plaintiffs contend that the assets were validly transferred to Plaintiff QED.

1   This argument is entirely without merit because any such transfer

2  performed was in violation of the automatic stay and, therefore, void

3  as a matter of law.  The Ninth Circuit has made clear that "violations

4  of the automatic stay are void, not voidable."  Schwartz v. United

5  States, 954 F.2d 569, 571 (9th Cir. 1992).  As a result, any purported

6  sale or transfer of assets belonging to the bankruptcy estate has no

7  effect.  Id. at 572; see also 40235 Washington Street Corp. v. Lusardi,

8  329 F.3d 1076, 1080 (9th Cir. 2003) (finding a tax sale conducted to

9  enforce a tax lien on real property was void because it was in

10  violation of the automatic stay and not approved by the bankruptcy

11  court).  Here, the bankruptcy judge approved the sale of the assets to

12  SLC, LLC, but never approved such sale to QED.  (See Pls.' Exs. 5, 6.)

13  Thus, any transfer of the assets to QED, or to any other entity for

14  that matter, was void and had not effect.  See Lusardi, 329 F.3d at

15  1080.

16   Plaintiffs argue that there was no material difference between SLC

17  and QED, and that Plaintiffs substantially complied with the Sale

18  Approval Order, because the only important fact was that the company to

19  which the assets were transferred was controlled by Stan Lee.  This

20  argument fails, however, because there are other material differences

21  between SLC and QED.  First, Stan Lee represented to the bankruptcy

22  court that SLC was a corporation registered under the laws of the state

23  of California.  (See Pls.' Ex. 6, at 6.)  However, QED is incorporated

24  under the laws of the state of Delaware.  (See SAC, at 1.)  This is not

25  a difference in name only; QED was an entirely different corporation

26  operating under different state laws of incorporation.

27

28

Second, an essential aspect of the APA approved by the bankruptcy court was the fact that SLC, as controlled by Stan Lee, would make payments to SLMI's creditors until the creditors were paid in full. (See Pls.'s Ex. 6, at 4-5.) As an entirely different entity, QED would likely not be bound by the terms of the APA, and QED would essentially be relieved from the obligation to pay back the creditors. Indeed, there is no evidence in the record that QED has performed under the APA to make payments to SLMI's creditors.[1]

Moreover, QED was formed in November of 2001, before the motion for approval of the transfer of assets was filed with the bankruptcy court. (See Pls.' Ex. 8.) QED's stated purpose was to exploit the assets transferred from SLMI's bankruptcy. (See Pls.' Ex. 18.) Plaintiffs do not explain why, if they simply decided to use a different name, they did not changed the name on the APA before it was submitted to the bankruptcy court for approval.

Plaintiffs also assert that if Defendants take umbrage to the sale of assets to QED allegedly in violation of the Agreement, they must bring the action in front of the Bankruptcy Court. Plaintiffs view any argument concerning the validity of the transfer as a collateral attack on the bankruptcy court's April 11, 2001 Order. Plaintiffs, however, misconstrue the nature of Defendants' actions in this case. Defendants are not asserting, as a collateral matter, that the bankruptcy court's Sale Approval Order is void and cannot be enforced. Indeed, under such circumstances the prudent course of action would be to return to the

---

[1] The only evidence that Plaintiffs have offered in this regard are declarations from Junko Kobayashi and Gill Champion stating that they paid approximately $7,500.00 to SLMI. There is no evidence, however, that any amount was paid to SLMI's *creditors*.

bankruptcy court and nullify the sale order.  Instead, Defendants argue that Plaintiff QED was never granted rights in the intellectual property as a result of the sale order and, accordingly, there is no basis for its claims in the present action.  Defendants make use of the Sale Approval Order only insomuch as it establishes that Plaintiff QED is not the rightful owner of the properties at dispute.  Accordingly, the Court finds that Defendants' actions in this case do not constitute an improper collateral attack.

### 2.  Plaintiffs' Other Ownership Theory

Plaintiffs assert that they obtained rights in the Properties by virtue of the fact that the Properties were never property of the bankruptcy estate.  Plaintiffs assert two alternate bases for this theory.  First, Plaintiffs claim that Stan Lee's Employment Agreement was unenforceable or void because it was an agreement for personal services for a term in excess of that allowed under California Labor Code § 2855.  (See Pls.' Mot., at 4.)  Secondly, Plaintiffs argue that Stan Lee properly terminated the Employment Agreement by letter on January 30, 2001, and that, therefore, Stan Lee's rights in the Properties automatically reverted back to him on that date.  (See id., at 3-4.)  Under either theory, Plaintiffs contend that the Properties were never property of the bankruptcy estate.[2]

---

[2] Plaintiffs may also have a sufficient interest in the trademarks at issue here because they may not have been involved in the sale of assets from the bankruptcy court.  However, the rights in the trademarks may be affected by Stan Lee's apparent assignment of rights in the Employment Agreement.  Thus, Plaintiffs' claims for trademark infringement may also depend on the outcome of the litigation surrounding the Employment Agreement.

It appears, however, that resolution of these issues will necessarily involve SLMI in the litigation. For example, if Stan Lee asserts his claim based on ownership of the properties due to Stan Lee's termination of the employment contract, this dispute will have to be litigated between Stan Lee and SLMI. At this time, however, SLMI does not have anyone to speak on its behalf. SLMI-CO is currently going through a procedure in the Colorado courts to elect a board of directors. Because any further litigation will necessarily depend on the result of that election, this case should be stayed and placed on the Court's inactive calendar pending the outcome of that proceeding. The companion case, <u>Stan Lee Media, Inc. v. Stan Lee, et al.</u>, CV 07-4438 SVW (SSx), is also stayed and placed on the Court's inactive calendar in the interim. Once SLMI has a representative who is authorized to speak on its behalf, the parties should notify this court and the cases will be returned to the active calendar so that these further issues can be resolved.

### D. Motions to Withdraw as Counsel

As indicated at the hearing, having received no opposition, O'Donnell & Associates' Motion to Withdraw as Counsel is GRANTED. (<u>See</u> Docket No. 95.) The Andersen Firm, P.C.'s Motion to Withdraw as Counsel is DENIED. The Andersen Firm is currently representing several of the individual defendants and SLMI in this action, and they have indicated their opposition to the Andersen Firm's withdrawal. The Andersen Firm may renew this request once SLMI has a elected a duly

1    authorized board of representatives, but any withdrawal by the Anders
2    Firm is not appropriate at this time.

3

4    **IV.   CONCLUSION**

5

6         The Court finds that Plaintiff QED did not acquire an interest in
7    the Properties by virtue of a transfer from the bankruptcy court
8    because any such transfer was done in violation of the automatic stay,
9    and was therefore void as a matter of law.  As factual issues
10   potentially remain regarding whether Plaintiffs have interests in the
11   Properties sufficient to confer standing, Plaintiffs' Motion for
12   Partial Summary Judgment on the issue of standing is DENIED.  With
13   regard to Plaintiffs' alternative theory of ownership, these cases are
14   STAYED pending the outcome of the proceedings in Colorado, which will
15   result in Defendant SLMI-CO having a representative that is duly
16   authorized to speak on its behalf.  The parties are ordered to inform
17   the Court, in writing, when the stay should be lifted.

18

19
         IT IS SO ORDERED.
20

21   DATED:___January 20, 2009_____          _____
22                                              STEPHEN V. WILSON
                                                UNITED STATES DISTRICT JUDGE
23

24

25

26

27

28

                                      14

# EXHIBIT B

A. RAYMOND HAMRICK, III *☐
DAVID L. EVANS *☐
WILLIAM G. KELSBERG
KENNETH A. HEARN
DOUGLAS K. LACKEY *
KENNETH A. KOTARSKI
CHAZ C. RAINEY **☒⁄
CHRISTOPHER G. FOSTER
JEFFREY A. WHITE
ELLIE WIEDER
JONATHAN DUTTON
NEER LERNER
JEFF W. POOLE
RUZAN STEPANYAN
JOSH H. EICHENSTEIN
JENNIFER ESTRADA
JAMIE A. SHEPARD
ELAINE H. ROARK

*ALSO ADMITTED IN NEVADA
☐ALSO ADMITTED IN COLORADO
☒ALSO ADMITTED IN NEW YORK
*ALSO ADMITTED IN TEXAS
⁄ALSO ADMITTED IN WASHINGTON DC
‡ADMITTED IN NEVADA ONLY

# HAMRICK & EVANS, LLP

2600 WEST OLIVE AVENUE
SUITE 1020
BURBANK, CALIFORNIA 91505
TELEPHONE (818) 763-5292
FACSIMILE (818) 763-2308

WWW.HAMRICKLAW.COM

NEVADA OFFICE
7575 LAS VEGAS DRIVE
SUITE 150
LAS VEGAS, NV 89128
TELEPHONE (702) 410-5111

NORTHERN CALIFORNIA
OFFICE
900 FULTON AVENUE
SUITE 250
SACRAMENTO, CA 95825
TELEPHONE (714) 394-4409

OF COUNSEL:
MARTIN J. BARAB
GEORGE KNOPFLER
JAMES M. PAZOS
THOMAS P. SCHMIDT
GLEN A. ROTHSTEIN
JONATHON C. ROBERTS‡

November 11, 2019

**VIA EMAIL AND FIRST CLASS CERTIFIED MAIL**

Jonathan D. Freund, Esq.
FREUND LEGAL
427 N. Camden Drive
Beverly Hills, California 90210
Email: jonathan@freundlegal.com

***NOTICE OF INTENT TO FILE RULE 11***
***MOTION FOR SANCTIONS***

|  |  |
|---|---|
| **Re:** | ***Joan Celia Lee v. POW! Entertainment, Inc.*** |
| **Case:** | **United States District Court, Central District of California, Case No. 2:19-cv-0853** |
| **Our Client** | **POW! Entertainment, Inc.** |

Dear Mr. Freund:

We write on behalf of our client, Defendant POW! Entertainment, Inc. ("POW!"), to advise you of our client's intent to seek sanctions against you and your client, Joan Celia Lee ("Plaintiff"), pursuant to Federal Rules of Civil Procedure 11 for filing the Complaint in the above-referenced matter. The Complaint seeks to enforce purported contractual rights under a 1998 employment agreement between Stan Lee and Stan Lee Entertainment, Inc. (the "1998 Agreement"). The entire Complaint hinges upon the enforcement of the 1998 Agreement.

However, the 1998 Agreement was conclusively found to be *unenforceable* by the United States District Court for the Southern District of New York and multiple other federal courts. Indeed, the enforceability of the 1998 Agreement was the subject of no fewer than *five* lawsuits, *all* of which ultimately held it to be unenforceable. Moreover, the 2nd, 9th and 10th Circuit Courts of Appeal have all affirmed District Court decisions finding the 1998 Agreement unenforceable. And significantly, the very court in which you filed the present action, the Central District of

**HAMRICK & EVANS, LLP**

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 2

California, has already held that your client's claims are barred under the doctrine of *res judicata*. Simple stated, these issues have all been exhaustively litigated and re-litigated *ad nauseam*, and your client's case, clearly brought for an improper purpose, is a waste of judicial resources.

Consequently, if you do not withdraw Plaintiff's Complaint and dismiss the claims set forth therein *with prejudice* within twenty-one (21) days of the date of this letter, we will be seeking the maximum award of sanctions allowable under the law pursuant to Fed. R. Civ. P. 11.

## A.    THE LEGAL STANDARD UNDER FED. R. CIV. P. 11

Rule 11 of the Federal Rules of Civil Procedure provides Courts with the authority to impose sanctions on any person who signs and presents a pleading, motion, or other paper that is either "frivolous" or is filed for an "improper purpose."[1] Rule 11 states, in pertinent part:

By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

If this certification requirement is violated, then "the court may impose an appropriate

---

[1] *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).

HAMRICK & EVANS, LLP

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 3

sanction upon the parties that have violated subdivision (b) or are responsible for the violation."[2]

The Ninth Circuit has held that, under Rule 11, the imposition of sanctions for either "frivolousness" or an "improper purpose" does *not* require a finding of subjective bad faith by the signer of the paper.[3] Rather, Rule 11 demands only that such inquiries be measured against an objective standard of reasonableness.[4] A claim is "frivolous" if it is "'both baseless and made without a reasonable and competent inquiry."[5] Put another way, a frivolous claim is one that is "legally unreasonable, or *without legal foundation.*"[6] The filing attorney is required to conduct a reasonable inquiry into the legal underpinnings of their claims before signing a complaint.[7]

The Ninth Circuit has held that where, as here, a plaintiff brings claims clearly barred by the applicable statute of limitations, in the absence of some legally cognizable justification, such claims are *inherently* frivolous.[8] Furthermore, in cases such as the one at bar, where parties assert the same or substantially similar claims as those previously decided in other cases, Rule 11 sanctions are proper.[9] This also applies to lawyers who repeatedly file claims that have been rejected as unwarranted by law in other lawsuits on behalf of different clients.[10]

**B.    EACH AND EVERY CLAIM WITHIN PLAINTIFF'S COMPLAINT IS FRIVOLOUS**

The 1998 Agreement, which is the sole basis of the claims asserted in Plaintiff's Complaint, has been definitively established by multiple courts (both trial and appellate) to be unenforceable. The claims raised in your Complaint are clearly barred under the doctrine of *res judicata*.

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any

---

[2]  Fed. R. Civ. P. 11(c)
[3]  *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986), overruled on other grounds in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).
[4]  *Zaldivar* at 829; *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991).
[5]  *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997), *quoting Townsend* at 1362.
[6]  *Zaldivar* at 831 (Emphasis added).
[7]  *See* Fed. R. Civ. P. 11(b) advisory committee's note ("[Subdivision b requires] attorneys and pro se litigants to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents, and prescribing sanctions for violation of these obligations").
[8]  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 653 (9th Cir. 1988).
[9]  *Maciosek v. Blue Cross & Blue Shield*, 930 F.2d 536, 542 (7th Cir. 1991); *Welk v. GMAC Mortg., LLC*, 720 F3d 736, 738–739 (8th Cir. 2013).
[10]  *Roundtree v. United States*, 40 F3d 1036, 1040 (9th Cir. 1994).

HAMRICK & EVANS, LLP

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 4

claims that were raised or could have been raised in the prior action."[11] The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties."[12] "The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'"[13] "Whether a prior disposition is published or unpublished is of no consequence—unpublished decisions have the same preclusive effect."[14] "The doctrine of *res judicata* rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent."[15]

In the present case, the very court in which Plaintiff has brought her claims has already ruled those claims to be barred by *res judicata*.[16] The claims are, in effect, doubly barred (or arguably quintuply barred). In the case of *Stan Lee Media, Inc. v. Stan Lee,* to which POW! and Stan Lee were both parties,[17] the District Court expressly ruled that the enforceability of the 1998 Agreement was barred by the doctrine of *res judicata*, noting that the Southern District of New York, in the case of *Abadin v. Marvel,* had already issued a ruling on the merits, finding that (1) the 1998 Agreement was terminated by Stan Lee in 2001, and the statutory period in which to challenge that termination had lapsed; and (2) even if it hadn't been terminated in 2001, as a personal service contract, it would have expired by its own terms by 2005.[18] As stated by the *Abadin* Court, "[t]here can be no attempt to enforce this contract beyond the statutory term."[19]

---

[11] *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001), quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997).

[12] *Id.*

[13] *Owens* at 714, quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000).

[14] *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1013 (9th Cir. 2019), citing 9th Cir. R. 36-3.

[15] *Hatchitt v. United States*, 158 F.2d 754, 757 (9th Cir. 1946).

[16] *Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225-SVW, 2012 WL 4048871, at *3 (C.D. Cal. 2012), *aff'd*, 585 F. App'x 597 (9th Cir. 2014).

[17] While your client alleges to be the "successor in interest" of Stan Lee, it should be noted that such claim within the context of this case is highly dubious, and her legal standing is questionable at best. Nevertheless, given the overwhelming judicial authority barring her claims, we need not even address the issue of standing. Your client's claims are hopelessly meritless before even reach the preliminary issue of standing.

[18] *Abadin v. Marvel Entertainment, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) (holding 1998 Agreement was terminated by Stan Lee in 2001 and the statute of limitations to challenge that termination had lapsed, and further finding that the 1998 Agreement, if not expressly terminated, expired in 2005 pursuant to *Cal. Labor Code* § 2855a) (appeal dismissed for failure to prosecute *Abadin v. Marvel Entertainment, Inc.*, No. 10–1717 (2d Cir. 2010)).

[19] *Id.* at 6.

**HAMRICK & EVANS, LLP**

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 5

**But wait, there's more!** In *Stan Lee Media, Inc. v. Walt Disney Company*, a case before the District of Colorado, the same 1998 Agreement was under review, and the court, observing that this matter had already been decided on its merits by multiple prior courts, similarly dismissed the claims on grounds of collateral estoppel.[20]   The District of Colorado even went so far as to point out "the litigation history arising out of the 1998 Agreement stretches over more than a decade and at least six courts."[21]

Taking its cue from both the Southern District of New York and the Central District of California, the District Court of Colorado held that plaintiff was precluded from re-litigating the issue of its rights under the 1998 Agreement.[22]   Moreover, the Colorado case, like the case against POW! in the Central District of California, was affirmed on appeal, echoing the sentiment of the Ninth Circuit when it noted that the plaintiff's claims were "simply implausible."[23]

**But wait, there's more!** In a second case before the Southern District of New York, Stan Lee Media again, this time intervening into a previously settled case between Stan Lee and Marvel Enterprises, tried to enforce its purported rights under the very same 1998 Agreement, making the same legal arguments raised in the prior cases (the same arguments your client has raised in her present Complaint). Once again, the Court recounted the holding of the *Abadin* case, noting that any efforts to resuscitate the rights purportedly granted under the 1998 Agreement were time barred under the applicable statutes of limitations.[24]

**But wait, there's more!** Stan Lee Media sought to resuscitate the 1998 Agreement in yet another case, this time before the Eastern District of Pennsylvania. There, too, the Court found that the intervenor's efforts to assert rights under the 1998 Agreement were precluded under the doctrine of *res judicata*,[25] stating "the Court is easily satisfied that the claims clearly deal with the same subject matter, and it would be unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy."[26]

**But wait, there's more!** The decisions from these prior courts decisively find that your

---

[20] *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-CV-2663-WJM-KMT, 2013 WL 4776026 (D. Colo. Sept. 5, 2013), *aff'd*, 774 F.3d 1292 (10th Cir. 2014).
[21] *Id.*
[22] *Id.*
[23] *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014) (*quoting Stan Lee Media, Inc. v. Lee*, 585 F. App'x 597, 598 (9th Cir. 2014)).
[24] *Lee v. Marvel Enterprises, Inc.*, 765 F. Supp. 2d 440, 446-448 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 14 (2d Cir. 2012).
[25] *Disney Enterprises, Inc. v. Entertainment Theatre Group*, No. CIV.A. 13-5570, 2014 WL 5483487, at *9 (E.D. Pa. 2014)
[26] *Id.* at *6 (internal quotations omitted).

**HAMRICK & EVANS, LLP**

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 6

client's claims are not only barred under the doctrines of *res judicata* and collateral estoppel, but also that they are patently *frivolous*. In deciding a motion for attorney's fees, the District Court of Colorado specifically found the assertion of rights under the 1998 Agreement to be frivolous. "The Court finds that it was objectively unreasonable for Plaintiff to pursue its copyright claims under the 1998 Agreement after three District Courts had previously found that it had no basis for asserting ownership of any of the claimed copyrights."[27]

The claims raised in your Complaint have been vociferously litigated and re-litigated *ad nauseum*. To bring these claims before this Court again, after they have been struck down so many times before, is a grossly selfish and inconsiderate waste of the Court's time and resources. Litigation is not a game. The federal courts are not a vehicle for litigants to harass others by filing frivolous claims which wholly lack any conceivable merit under the existing facts or law. As such, if you fail to withdraw the present Complaint within 21 days hereof, we will seek sanctions against you under Fed. R. Civ. P. 11.

3.   **PLAINTIFF'S COMPLAINT WAS FILED FOR AN IMPROPER PURPOSE**

The purpose of the present lawsuit is not, in fact, to seek an adjudication on the merits (as that was a doomed endeavor from the start), but rather to generate adverse publicity for POW! and to smear the reputations of POW! and its president, Gill Champion. That improper purpose is yet another ground for imposing sanctions under Fed. R. Civ. P. 11.[28] Furthermore, the improper purpose of the Complaint is evinced by its numerous immaterial, unfounded factual allegations – most of which appear to serve no purpose other than to provide scandalous accusations against POW! and its management.   Of the nineteen (19) paragraphs set forth in the Complaint's "Statement of Facts," fewer than half of them contain any factual allegations materially relevant to your claims. Instead of asserting facts to support its legal claims, the Complaint appears to be little more than a vehicle to praise the Plaintiff while denigrating POW! and its management. Below, we have outlined just some of the obvious factual misrepresentations contained within the Complaint:

| FALSE ALLEGATION | TRUTH |
|---|---|
|  |  |

---

[27] *Stan Lee Media, Inc. v. Walt Disney Company*, No. 12-CV-2663-WJM-KMT, 2014 WL 3767191, at *2 (D. Colo. July 31, 2014) citing *Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*, 407 F.Supp.2d 41, 46 (D.D.C.2005).

[28] *See, e.g., Fox v. Butcher*, 794 F.2d 34, 36–38 (2d Cir. 1986) (affirming sanctions for complaint that, where "the record shows that it was made as part of a conscious effort to harass appellee"); *Galonsky v. Williams*, No. 96-cv-6207, 1997 WL 759445, at *4–6 (S.D.N.Y. Dec 10 1997) (imposing sanctions for filing claims against talk show host that lacked support in the law and the "baseless claims [were filed] as part of a public relations campaign in order to embarrass the defendant and thereby coerce a settlement," as evident, in part, by a press conference held by counsel).

HAMRICK & EVANS, LLP

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 7

| | |
|---|---|
| "The success of [Stan Lee Media] sparked his "trusted partners" [defined as Gill Champion and Arthur Lieberman] to join together to devise a plan to take advantage of the dot.com crash of November 2000, to engineer the financial collapse of Lee's company through a series of financing guaranteed to collapse the company's stock so that the company could be placed into Chapter 11 Bankruptcy protection. In this way, they were enabled to loot the assets of Stan Lee Entertainment, a/k/a Stan Lee Media, and enrich themselves at the expense of Stan Lee, the creditors and shareholders. These "trusted" partners achieved their dastardly goals with alacrity and through their betrayal of Stan Lee's trust and lack of business and legal acumen they engineered the misappropriation and theft of Stan Lee's intellectual property rights. Complaint, ¶ 16 (*see also* ¶ 32). | It is a well-documented fact that the demise of Stan Lee Media, Inc. is attributable to the criminal acts of the company's co-founder, Peter Paul and certain co-indicted conspirators. As detailed in his criminal indictment, Peter Paul was engaged in a scheme that involved borrowing funds on margin, effectively liquidating large blocks of Stan Lee Media stock while manipulating the stock price to conceal the downward pressure that this liquidation would have caused. *See USA v. Peter Paul, Stephen M. Gordon, Jeffrey Pittsburg, Charles Kusche and Jonathan Gordon*, 2004 WL 5745186 (E.D.N.Y.).<br><br>Peter Paul was sentenced to ten years in prison for the foregoing activities.[29] |
| That "from November 2001 through Stan Lee's death in November 2018 the former management of Stan Lee Entertainment [...] used their new company POW! Entertainment to deceive and manipulate Stan into believing he had retained creator rights and rights to his name and likeness, which they knew and concealed remained assigned to and the property of [SLE]." Complaint, ¶18 (*see also* ¶¶ 33, 34 and 36). | The 1998 Agreement was repeatedly held by multiple courts to be "unenforceable" and Stan Lee was present for and personally witnessed those proceedings, as he was a direct litigant.[30] There was nothing to conceal and no one to deceive or manipulate. Stan Lee plainly saw for himself that the 1998 Agreement was invalid and unenforceable. Moreover, in those same lawsuits, Stan Lee actively argued for the invalidity of that 1998 Agreement. Stan Lee's true successor-in-interest would be judicially estopped from taking a contrary legal position. |
| "[A] forensic team of lawyers and accountants [...] discovered that POW! and Champion had purported to assign Stan Lee's name and rights of publicity to Camsing International. Complaint, ¶ 19. | No such team of lawyers or accountants could have found anything of the sort, since neither POW! nor Champion have ever assigned any publicity rights to Camsing International. |
| "Through this action [Plaintiff] has joined forces with [...] Stan Lee Entertainment, Inc., to not only expose | Stan Lee Entertainment, Inc. is not a party to the present action. Moreover, there is no evidence of any fraud |

[29] "Peter F. Paul ('Paul'), a thrice convicted felon, [who served] a ten-year prison term for manipulating the publicly traded stock of SLMI [Stan Lee Media, Inc.] before its collapse in early 2001, is the architect of the present appeal and an individual with an apparently insatiable appetite for frivolous and duplicative litigation against Marvel and Lee, among others. Paul and his affiliates own or control approximately 28% of the common stock of SLMI. [...] Paul and his cohorts, acting in the name of SLMI, seek to re-litigate previously dismissed claims." Appellee's Brief filed in *Stan Lee v. Marvel*, Case No. 11-831-cv (2nd Cir.) 2011 WL 4351657, at *4 (internal citations omitted).

[30] *See e.g., Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225-SVW, 2012 WL 4048871, at *3 (C.D. Cal. 2012), *aff'd*, 585 F. App'x 597 (9th Cir. 2014).

HAMRICK & EVANS, LLP

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 8

| | |
|---|---|
| manifold frauds visited upon Stan Lee from 2001 through 2018 by Defendant, its CEO Gill Champion and a range of unsavory characters,...." Complaint, ¶ 20. | committed by POW!, Gill Champion, or any other executive of POW! Unsurprisingly, there are no actual facts alleged in the Complaint to back up this conclusory and wholly unsupported statement. |
| "In June , 2019, it was revealed, it was revealed in multiple media outlets in China and around the world, with the arrest and jailing of Vivian Lo, the Founder and Chairman of Camsing International, the current alleged and erstwhile parent of POW!, that Lo and Camsing, aided by Champion, have been engaged over the last three years in a massive $1.2 billion finance fraud. The ongoing frauds by POW! in assigning licenses to use the Lee Rights to innocent parties around the world must be curtailed at the earliest opportunity for this Court to act." Complaint, ¶ 38. | Setting aside the fact that the third-party newsprint would be inadmissible hearsay, we are not aware of any news outlet that implicated Gill Champion or POW! in any criminal conduct whatsoever. The only accusation of criminality was from Plaintiff's own defamatory and self-serving press release issued in early August 2019. |
| That Stan Lee assigned to Stan Lee Entertainment, Inc. a "perpetual and unconditional assignment of every imaginable creator right he owned or would own in the future, along with the exclusive rights to his name and likeness." Complaint, ¶ 14 (*see also* ¶¶ 26, 27, 39). | The alleged assignment was not unconditional, was not perpetual, was not irrevocable, and was limited only to those works "disclosed in writing to, published, merchandised, advertised and/or licensed by [Stan Lee Entertainment])." Moreover, the subject contract, by its own terms, was conditioned upon Lee receiving a regular salary (which ceased in 2001) and furthermore excluded any posthumous rights. |
| Again, the most glaring unscrupulous activity was falsely claiming the IP rights to Stan Lee's IP. Complaint, ¶ 37. | The Complaint actually acknowledges that Stan Lee specifically assigned his intellectual property rights to POW! "on no less than 6 occasions." Complaint, ¶ 18, ln. 10. |

Your intent to use the Complaint to smear the reputation of POW! and its management is further supported by the fact that, while you promptly alerted the media of the filing of the Complaint,[31] you have still yet to serve the Complaint on POW! more than a month after its initial filing.  If this matter were so desperately in need of immediate adjudication, as is asserted in Plaintiff's Complaint, then you would have promptly served the Complaint on POW!, whose offices are located literally within walking distance of your own. However, more than a month has passed and, not surprisingly, you have yet to serve the Complaint, likely because you know its

---

[31] Within less than 24 hours after the Complaint was filed, news stories concerning the Complaint appeared in the Hollywood Reporter, Courthouse News, and other outlets. Furthermore, the Complaint echoes several factual misrepresentations made by your client in a press release she circulated the month preceding the lawsuit.

**HAMRICK & EVANS, LLP**

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 9

contents to be fatally flawed as a matter of law.[32]

### 4.    THE APPROPRIATE MEASURE OF SANCTIONS AGAINST PLAINTIFF

"[T]he central purpose of Rule 11 is to deter baseless filings in district court[.]"[33] The Advisory Committee notes to the 1993 amendments to Rule 11 set forth factors that may be considered in determining what sanctions to award for a violation, including "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case [and] what amount is needed to deter similar activity by other litigants."[34] Other factors to consider are: "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law." [35]

Here, your intent is clear—to bring wholly frivolous claims in an effort to smear the reputation of POW! and its management. The Complaint is replete with frivolous claims and allegations that infect the entire document from start to finish. And, amazingly, these frivolous claims were certified by a licensed attorney. Moreover, it is widely known that the Plaintiff has recently inherited an estate worth between $50 and $70 million. Obviously, given her significant financial resources, a modest award of sanctions will do little to deter future bad acts. "[A] court can properly consider plaintiff's ability to pay monetary sanctions as one factor in assessing sanctions."[36] Moreover, a court is within its power to order a substantial monetary award where only such an award would deter the sanctioned party from engaging in similar conduct in the future.[37]

Given the willful conduct at play, the insidious intent of the underlying Complaint, the extraordinary degree to which the claims are meritless, and Plaintiff's financial status, we will be requesting that the Court award sanctions in this matter of no less than Five Million dollars (USD

---

[32] In point of fact, the Complaint is so rife with defects that they are too numerous to fully recount in this letter. But as an example, (1) Plaintiff's claim as a successor in interest to the 1998 Agreement fails as a matter of law; (2) all of the Plaintiff's claims are barred by multiple statutes of limitations; (3) the 1998 Agreement, by its own express terms, does not grant the rights Plaintiff purports to seek in her Complaint; and (4) several factual allegations not referenced herein are easily disprovable through publicly available evidence, including multiple sources subject to judicial notice.
[33] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 553 (1991).
[34] Fed. R. Civ. P. 11, 1993 Advisory Notes.
[35] *Id.*
[36] *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).
[37] *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995), *cert. denied*, 517 U.S. 1136 (1996).

# HAMRICK & EVANS, LLP

Jonathan Freund, Esq.
Re: *Lee v. POW!*
November 11, 2019
Page 10

$5,000,000.00).

**THIS LETTER, ALONG WITH THE ATTACHED COPY OF DEFENDANTS' NOTICE OF MOTION, NOTIFIES YOU THAT WE WILL SEEK SANCTIONS AGAINST BOTH YOU AND YOUR CLIENT PURSUANT TO FED. R. CIV. P. 11(C)(1) IF THE COMPLAINT IS NOT WITHDRAWN WITHIN TWENTY-ONE (21) DAYS OF THE DATE HEREOF. YOU ARE HEREBY ON NOTICE.  GOVERN YOURSELF ACCORDINGLY.**

This letter is not a full recitation of POW!'s claims and rights or the facts relevant hereto and nothing in this letter shall be deemed a relinquishment, waiver, or forfeiture of any rights or remedies by POW!, all of which are expressly reserved under all applicable federal and state laws. If you have any questions about this letter or its contents, please do not hesitate to contact me at my office at (818) 763-5292 or by email at crainey@hamricklaw.com.

Sincerely,

CHAZ C. RAINEY

# EXHIBIT C

Chaz C. Rainey (State Bar No. 294754)
crainey@hamricklaw.com
George Knopfler (State Bar No. 094041)
gknopfler@hamricklaw.com
Kenneth A. Hearn (State Bar No. 87537)
khearn@hamricklaw.com
HAMRICK & EVANS, LLP
2600 West Olive Avenue, Suite 1020
Burbank, California 91505
Telephone No.: (818) 763-5292
Fax No.: (818) 763-2308

*Attorneys for*
*POW! Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN CELIA LEE, as Trustee for the Lee Family Survivor's Trust "A" Date October 12, 1985,<br><br>        Plaintiff,<br><br>    v.<br><br>POW! ENTERTAINMENT, INC., a Delaware Corporation; and DOES 1 through 10, inclusive, in their individual and official capacities;<br><br>        Defendants. | Case No.: 2:19-cv-08353<br><br>(Case assigned to Hon. Otis Wright)<br><br>Complaint Filed:    September 26, 2019<br><br>**DEFENDANT POW! ENTERTAINMENT, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Hearing Date:<br>Time: 1:30 p.m.<br>Dept.: 5-D |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on ____ ___, 2019, at 1:30 p.m., in Courtroom 5-D of the United States District Court located at 350 West 1st Street, Suite 4311, Los

HAMRICK & EVANS, LLP

Angeles, California 90012-4565, before the Honorable Otis Wright, United States District Court Judge, Defendant POW! Entertainment, Inc. will move the Court for sanctions against Plaintiff Joan Celia Lee, as Trustee for the Lee Family Survivor's Trust "A" Date October 12, 1985, pursuant to Fed. R. Civ. P. 11 for filing the Complaint on the grounds that the claims and legal contentions contained therein are not warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law and that Plaintiff filed the Complaint for an improper purpose. This Motion will be made and based on this Notice, the Memorandum of Points and Authorities, the pleadings and papers filed herein including any reply papers filed by Defendants, on the oral argument that the Court may desire to consider, and on such other evidence and argument that the Court may desire to consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on _____ ___, 2019.

DATED: _____ ___, 2019.

Respectfully submitted,
HAMRICK & EVANS LLP

By: /s/ Charles C. Rainey
Charles C. Rainey
Attorney for Defendant
POW! Entertainment, Inc.

# **TABLE OF CONTENTS**

                                                                                   **Page**

I.    INTRODUCTION ............................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

      A.    The 1998 Agreement ................................................ 3

      B     The Conversion from Stan Lee Entertainment to Stan Lee Media ....... 4

      C     Peter Paul's Illegal Activities and the Demise of Stan Lee Media. ....... 5

      D     Stan Lee's Termination of the 1998 Agreement. ..................... 5

      E     The Formation and Operation of POW! Entertainment ................. 6

      F     Peter Paul's Insatiable Appetite for Frivolous and Duplicative Litigation.
            .................................................................. 7

III.  APPLICABLE LAW AND ARGUMENT ........................................ 11

      A.    The Present Case is Frivolous Because Each And Every Claim Is Barred
            By The Doctrines Of Res Judicata And Collateral Estoppel. ............. 13

      B.    The Present Case Was Brought For The Improper Purpose Of Garnering
            Negative Publicity Against The Defendant And Its Management. .... 17

      C.    The Appropriate Measure Of Sanctions In This Case, Given The Willful
            Nature Of The Violations And The Plaintiff's Financial Status, Should
            Be No Less Than Five Million Dollars ................................ 20

IV.   CONCLUSION .............................................................. 22

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

## **TABLE OF AUTHORITIES**

**Page**

### Cases

*Abadin v. Marvel Entertainment, Inc.*,
  No. 09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) ..................
  1, 4, 5, 8, 9, 14

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*,
  498 U.S. 533 (1991) ........................................................................... 20, 21

*Buster v. Greisen*,
  104 F.3d 1186 (9th Cir. 1997).................................................................3, 12

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .............................................................................9, 20

*Disney Enterprises, Inc. v. Entertainment Theatre Group*, No.
  CIV.A., 3-5570, 2014 WL 5483487 (E.D. Pa. 2014) ................................6, 8, 10, 16

*Fox v. Butcher*,
  794 F.2d 34 ..................................................................................................6

*Frank v. United Airlines, Inc.*,
  216 F.3d 845 (9th Cir. 2000)....................................................................4, 13

*G.C. & K.B. Invs., Inc. v. Wilson*,
  326 F.3d 1096 (9th Cir. 2003)..................................................................2, 11

*Galonsky v. Williams*,
  No. 96 ..........................................................................................................6

*Hatchitt v. United States*,
  158 F.2d 754 (9th Cir. 1946)....................................................................4, 14

*Hudson v. Moore Business Forms, Inc.*,
  836 F.2d 1156 (9th Cir. 1987)......................................................................17

*In re Grantham Bros.*,
  922 F.2d 1438 (9th Cir. 1991)......................................................................17

*Kaffaga v. Estate of Steinbeck*,
  938 F.3d 1006 (9th Cir. 2019)..................................................................4, 14

*Lee v. Marvel Enterprises, Inc.*,
  765 F. Supp. 2d 440 (S.D.N.Y. 2011)...................................................1, 8, 9, 15

Lorentzen v. Anderson Pest Control,
  64 F.3d 327 (7th Cir. 1995)...................................................................10, 21

*Maciosek v. Blue Cross & Blue Shield*,
  930 F.2d 536 (7th Cir. 1991).....................................................................3, 13

*Mir v. Little Co. of Mary Hosp.*,

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

844 F.2d 646 (9th Cir. 1988) ......................................................... 3, 12

*Owens v. Kaiser Found. Health Plan, Inc.,*
244 F.3d 708 (9th Cir. 2001) ......................................................... 4, 13

*Paciulan v. George,*
38 F. Supp. 2d 1128 (N.D. Cal. 1999) ......................................... 17

*Pannonia Farms, Inc. v. Re/Max Int'l, Inc.,*
407 F.Supp.2d 41 (D.D.C.2005) ................................................. 2, 16

*Roundtree v. United States,*
40 F3d 1036 (9th Cir. 1994) ......................................................... 3, 13

*Stan Lee Media, Inc. v. Lee,*
585 F. App'x 597 (9th Cir. 2014) ................................................. 1, 15

*Stan Lee Media, Inc. v. Walt Disney Co.,*
774 F.3d 1292 (10th Cir. 2014) ................................................... 1

*Townsend v. Holman Consulting Corp.,*
929 F.2d 1358 (9th Cir. 1991) ..................................................... 3, 12

*USA v. Peter Paul, Stephen M. Gordon, Jeffrey Pittsburg, Charles Kusche and Jonathan Gordon,*
2004 WL 5745186 (E.D.N.Y.) ..................................................... 18

*Warren v. Guelker,*
29 F.3d 1386 (9th Cir. 1994) ........................................... 10, 12, 21

*Welk v. GMAC Mortg., LLC,*
720 F3d 736 ................................................................................. 3, 13

*Western Radio Servs. Co. v. Glickman,*
123 F.3d 1189 (9th Cir.1997) ....................................................... 4, 13

*Zaldivar v. City of Los Angeles,*
780 F.2d 823 (9th Cir. 1986) ....................................................... 3, 12

**Statutes**

Cal. Labor Code § 2855(a) ............................................................. 9, 14

**Rules**

9th Cir. R. 36-3 ............................................................................... 4, 14

Fed. R. Civ. P. 11(b) ........................................................... 1, 11, 17, 22

Fed. R. Civ. P. 11(c) ........................................................ 3, 10, 11, 12, 23

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

HAMRICK & EVANS, LLP

1   COMES NOW Defendant POW! ENTERTAINMENT, INC. ("POW!") and

2   hereby moves this Court for entry of an Order of sanctions against Plaintiff, JOAN

3   CELIA LEE ("JC Lee"), pursuant to Fed. R. Civ. P. 11(b) and in support thereof, state

4   as follows:

5                    **MEMORANDUM OF POINTS AND AUTHORITIES**

6   **I.    INTRODUCTION**

7         Plaintiff has brought the present frivolous suit for the improper purpose of eliciting

8   negative press against the Defendant and its management. The present case purports to

9   seek the enforcement of contractual rights allegedly founded under a 1998 employment

10  agreement between Stan Lee and Stan Lee Entertainment, Inc. (the **"1998 Agreement"**).

11  The entire Complaint hinges upon the enforcement of that 1998 Agreement.  However,

12  the 1998 Agreement was conclusively found to be unenforceable by the United States

13  District Court for the Southern District of New York as well as multiple other federal

14  courts. *Abadin v. Marvel Entertainment, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL

15  1257519 (S.D.N.Y. Mar. 31, 2010) (holding 1998 Agreement was terminated by Stan

16  Lee in 2001 and the statute of limitations to challenge that termination had lapsed, and

17  further finding that the 1998 Agreement, if not expressly terminated, expired in 2005

18  pursuant to *Cal. Labor Code* § 2855a) (appeal dismissed for failure to prosecute *Abadin*

19  *v. Marvel Entertainment, Inc.,* No. 10–1717 (2d Cir. 2010)); *Stan Lee Media, Inc. v. Walt*

20  *Disney Co.*, No. 12-CV-2663-WJM-KMT, 2013 WL 4776026 (D. Colo. Sept. 5, 2013),

21  *aff'd*, 774 F.3d 1292 (10th Cir. 2014); *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d

22  1292, 1299 (10th Cir. 2014) (*quoting Stan Lee Media, Inc. v. Lee*, 585 F. App'x 597, 598

23  (9th Cir. 2014)); *Lee v. Marvel Enterprises, Inc.*, 765 F. Supp. 2d 440, 446-448

24  (S.D.N.Y. 2011), aff'd, 471 F. App'x 14 (2d Cir. 2012); *Disney Enterprises, Inc. v.*

25  *Entertainment Theatre Group*, No. CIV.A. 13-5570, 2014 WL 5483487, at *9 (E.D. Pa.

26  2014); *Stan Lee Media, Inc. v. Walt Disney Company*, No. 12-CV-2663-WJM-KMT,

2014 WL 3767191, at *2 (D. Colo. July 31, 2014) citing *Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*, 407 F.Supp.2d 41, 46 (D.D.C.2005).  Indeed, the enforceability of that 1998 Agreement was the subject of no fewer than five federal lawsuits, all of which ultimately held the agreement to be unenforceable. *Id*. Moreover, the 2nd, 9th, and 10th Circuit Courts of Appeal have all affirmed District Court decisions finding the 1998 Agreement unenforceable. *Id*. This very Court, the Central District of California, has already held that the claims presented in the Complaint are barred under the doctrine of *res judicata*. *Id*.

The issues and claims raised in this case have all been vociferously litigated and relitigated *ad nauseam*. To bring these legally unjustifiable claims before this Court again, after they have been struck down so many times before, is a grossly selfish and inconsiderate waste of this Court's time and resources. Litigation is not a game. The federal courts are not a vehicle for litigants to harass others by filing frivolous claims which wholly lack any conceivable merit under the existing facts or law.

As such, movant POW! Entertainment, Inc. respectfully request that the Court sanction Plaintiff and her counsel pursuant to Fed. R. Civ. P. 11 in an amount reasonably calculated to deter Plaintiff's future abuse of this Court's resources.  In light of the egregious nature of the Rule 11 violations committed by the Plaintiff and her counsel and considering the Plaintiff's financial status, movant recommends an assessment of sanctions of no less than Five Million dollars (USD$5,000,000.00).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2019, Plaintiff filed her complaint in the present case, its claims based entirely upon a contract from 1998, between Stan Lee and Stan Lee Entertainment, Inc. – (i) a contract that the Plaintiff has no standing to enforce, (ii) a contract that does not even address or concern the rights the Plaintiff is trying to assert, and (iii) a contract that has been fully and finally adjudicated by this Court, and at least

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

HAMRICK & EVANS, LLP

three other federal courts, as legally unenforceable. Even setting aside the obvious fact that all of the Plaintiff's claims are barred by the applicable statutes of limitations, each and every one of the Plaintiff's claims, having been previously dismissed by this and other courts, are barred by the doctrines of *res judicata* and collateral estoppel.

**A.    The 1998 Agreement.**

On October 13, 1998, the legendary comic book writer, editor, and publisher, Stan Lee, in conjunction with his then-associate Peter Paul, incorporated a Delaware company known at the time as Stan Lee Entertainment, Inc. ("**SLE**"). At that time, Stan Lee entered into an employment agreement with this new entity (the "**1998 Agreement**"), in which Stan Lee agreed to serve as "Chairman, Publisher, and Chief Creative Officer," in exchange for an annual salary of $250,000 plus bonuses and fringe benefits. See **Employment Agreement**, at ¶¶ 2-3, attached as Exhibit "**A**" and incorporated herein by reference. The 1998 Agreement included, as is customary with such employment agreements, a provision whereby Stan Lee assigned to the company the intellectual property rights associated with any works he might create while in the company's employ. *Id.* at ¶ 4. While the term of the 1998 Agreement was specified as the remainder of Stan Lee's lifetime, a federal court later ruled that, since it was a personal service contract governed by California law, its term was statutorily limited to seven (7) years. *Abadin v. Marvel Entertainment, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) (holding 1998 Agreement was terminated by Stan Lee in 2001 and statute of limitations to challenge termination lapsed, and further holding the 1998 Agreement, if not expressly terminated, expired in 2005 pursuant to Cal. Labor Code § 2855a) (appeal dismissed for failure to prosecute *Abadin v. Marvel Entertainment, Inc.*, No. 10–1717 (2d Cir. 2010)); See also *Id* at ¶ 1. As noted by the court, "[t]here can be no attempt to enforce this contract beyond the statutory term." *Id.*

**B.     The Conversion from Stan Lee Entertainment to Stan Lee Media.**

Just a few months after forming SLE, on January 14, 1999, Peter Paul founded another Delaware corporation, Stan Lee Media, Inc. ("**SLMI (DE)**"), which he later merged with SLE on April 14, 1999. *See* Certificate of Merger of Stan Lee Media, Inc., dated April 14, 1999, attached as Exhibit "**B**" and incorporated herein by reference. Then, just a few months later, Stan Lee and Peter Paul took control of an existing publicly traded Colorado corporation, then named Boulder Capital Opportunities, Inc., later renaming it as "Stan Lee Media, Inc." ("**SLMI (CO)**"). *See* Form SC14F1, filed on behalf of Boulder Capital Opportunities, Inc., dated June 28, 1999, attached as Exhibit "**C**" and incorporated herein by reference. By structuring their venture so that SLMI (DE) was a wholly owned subsidiary of the publicly traded SLMI (CO), they were able to publicly raise capital through the "pink sheet" over-the-counter market. (SLMI (CO) and SLMI (DE) shall be collectively referred to herein as "**SLMI**"). *See* 8-K of Boulder Capital Opportunities, Inc. dated July 23, 1999, attached as Exhibit "**D**" and incorporated herein by reference.

**C.     Peter Paul's Illegal Activities and the Demise of Stan Lee Media.**

Peter Paul, with the aid of a handful of shareholders, hatched an illegal scheme to prop-up the stock price of SLMI while borrowing millions against the stock, effectively stripping all value out of the company for his own personal gain while concealing this loss from the public markets. *U.S. v. Paul*, No. 2:01-cr-00636, Doc. 116, Superseding Indictment, 2004 WL 5745186 (E.D.N.Y., Aug 2, 2004). As a direct result of Peter Paul's illegal conduct, SLMI was forced into bankruptcy on February 16, 2001. While Plaintiff's Complaint makes the conclusory and wholly unsupported claim that the demise of SLMI was somehow the result of deliberate bad business decisions in the midst of the dot.com crash, the true cause of the company's demise is well documented. *See e.g., Id* at ¶ 13 ("By borrowing on margin, Paul and Stephen M.

Gordon, with the assistance of Jonathan Gordon and Pittsburg, effectively liquidated large blocks of the stock without actually selling the stock into the market."). Peter Paul, despite having fled to Brazil to evade arrest, was eventually brought into custody, charged, pleaded guilty, and was sentenced to ten (10) years in federal prison. *U.S. v. Paul*, No. 2:01-cr-00636, Doc. 232, Judgment (E.D.N.Y., Jun. 26, 2009).

### D.    Stan Lee's Termination of the 1998 Agreement.

"In January 2001 [before SLMI filed for bankruptcy] Lee wrote to SLMI claiming that SLMI was in complete breach of the salary and benefit provisions, *inter alia*, of the 1998 agreement so that he was justified in terminating the agreement." *Abadin* at \*6. While various parties, acting on behalf of SLMI, tried years later to argue that Stan Lee's termination of the 1998 Agreement was somehow improper, those arguments were all foreclosed by the ruling of the Southern District of New York, in which the Court held that the statute of limitations to challenge Lee's termination of the 1998 Agreement had run as of 2005. *Id*. That court holding was then later cited by this Court, in its ruling that the enforceability of the 1998 Agreement (or lack thereof) had been fully and finally adjudicated on the merits, thereby precluding further claims in relation thereto under the doctrine of *res judicata*. *Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225-SVW, 2012 WL 4048871, at \*3 (C.D. Cal. 2012), *aff'd*, 585 F. App'x 597 (9th Cir. 2014). Then, both of the foregoing court rulings were cited by the District of Colorado, when it later held that further efforts to enforce the 1998 Agreement were barred by the doctrine of Collateral Estoppel. *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-CV-2663-WJM-KMT, 2013 WL 4776026 (D. Colo. Sept. 5, 2013), *aff'd*, 774 F.3d 1292 (10th Cir. 2014).

### E.    The Formation and Operation of POW! Entertainment.

On November 8, 2001, nearly ten months after terminating his relationship with SLMI, Stan Lee partnered with Gill Champion and Arthur Lieberman, to form POW!

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

Entertainment, LLC ("POW!").   Per the operating agreement of POW! and a concurrently executed "Membership Purchase and Employment Agreement," as his capital contribution to POW!, Stan Lee assigned to POW! a host of intellectual property rights, including, but not limited to, rights in his name and likeness, as well as rights in any writings he created from that date forward.

Over the next seventeen (17) years, Stan Lee would assign rights in his name and likeness to POW! on multiple occasion for various purposes.   In 2004, Stan Lee executed a document entitled simply "Grant," in which he clarified that his assignment of all rights in his name and likeness to POW! was to survive his death.   Then, in 2006, 2007, 2008, and 2011, Stan Lee executed multiple consents of use to be filed with the United States Trademark and Patent Office ("USPTO"), specifically granting to POW! the right to use Stan Lee's name and signature in commerce and register the corresponding trademarks.

Moreover, in 2008 and 2010, Stan Lee signed further employment agreements with POW!, once again re-iterating his intent that POW! be the sole owner of the copyrights in all works he created while in the company's employ.   Then, again in 2013, so as to clarify the full extent of the rights Lee had granted to POW!, Stan Lee signed an amendment to his 2010 Employment Agreement, specifically setting out a series of intellectual property rights he was assigning to POW!, including posthumous rights to Stan Lee's name, likeness, signature, voice, and unique personal characteristics.

The Plaintiff's Complaint, on file herein, even admits that Stan Lee assigned and re-assigned the rights in his name and likeness on "no less than 6 occasions." (Compl. ¶ 18).

**F.   Peter Paul's Insatiable Appetite for Frivolous and Duplicative Litigation.**

Starting in 2007, Peter Paul orchestrated a series of court cases and other related legal actions in an effort to resuscitate the 1998 Agreement – all of which failed:

      1.    On July 9, 2007, SLMI filed suit against Stan Lee and POW! Entertainment, LLC in this very Court, the Central District of California, seeking to revive the 1998 Agreement by alleging what were essentially the same claims as those presented by Plaintiff in the present case.

      2.    On January 26, 2009, SLMI shareholders Jose Abadin and Christopher Belland filed suit derivatively on behalf of SLMI in the Southern District of New York against Marvel Entertainment, Inc., seeking to enforce the 1998 Agreement and alleging that, under the 1998 Agreement, SLMI owned rights in a Stan Lee's name and likeness as well as a host of Marvel properties.

      3.    On July 26, 2010, SLMI moved to intervene in the case of *Stan Lee v. Marvel Entertainment*, once again asserting rights under the 1998 Agreement.

      4.    On October 9, 2012, SLMI filed yet another suit, this time in the District of Colorado, seeking to enforce its purported rights under the 1998 Agreement against Walt Disney Company.

      5.    On January 7, 2014, SLMI filed a motion to intervene in the case of *Disney Enterprises, Inc. v. Entertainment Theater Group*, again claiming that it had rights to certain intellectual properties under the 1998 Agreement.

While Peter Paul was not a direct litigant in any of these lawsuits, it was widely acknowledged and understood that he was the chief architect of the litigation. *See e.g., Abadin*, at *5 n. 4; *see also Stan Lee Media Inc. v. Lee,* No. 2:07-CV-00225-SVW, 2012 WL 4048871, at *5 (C.D. Cal. Aug. 23, 2012), aff'd on other grounds, 585 F. App'x 597 (9th Cir. 2014).

Predictably, each and every one of the foregoing lawsuits ended badly for SLMI, Paul, and its related parties.  The Courts repeatedly struck down SLMI's claims and

HAMRICK & EVANS, LLP

found the 1998 Agreement to be wholly unenforceable:

1. First, in the case of *Abadin v. Marvel* before the Southern District of New York, Judge Paul Crotty found that (1) the 1998 Agreement was terminated by Stan Lee in 2001, and the statutory period in which to challenge that termination had lapsed; and (2) even if it hadn't been terminated in 2001, as a personal service contract, it would have expired by its own terms by 2005, pursuant to Cal. Labor Code § 2855(a). *Abadin v. Marvel Entertainment, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) (holding 1998 Agreement was terminated by Stan Lee in 2001 and the statute of limitations to challenge that termination had lapsed, and further finding that the 1998 Agreement, if not expressly terminated, expired in 2005 pursuant to *Cal. Labor Code* § 2855(a) (appeal dismissed for failure to prosecute *Abadin v. Marvel Entertainment, Inc.*, No. 10–1717 (2d Cir. 2010)). While Abadin and the other plaintiffs initially sought to appeal Judge Crotty's decision, the appeal was ultimately dismissed for failure to prosecute. *Abadin v. Marvel*, No. 10–1717 (2d Cir. Dec. 29, 2010).

2. Then, in the case of *Stan Lee v. Marvel*, also before the Southern District of New York, Judge Robert Sweet again held that the 1998 Agreement was unenforceable, citing Judge Crotty's opinion in the *Abadin* case as a final judgment on the merits, thereby rendering the matter *res judicata*. *Lee v. Marvel*, 765 F. Supp. 2d 440, 456 (S.D.N.Y. 2011), aff'd, 471 F. App'x 14 (2d Cir. 2012). This time, SLMI appealed to the Second Circuit, where the lower court's decision was affirmed. *Lee v. Marvel*, 471 F. App'x 14 (2d Cir. 2012).

3. Then, in the case of *SLMI v. Lee*, before this Court, the Central District of California, Judge Stephen Wilson also found that the *Abadin* decision had fully adjudicated SLMI's claims under the 1998 Agreement, thereby rendering the matter *res judicata*. *Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225-SVW, 2012 WL

HAMRICK & EVANS, LLP

1   4048871, at *4 (C.D. Cal. Aug. 23, 2012), aff'd on other grounds, 585 F. App'x 597

2   (9th Cir. 2014). Again, SLMI appealed, this time to the Ninth Circuit, and again the

3   decision was affirmed. *Stan Lee Media v. Lee*, 585 F. App'x 597, 598 (9th Cir. 2014).

4          4.     Then, in the case of *SLMI v. Disney*, before the District of Colorado,

5   Judge William Martinez, noting the prior court decisions, held that SLMI's claims

6   under the 1998 Agreement were barred by the doctrine of collateral estoppel. *Stan Lee

7   Media v. Walt Disney Co.*, No. 12-CV-2663-WJM-KMT, 2013 WL 4776026, at *4 (D.

8   Colo. Sept. 5, 2013), aff'd, 774 F.3d 1292 (10th Cir. 2014). Again, SLMI appealed, this

9   time to the Tenth Circuit, and again the decision was affirmed. *Stan Lee Media. v. Walt

10  Disney Co.*, 774 F.3d 1292 (10th Cir. 2014).

11         5.     Then, in the case of *Disney v. Entertainment Theater Group*, before

12  the Eastern District of Pennsylvania, Judge Jeffrey Schmehl, also noting the many prior

13  decisions on the issue, sided with the opinion of Judge Martinez in the District of

14  Colorado, finding that SLMI's claims under the 1998 Agreement were barred under

15  the doctrine of collateral estoppel. *Disney Enterprises, Inc. v. Entm't Theatre Grp.*, No.

16  CIV.A. 13-5570, 2014 WL 5483487, at *5 (E.D. Pa. Oct. 30, 2014).

17         Time and again, SLMI, under Paul's direction, sought to resurrect the 1998

18  Agreement, and each and every time the Court struck down such efforts with increasing

19  forcefulness – even going so far as to specifically label the claims as "frivolous." *Stan

20  Lee Media v. Walt Disney Co.*, No. 12-CV-2663-WJM-KMT, 2014 WL 3767191, at

21  *2 (D. Colo. July 31, 2014).  Now, in the present case, Plaintiff, seeks to once again

22  resurrect these previously adjudicated claims.

23  **III.    APPLICABLE LAW AND ARGUMENT**

24         Rule 11 of the Federal Rules of Civil Procedure provides the Court with the

25  authority to impose sanctions on any person who signs and presents to the Court a

26  pleading, motion or other paper that is either "frivolous" or is filed for an "improper

purpose." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003). Rule 11 states, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

If this certification requirement is violated, then "the court may impose an appropriate sanction upon the parties that have violated subdivision (b) or are responsible for the violation." Fed. R. Civ. P. 11(c).

The Ninth Circuit has held that, under Rule 11, the imposition of sanctions for either "frivolousness" or an "improper purpose" does not require a finding of subjective bad faith by the signer of the paper. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986), overruled on other grounds, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Rather, Rule 11 demands only that such inquiries be measured against an objective standard of reasonableness. *Zaldivar*, 780 F.2d at 829; see also *Townsend*

HAMRICK & EVANS, LLP

*v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991).

A claim is "frivolous" if it is "'both baseless and made without a reasonable and competent inquiry." *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) (quoting Townsend, 929 F.2d at 1362). Put another way, a frivolous claim is one that is "legally unreasonable, or without legal foundation." *Zaldivar*, 780 F.2d at 831. Under Rule 11(b)(2), the filing attorney or party filing in proper person is required to conduct a reasonable inquiry into the legal underpinnings of their claims before signing a complaint. See Fed. R. Civ. Pro. 11(b) advisory committee's note ("[Subdivision b requires] attorneys and pro se litigants to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents, and prescribing sanctions for violation of these obligations"); *see also Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) ("[Rule 11(b) ] explicitly applies to parties not represented by attorneys").

The Ninth Circuit has held that where, as here, a Plaintiff brings claims clearly barred by the applicable statute of limitations, in the absence of some legally cognizable justification, such claims are inherently frivolous. *Mir v. Little Co. of Mary Hosp.* 844 F2d 646, 653 (9th Cir. 1988). Furthermore, in cases such as the one at bar, where parties assert the same or substantially similar claims as those previously decided in other cases, Rule 11 sanctions are proper. *Maciosek v. Blue Cross & Blue Shield* (7th Cir. 1991) 930 F2d 536, 542; *Welk v. GMAC Mortg., LLC* (8th Cir. 2013) 720 F3d 736, 738-739. This also applies to lawyers who repeatedly file claims that have been rejected as unwarranted by law in other lawsuits on behalf of different clients. *Roundtree v. United States* (9th Cir. 1994) 40 F3d 1036, 1040.

**A.    The Present Case is Frivolous Because Each And Every Claim is Barred By The Doctrines Of Res Judicata And Collateral Estoppel**

Plaintiff should be sanctioned for squandering the time and resources of this

HAMRICK & EVANS, LLP

court on a case in which each and every claim is predicated upon the same contract that this Court, as well as several other courts, has already to be unenforceable. Plaintiff's entire case is barred under the doctrines of *res judicata* and collateral estoppel.

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (*quoting Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997)). The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.* Moreover, "[t]he central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Id.* at 714 (*quoting Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir.2000)). Additionally, "[w]hether a prior disposition is published or unpublished is of no consequence—unpublished decisions have the same preclusive effect." *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1013 (9th Cir. 2019) (*citing* 9th Cir. R. 36-3). "The doctrine of *res judicata* rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent." *Hatchitt v. United States*, 158 F.2d 754, 757 (9th Cir. 1946).

Here, Plaintiff openly asserts that she in privity with the parties to the 1998 Agreement, not only asserting that she is the successor in interest to the late Stan Lee, but also asserting that she has "joined forces with . . . Stan Lee Entertainment," as she seeks declaratory relief under the 1998 Agreement. (Compl. ¶¶ 20, 39-60). However, this very Court has already ruled that Plaintiff's claims are barred by the doctrine of *res judicata*. See *Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225-SVW, 2012 WL

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

HAMRICK & EVANS, LLP

4048871, at *3 (C.D. Cal. Aug. 23, 2012), *aff'd*, 585 F. App'x 597 (9th Cir. 2014). In the case of *Stan Lee Media, Inc. v. Stan Lee*, this Court expressly ruled that the enforceability of the 1998 Agreement was barred by the doctrine of *res judicata*. *Id.* Specifically, this Court noted that the Southern District of New York, in the case of *Abadin v. Marvel*, already issued a ruling on the merits, finding: (1) the 1998 Agreement was terminated by Stan Lee in 2001, and the statutory period in which to challenge that termination had lapsed; and (2) even if it hadn't been terminated in 2001, as a personal service contract, it would have expired by its own terms by 2005 per California Labor Code Section 2855(a). *Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715(PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010). As stated by the *Abadin* Court, "[t]here can be no attempt to enforce this contract beyond the statutory term." *Id.* at 6.

Moreover, this Court is not alone in finding that the basis for Plaintiff's was barred by the doctrines of preclusion. See *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-CV-2663-WJM-KMT, 2013 WL 4776026 (D. Colo. Sept. 5, 2013) (dismissing the issue of the 1998 Agreement's enforceability on grounds of collateral estoppel as it had been previously decided on its merits by multiple courts), *aff'd*, 774 F.3d 1292, 1299 (10th Cir. 2014) (*quoting Stan Lee Media, Inc. v. Lee*, 585 F. App'x 597, 598 (9th Cir. 2014)) (stating the claims predicated on rights in the 1998 Agreement were "simply implausible"). Additionally, in a second case before the Southern District of New York, Stan Lee Media, Inc., intervening into a previously settled case between Stan Lee and Marvel Enterprises, attempted to enforce purported rights under the 1998 Agreement, making the same legal arguments raised in the prior cases, *which are the same legal arguments made by Plaintiff in the Complaint*. See *Lee v. Marvel Enterprises, Inc.*, 765 F. Supp. 2d 440, 446-448 (S.D.N.Y. 2011), aff'd, 471 F. App'x 14 (2d Cir. 2012). Not to be dismayed, Stan Lee Media sought to intervene and resuscitate rights under the

HAMRICK & EVANS, LLP

1   1998 Agreement in yet another case, this time before the Eastern District of

2   Pennsylvania. There too, the court found that the intervener's efforts to assert rights

3   under the 1998 Agreement were precluded under the doctrine of *res judicata*, stating

4   "the Court is easily satisfied that the claims clearly deal with the same subject matter,

5   and it would be unfair to the winning party and an unnecessary burden on the courts to

6   allow repeated litigation of the same issue in what is essentially the same controversy."

7   *Disney Enterprises, Inc. v. Entm't Theatre Grp.*, No. CIV.A. 13-5570, 2014 WL

8   5483487, at *6-9 (E.D. Pa. Oct. 30, 2014) (internal quotations omitted).

9       In addition to the foregoing courts decisively finding that Plaintiff's claims are

10   barred by the doctrines of *res judicata* and collateral estoppel, the District Court of

11   Colorado also found that they are patently *frivolous*. In deciding a motion for attorney's

12   fees, that court specifically found the assertion of rights under the 1998 Agreement to

13   be frivolous, stating, "The Court finds that it was objectively unreasonable for [Stan

14   Lee Media, Inc.] to pursue its copyright claims under the 1998 Agreement after three

15   District Courts had previously found that it had no basis for asserting ownership of any

16   of the claimed copyrights." *Stan Lee Media, Inc. v. Walt Disney Company*, No. 12-CV-

17   2663-WJM-KMT, 2014 WL 3767191, at *2 (D. Colo. July 31, 2014) (citing *Pannonia*

18   *Farms, Inc. v. Re/Max Int'l, Inc.*, 407 F.Supp.2d 41, 46 (D.D.C.2005)).

19       The claims raised in Plaintiff's Complaint have been litigated and re-litigated *ad*

20   *nauseam*. Attempting to bring such claims again, after being struck down numerous

21   times by prior courts, including this very Court, is a gross waste of judicial time and

22   resources. This is particularly true in light of the fact that Plaintiff's Complaint is

23   devoid of any argument whatsoever for extending, modifying, or reversing existing law

24   or for establishing new law, as required by Rule 11. The federal courts are not a vehicle

25   for litigants to harass others by filing frivolous claims that wholly lack any conceivable

26   merit under the existing facts or law. Accordingly, this Court should sanction Plaintiff

HAMRICK & EVANS, LLP

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

HAMRICK & EVANS, LLP

1  under Rule 11 for filing the Complaint predicated on rights arising under the 1998

2  Agreement, which has been held by multiple courts to be unenforceable and barred by

3  *res judicata.*

4  **B.   The Present Case Was Brought For The Improper Purpose Of**

5       **Garnering Negative Publicity Against The Defendant And Its**

6       **Management.**

7       This Court should further sanction Plaintiff for filing the Complaint in

8  furtherance of the improper purpose of garnering negative publicity against the

9  Defendant and its management.

10      Examples of an "improper purpose" include motives "such as to harass, cause

11  unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P.

12  11(b)(1).  Moreover, a finding of "improper purpose" is determined upon a review of

13  the facts and law; an "improper purpose" can be deduced where there is no legal or

14  factual basis for a claim. *Paciulan v. George*, 38 F. Supp. 2d 1128 (N.D. Cal. 1999).

15  The frivolous and improper purpose prongs of Rule 11 overlap, and "'evidence bearing

16  on frivolousness... will often be highly probative of purpose.'" *In re Grantham Bros.*,

17  922 F.2d 1438, 1443 (9th Cir. 1991) (citation omitted). Groundless claims brought for

18  the purpose of harassment justify Rule 11 sanctions. See *Hudson v. Moore Business*

19  *Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987).

20      Here, the claims in Plaintiff's Complaint are predicated on rights arising under

21  the 1998 Agreement, which has been held by multiple courts to be unenforceable and

22  barred by the doctrines of *res judicata* and collateral estoppel. The advancement of

23  such claims is not for proper adjudication on the merits, but rather, to generate adverse

24  publicity for the Defendant and to smear the reputations of POW! and its president,

25  Gill Champion.

26      This, particularly in light of the frivolousness of Plaintiff's claims, is evidenced

- 15 -

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

by its numerous immaterial, unfounded factual allegations – most of which appear to serve no purpose other than to provide scandalous accusations against POW! and its management.[1] Plaintiff alleges that Gill Champion and a former founder of POW!, Arthur Lieberman, joined together to "engineer the financial collapse of [Stan Lee Media, Inc.] through a series of financing guaranteed to collapse the company's stock so that the company could be placed into Chapter 11 Bankruptcy protection" and thereby enabling them to "loot the assets of Stan Lee Entertainment, a/k/a Stan Lee Media, and enrich themselves at the expense of Stan Lee, the creditors and shareholders." (Compl. ¶¶ 16, 32). However, in reality, it is a well-documented fact that the demise of Stan Lee Media, Inc. is attributable to the criminal acts of the company's co-founder, Peter Paul, and certain co-indicted conspirators. *USA v. Peter Paul, Stephen M. Gordon, Jeffrey Pittsburg, Charles Kusche and Jonathan Gordon, Defendants.*, 2004 WL 5745186 (E.D.N.Y.) (detailing that Peter Paul, *et. al.*, engaged in a scheme that involved borrowing funds on margin, effectively liquidating large blocks of Stan Lee Media stock while manipulating the stock price to conceal the downward pressure that this liquidation would have otherwise placed on the stock price). Plaintiff also claims that the action is brought to "expose manifold frauds visited upon Stan Lee from 2001 through 2018 by Defendant, its CEO Gill Champion and a range of unsavory characters[.]" (Compl. ¶ 20). However, the Complaint fails to even bring a cause of action for fraud against POW! or provide any facts to corroborate such a conclusory and unsupported statement. Plaintiff goes on to state, "In June, 2019, it was revealed in multiple media outlets in China and around the world, with the arrest and jailing of Vivian Lo, the Founder and Chairman of Camsing International, the current alleged and erstwhile parent of POW!, that Lo and Camsing, aided by

---

[1] The demonstrably false accusations are so voluminous that Defendant can only focus on a few particularly egregious fabrications in this Motion.

HAMRICK & EVANS, LLP

Champion, have been engaged over the last three years in a massive $1.2 billion finance fraud." (Compl. ¶ 38). In actuality, no news outlet implicated POW! or Mr. Champion in any criminal conduct whatsoever. The only accusation of criminality was from Plaintiff's own defamatory press release self-servingly issued in early August of 2019. Gene Maddaus, *Stan Lee's Daughter Seeks to Cut Ties With Camsing International*, Variety (Aug. 7 2019), https://variety.com/2019/biz/news/stan-lees-daughter-camsing-pow-entertainment-1203295458/. Furthermore, Plaintiff purports that Stan Lee assigned to Stan Lee Media, Inc. in the 1998 Agreement a "perpetual and unconditional assignment of every imaginable creator right he owned or would own in the future, along with the exclusive rights to his name and likeness." (Compl. ¶¶ 14, 26-27, 39). This, once again, is demonstrably untrue as the alleged assignment was not unconditional, was not perpetual, was not irrevocable, and was limited only to those works "disclosed in writing to, published, merchandised, advertised and/or licensed by [Stan Lee Media, Inc.]." (Ex. A). Moreover, the 1998 Agreement, by its own terms, was conditioned upon Lee receiving a regular salary (which ceased in 2001) and, furthermore, it excluded any posthumous rights. Finally, Plaintiff alleges that "the most glaring unscrupulous activity was falsely claiming the IP rights to Stan Lee's IP." (Compl. ¶ 37). Plaintiff advances such allegation notwithstanding that the Complaint acknowledges that Stan Lee specifically assigned his intellectual property rights to POW! "on no less than 6 occasions." (Compl. ¶ 18).

Considering the foregoing, coupled with the fact that Plaintiff promptly alerted the media on September 27, 2019, only one day after filing the Complaint on September 26, 2019, but has yet to serve Defendant after more than a month, it is clear Plaintiff's purpose in bringing this frivolous action was merely to harass POW! and its management. Eriq Gardner, *Stan Lee's Daughter Sues to Reclaim His Intellectual Property*, The Hollywood Reporter (Sept. 27 2019),

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

1  https://www.hollywoodreporter.com/thr-esq/stan-lees-daughter-sues-reclaim-his-

2  intellectual-property-1243840. Notably, if this action were so desperately in need of

3  adjudication, as Plaintiff repeatedly asserts throughout the Complaint, then Plaintiff

4  would have promptly served the Complaint on POW!, whose offices are located within

5  literal walking distance of those of Plaintiff's counsel.

6      Accordingly, this Court should sanction Plaintiff for filing the Complaint, which

7  is filled with frivolous claims and demonstrably false and inflammatory accusations,

8  in order to harass POW!.

9  **C.**    **The Appropriate Measure Of Sanctions In This Case, Given The**

10          **Willful Nature Of The Violations And The Plaintiff's Financial**

11          **Status, Should Be No Less Than Five Million Dollars.**

12      Considering the frivolousness of the claims contained in Plaintiff's Complaint

13  as well as the intentional harassing purpose for which it was brought, this Court should

14  sanction Plaintiff in an amount no less than Five Million Dollars ($5,000,000).

15      "[T]he central purpose of Rule 11 is to deter baseless filings in district court[.]"

16  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also Business Guides,*

17  *Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 553 (1991). The

18  Advisory Committee notes to the 1993 amendments to Rule 11 set forth factors that

19  may be considered in determining what sanctions to award for a violation, including,

20  "what amount, given the financial resources of the responsible person, is needed to

21  deter that person from repetition in the same case [and] what amount is needed to deter

22  similar activity by other litigants." Fed. R. Civ. P. 11, 1993 Advisory Notes. Other

23  factors to consider are: "[w]hether the improper conduct was willful, or negligent;

24  whether it was part of a pattern of activity, or an isolated event; whether it infected the

25  entire pleading, or only one particular count or defense; whether the person has engaged

26  in similar conduct in other litigation; whether it was intended to injure; what effect it

HAMRICK & EVANS, LLP

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

had on the litigation process in time or expense; whether the responsible person is trained in the law." *Id*. Additionally, "a court can properly consider plaintiff's ability to pay monetary sanctions as one factor in assessing sanctions." *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994). Moreover, a court is within its power to order a substantial monetary award where only such an award would deter the sanctioned party from engaging in similar conduct in the future. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995), *cert. denied*, 517 U.S. 1136 (1996).

Here, Plaintiff's intent is clear: to bring wholly frivolous claims in an effort to smear the reputation of POW! and its management. The Complaint is replete with frivolous claims and unfounded allegations, which infect the entire document from start to finish. Inexplicably, a licensed attorney certified these frivolous claims. Moreover, it is widely known that the Plaintiff, JC Lee, has recently inherited an estate that has an estimated worth between $50 and $70 million. Mike Barnes, *Stan Lee, Marvel Comics' Real-Life Superhero, Dies at 95*, The Hollywood Reporter (Nov. 12, 2018), https://www.hollywoodreporter.com/heat-vision/stan-lee-dead-marvel-comics-real-life-superhero-was-95-721450. Given Plaintiff's significant financial resources, a modest award of sanctions will do little to deter future bad acts and only a substantial award of sanctions will discourage similar subsequent conduct.

Accordingly, considering the willful conduct at play, the insidious intent of the underlying Complaint, the extraordinary degree to which the Claims are meritless despite the benefit of representation by legal counsel, and the Plaintiff's financial status, this Court should sanction Plaintiff in an amount no less than Five Million Dollars (USD$5,000,000.00).

## IV.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court sanction the Plaintiff and her legal counsel pursuant to Fed. R. Civ. P. 11(b) as follows:

1. Order the dismissal of the Plaintiff's complaint in its entirety.

2. Order that the Plaintiff, her legal counsel, and the corresponding law firm of Plaintiff's counsel, are jointly and severally liable for the Defendant's attorney's fees and costs in the amount of five million dollars (USD$5,000,000).

Respectfully submitted,

HAMRICK & EVANS, LLP

DATED:  November 11, 2019

By:_____
CHAZ C. RAINEY
GEORGE KNOPFLER
KENNETH A. HEARN
Attorneys for
POW! Entertainment, Inc.

- 20 -
NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

# RULE 11(c)(2) CERTIFICATE

Pursuant to Rule 11(c)(2), I hereby certify that on the 11th day of November, 2019, I served by email and first class mail, postage prepaid, upon Plaintiff, JOAN CELIA LEE, as Trustee for the Lee Family Survivor's Trust "A" Date October 12, 1985, a copy of the foregoing Defendant POW! Entertainment, LLC's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, together with a letter stating as follows:

> Pursuant to Fed. R. Civ. P. 11(c) (2), attached is a service copy of the Fed. R. Civ. P. 11 Motion for Sanctions of POW! Entertainment ("Motion for Sanctions") which we are providing to you. We demand that you dismiss with prejudice your claims against POW! Entertainment, LLC within 21 days of the date of this letter. If you refuse to dismiss your claims against POW! Entertainment, LLC than we will be forced to file the attached Motion for Sanctions with the Court.

By:  _/s/ Charles C. Rainey, Esq._
       Charles C. Rainey, Esq.

NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS

# EXHIBIT D



**From:** **Craig Huber** craig@freundlegal.com
**Subject:** Re: Lee v. POW! Entertainment Response to Request for L.R. 7-3 Meet and Confer...
**Date:** November 27, 2019 at 1:54 PM
**To:** Chaz Rainey CRainey@hamricklaw.com
**Cc:** Jonathan Freund jonathan@freundlegal.com
**Bcc:** Peter peterlfpaul66@gmail.com

Your client has yet to be served with the Summons and Complaint, correct?  Am I missing something?  If the Complaint has yet to be served then what date are you using for a responsive pleading for your client (in this case, a supposed Rule 12(b)(6) motion)?  Service of process confers jurisdiction and imitates the response date.  I think the same holds true of the Rule 11 safe harbor effort.  Having not been served, and with jurisdiction having yet to be exercised over your client, I'm just not sure your client is in a position to bring such a motion.  To be sure, your client has not been compelled to do anything as of yet by way of the Complaint.  And because I've never seen anyone take the course you've chosen on behalf of your client, well, we need to look into it a bit more.

(Your Rule 11 letter is not "forthcoming," it's out there.  The motion on the other hand, well, yes, it does indeed speaks for itself.  And saying my comments are "dismissive" is almost comical given the tone you've taken and position you've advanced here).

Mr. Freund will be available next week and I'm sure he will give you alternate dates to confer over the un-served, soon-to-be-moot Complaint when he returns.

Also, I have no idea who all the other people are on your emails so I haven't included them here.  I wrote to you and cc'd Mr. Freund.

Have a nice holiday.

Craig A. Huber
FreundLegal PC
427 North Camden Drive
Beverly Hills, CA 90210
Phone: (310) 247-2165
Fax: (310) 247-2190

==================================

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files, previous or subsequent e-mail messages attached to it are intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL and exempt from disclosure under applicable law. All rights and privilege are expressly reserved. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original to us by mail without making a copy. Thank you, FreundLegal PC.

On Nov 27, 2019, at 1:25 PM, Chaz Rainey <CRainey@hamricklaw.com> wrote:

Mr. Huber,

I disagree with your claim that my providing you with three possible days this week for a 7-3 conference somehow failed to provide a reasonable opportunity for a telephone conference.  As you know, we served a Rule 11 letter on your office more than two weeks ago, placing Mr. Freund on notice as of November 11 of our intent to file the pending Motion for Sanctions.  The deadline for you to take action within the safe harbor is this Monday.

Mr. Freund has had plenty of time to take action or reach out to my office, but he has thus far failed to do so.

Moreover, while your email below asserts that Mr. Freund is unavailable for a phone call this week, you provide no alternate dates.  Please provide Mr. Freund's earliest possible availability, so that we may proceed with the conference.

As for your dismissive comments with respect to our forthcoming Rule 11 Letter, I respectfully disagree with your analysis, and I believe the written motion speaks for itself.

Naturally, my client reserves all rights.

Chaz C. Rainey, Esq./MBA/LL.M
Partner
Licensed in CA, DC, NV, NY, and TX.
hamrickentertainmentlaw.com<http://hamrickentertainmentlaw.com>
[X]
2600 West Olive Avenue, Suite 1020, Burbank, California 91505<x-apple-data-detectors://2>, Tel: (818) 763-5292<tel:
(818)%20763-5292>

This e-mail and its attachments are for the confidential use of its addressee(s). The information herein may be subject to attorney-client privilege. If you received this message in error, notify the sender at once at (818) 763-5292<tel://(818)%20763-5292>. Any tax or securities advice herein is not intended and cannot be used to (1) avoid IRS penalties, (2) avoid liability for securities activities, (3) or market or recommend any investment.

On November 27, 2019 at 12:35:58 PM, Craig Huber (craig@freundlegal.com<mailto:craig@freundlegal.com>) wrote:

Good day Mr. Rainy. I am writing in response to your request for a pre-Motion to Dismiss meet and confer pursuant to Local Rule 7-3 in the above matter. So you know, Mr. Freund is unavailable this week and providing 3 days surrounding Thanksgiving as possible days for such a conference really doesn't give us much of an opportunity to accomplish such a conference. You all appear to have had the Complaint since at least November 11, 2019—the date of your ill-advised supposed "safe harbor" letter (more on that below) but only now ask for a conference. Notwithstanding that you have it in your possession, our records indicate the Complaint has not yet even been served on POW!. Are you agreeing to accept service? If so, then we will prepare a Notice of Acknowledgment and Receipt.

All the same, please be advised Ms. Lee intends to exercise her right to amend "as a matter of course" and we anticipate a First Amended Complaint will be filed next week. If the perceived defects remain then we can schedule a conference of counsel in a more orderly fashion and with more than a few days notice over a Federal Holiday from you all.

As for your November 11, 2019 letter, it's hard to know where to begin. Despite the gravity of the accusations in that ridiculous missive, your insouciant tone ("But wait, there's more!), wholesale disregard of proper procedure and outrageous, unsupported "fees" request belies a level of frivolity hardly warranted when hurling the type of invective and claims of misconduct found in your letter.

First of all, what exactly is the basis for your client's claim to an "award of sanctions" of "no less than Five Million dollars (USD $5,000,000.00)? Your preposterous claim appears to be rooted in a request for an award of "Defendant's attorney's fees and costs . . . ." (Mt. pg. 20) How has your client incurred fees and costs if they have yet to even be served with the Complaint? What is more, where is your sworn declaration attesting to the fact your un-served client incurred 5 million dollars in fees and costs to prepare that incendiary dreck of a letter and flawed motion? Do you charge $50K an hour?

In sending that letter and accompanying "motion," you appear to be on the verge of doing the very thing you accuse my firm and client of doing—filing a patently frivolous motion designed to chill a party's right to seek redress. And while your flawed pleading will soon be rendered moot by an amended complaint, it's important you understand just how procedurally defective your Rule 11 motion is on its face.

As you should know, a Rule 11 motion is supposed to be a stand-alone motion and must meet the procedural requisites for brining a motion; yet your document cites a range of exhibits throughout but fails to include any of them. Nor are they authenticated by a proper declaration. I would assume someone bent on heaping contumely on the heads of their adversary would be less careless about their own procedure. You do understand a motion must be supported by actual evidence, and that evidence must be authenticated through a sworn declaration, right? If that document you sent is what your client intends to file we'd caution strongly against it.

We could go on about the lack of merit to your Rule 11 "motion" and, conversely, the merit to the Complaint, but we'll address all this as necessary in the future. For now, understand a First Amended Complaint will be forthcoming and Mr. Freund is not available to you this week. Lastly, are you authorized to accept service of process on behalf of POW! Entertainment?

Thank you.


Craig A. Huber
FreundLegal PC
427 North Camden Drive
Beverly Hills, CA 90210
Phone: (310) 247-2165
Fax: (310) 247-2190


===================================

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files, previous or subsequent e-mail messages attached to it are intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL and exempt from disclosure under applicable law. All rights and privilege are expressly reserved. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original to us by mail without making a copy. Thank you, FreundLegal PC.