O

# United States District Court
# Central District of California

JOAN CELIA LEE,

               Plaintiff,

    v.

POW! ENTERTAINMENT, INC., and
DOES 1 through 10,

               Defendants.

Case No. 2:19-cv-08353-ODW(FFMx)

**ORDER GRANTING MOTION TO DISMISS [20] AND MOTION FOR SANCTIONS [35]**

## I.   INTRODUCTION

On March 4, 2020, Defendant POW! Entertainment, Inc., ("POW") filed a motion to dismiss the amended complaint filed by Plaintiff Joan Celia Lee ("JC Lee"). (Mot. to Dismiss, ECF No. 20.)  POW argues that JC Lee's amended complaint is barred by the doctrines of res judicata, collateral estoppel, and statute of limitations.[1] On these grounds, POW also filed a motion for sanctions against JC Lee.  (Mot. for Sanctions, ECF No. 35.)  On June 22, 2020, the Court held a hearing for the Motion for Sanctions.  Mr. Freund, Mr. Huber, and Mr. Johnson appeared on behalf of JC Lee, who was present.  Mr. Rainey and Mr. Knopfle appeared for POW.  For the

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion to Dismiss, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

reasons discussed below, the Court **GRANTS** POW's Motion to Dismiss and Motion for Sanctions.  (ECF Nos. 20, 35.)

## II.    FACTUAL BACKGROUND

### A.    Present Lawsuit

JC Lee is the daughter and trustee for the estate of comic book author Stan Lee. (*See* First Am. Compl. ("FAC") ¶ 1, ECF No. 18.)  Stan Lee is responsible for co-creating comic book characters such as Spider-Man, the X-Men, Iron Man, and many others.  (FAC ¶ 28).  POW, a Delaware corporation, claims that Stan Lee assigned to it the rights to his intellectual property.  (FAC ¶¶ 3, 38–42.)

On February 14, 2020, JC Lee filed her FAC against POW.  JC Lee seeks to enforce the terms of an agreement made in 1998 (the "1998 Agreement") between Stan Lee and Stan Lee Entertainment, Inc. ("SLEI").  (FAC ¶¶ 10–14.)  Specifically, JC Lee contends that, under the terms of the 1998 Agreement, Stan Lee assigned full and complete title to his name, likeness, and creator rights to SLEI in perpetuity. (FAC ¶¶ 30–31.)  As such, JC Lee seeks declaratory and injunctive relief that SLEI, owns the rights to Stan Lee's intellectual property, name, and likeness, and asserts a cause of action against POW for cybersquatting in violation of 15 U.S.C. § 1125(d). (FAC ¶¶ 47–80.)

POW, in response, seeks sanctions against JC Lee on the grounds that her complaint is both frivolous and brought for an improper purpose.  (Mot. for Sanctions 13–20.)  Consequently, POW served JC Lee with notice of the instant Motion using e-mail and first-class certified mail on April 7, 2020.  (Mot. for Sanctions 25.)  On May 11, 2020, 34 days later, POW filed the Motion with the Court. (*See* Mot. for Sanctions.)

### B.    Factual Background

After departing from Marvel in August 1998, Stan Lee formed SLEI, to which he allegedly "conveyed clear title to his name, likeness and all creator rights" on October 15, 1998.  (FAC ¶¶ 14, 30.)  In January 2001, Stan Lee accused Stan Lee

Media, Inc. ("SLMI"), successor-in-interest to SLEI[2], of being "in complete breach of the salary and benefit provisions, *inter alia*, of the 1998 [A]greement so that he was justified in terminating the agreement."  (Mot. for Sanctions 6–7 (internal quotation marks omitted) (quoting *Abadin v. Marvel Entm't, Inc.*, No. CV 09-0715-PAC, 2010 WL 1257519, at *6 (S.D.N.Y. Mar. 31, 2010).)   Subsequently, due to a lack of operating capital caused by a series of unfortunate events[3], SLMI filed for Chapter 11 bankruptcy.  (FAC ¶ 37.)

Following the bankruptcy filing, in 2001, Stan Lee and others formed POW. (FAC ¶¶ 20, 39.)   JC Lee alleges that the other founders of POW manipulated Stan Lee into transferring ownership of his creator rights and rights to his name and likeness "three years after he divested himself of any further legal interest in those rights" to SLMI per the 1998 Agreement.  (FAC ¶ 21.)

When Stan Lee died in November 2018, JC Lee, as his only heir and trustee of his estate, became the successor-in-interest of Stan Lee's alleged obligations relating to the 1998 Agreement.  (FAC ¶ 23.)  She files suit "to ensure the Lee Trust is able to perform the duties it assumed under Stan Lee's [1998 Agreement] and act in accord with the obligations under the Assignment by obtaining a Declaratory Judgment to the effect all rights, title and interest to Stan Lee's Name and likeness and Brand, along with copyrights and trademarks now reside with [SLEI] in association with the Lee Trust."  (FAC ¶ 46.)

---

[2] As SLMI succeeds SLEI, the Court will refer to both parties as SLMI for sake of clarity.

[3] JC Lee asserts that POW's current partners caused SLMI to run out of operating capital by negotiating "toxic financing deals."  (FAC ¶ 37.)  POW asserts that Peter Paul, a partner of SLMI not associated with POW, hatched an illegal scheme to prop-up the stock price of SLMI while borrowing millions against the stock, effectively stripping all value out of the company for his own personal gain while concealing this loss from the public markets.  (Mot. for Sanctions 6. (citing *United States v. Paul*, No. 2:01-cr-00636-LDW, 2004 WL 5745186 (E.D.N.Y. Aug. 2, 2004) (Superseding Indictment, ECF No. 116)).)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.   Prior Litigation

The 1998 Agreement between Stan Lee and SLMI has been the subject of numerous cases in federal courts throughout the country.  *See Abadin*, 2010 WL 1257519 ("*Abadin*") (appeal dismissed for failure to prosecute *Abadin v. Marvel Entm't, Inc.*, No. 10–1717 (2d Cir. 2010)); *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 456 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 14 (2d Cir. 2012); *Stan Lee Media Inc. v. Lee*, No. 2:07-cv-00225-SVW (SSx), 2012 WL 4048871 (C.D. Cal. Aug. 23, 2012) ("*SLMI I*") (consolidating three related cases filed in the Central District), *aff'd*, 585 F. App'x 597 (9th Cir. 2014); *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-2663-WJM (KMTx), 2013 WL 4776026 (D. Colo. Sept. 5, 2013) ("*SLMI II*"), *aff'd*, 774 F.3d 1292 (10th Cir. 2014); *Disney Enters., Inc. v. Entm't Theatre Grp.*, No. CV 13-5570-JLS, 2014 WL 5483487 (E.D. Pa. Oct. 30, 2014).

Notably, in 2010, the Southern District of New York held that the 1998 Agreement was terminated by Stan Lee in 2001 per his correspondence with SLMI indicating that SLMI breached the salary and benefit provisions in the agreement. *Abadin*, 2010 WL 1257519, *6.  Furthermore, the court held that the statute of limitations to challenge the termination had lapsed by 2010, and that, even if not expressly terminated, the 1998 Agreement had expired in 2005 pursuant to California Labor Code section 2855a, which limits the duration of personal services contracts to seven years. *Id*.

In 2012, Judge Wilson of the Central District of California addressed the 1998 Agreement as well.  *See SLMI I*, 2012 WL 4048871.  In that action, SLMI sued Stan Lee and others alleging that Stan Lee and Marvel were infringing on the 1998 Agreement because Stan Lee had "assigned all copyrights and trademarks associated with all characters and comic books that he authored, including the iconic characters that he created during his tenure at Marvel" to SLMI.  *Id.* at *1.  The court granted defendants' motion to dismiss on the grounds that SLMI's claims were barred by res

4

judicata. *Id.* at *7. Tellingly, the court concluded "that there is a compelling public interest in bringing this matter to a close." *Id.*

In 2013, the District of Colorado cited the aforementioned cases and similarly held that claims to enforce the 1998 Agreement were precluded by collateral estoppel. *See SLMI II*, 2013 WL 4776026.

Despite the numerous failed attempts to enforce the 1998 Agreement, SLMI allegedly filed suit against Stan Lee's estate and reached a settlement that was adopted by a court, although she fails to provide further details. (FAC ¶ 44.) JC Lee now files this suit to satisfy the estate's obligation under the terms of that settlement to "correct the breach of the agreement" and "remedy the results of the various invalid assignments made by Stan Lee." (FAC ¶¶ 45–46.) The Court infers that SLMI has entered into a settlement prompting JC Lee to file this suit for declaratory relief, though neither the substance of the settlement nor the judgment have been provided to the Court.

### III.  MOTION TO DISMISS[4]

**A.  Legal Standard**

A court may dismiss a complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[4] POW filed a request for judicial notice. (Req. for Judicial Notice, ECF No. 20-1.) The Court considers in this motion the documents judicially noticed in its prior Order on POW's first motion for sanctions for the grounds enumerated therein. Furthermore, the Court considers the 1998 Agreement as it is incorporated by reference in the FAC. The Court **DENIES** the request as to the remaining documents as the Court did not consider them in the disposition of the motion to dismiss.

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**B.   Res Judicata**

POW moves to dismiss all of JC Lee's claims arguing that her claims are barred by res judicata, also known as claim preclusion. (Mot. to Dismiss 21–23.) Res judicata bars lawsuits based on "any claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis and internal quotation marks omitted). Res judicata applies to bar a suit where there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Stewart*, 297 F.3d at 956.[5]

---

[5] JC Lee asserts that cases affirmed on alternative grounds lose their preclusive effect as to the unaddressed ground against subsequent cases. (Opp'n to Mot. to Dismiss 21–24.) However, this principal applies solely to issue preclusion not claim preclusion, or res judicata. *City of Colton v.*

1       *1.     Identity of Claims*

2       First, to establish identity of claims, the Court considers whether: (1) the two

3  suits arise out of the same transactional nucleus of facts; (2) rights or interests

4  established in the prior judgment would be destroyed or impaired by prosecution of

5  the second action; (3) the two suits involve infringement of the same right; and

6  (4) substantially the same evidence is presented in the two actions. *Mpoyo v. Litton*

7  *Electro–Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). Here, JC Lee seeks

8  declaratory and injunctive relief as to the ownership of Stan Lee's intellectual

9  property, name, and likeness pursuant to the 1998 Agreement. (*See generally* FAC.)

10  First, the instant matter, *Abadin*, and *SLMI II* arise out of the same 1998 Agreement in

11  which Stan Lee assigned rights to his intellectual property for employment

12  compensation; thus, the first factor weighs in favor of POW. *See Abadin*, 2010 WL

13  1257519, at *2; *SLMI II*, 2013 WL 4776026 at *1. JC Lee argues that the prior cases

14  determined the enforceability of an employment clause and not the severable

15  assignment clause. (Opp'n to Mot. to Dismiss 18–19, ECF No. 26.) This is false.

16  *SLMI II* squarely addressed the "issue of whether the 1998 Agreement gave Plaintiff

17  ownership of the copyrights." *SLMI II*, 2013 WL 4776026 at *4. As did *Abadin*.

18  2010 WL 1257519, at *6.

19       Next, the second and third factors weigh in favor of POW because the validity

20  of the assignment clause in the 1998 Agreement was determined in POW's favor in

21  the prior suits and relitigating the matter would unnecessarily burden POW. *See*

22  *Abadin*, 2010 WL 1257519, at *6; *SLMI II*, 2013 WL 4776026 at *4. JC Lee asserts

23  that certain rights, such as the post-mortem rights to publicity, did not exist during the

24

25

26  *Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1004 n.4 (9th Cir. 2010). The Court addresses only res judicata here. Nevertheless, the Court would not be foreclosed from discussing the issue preclusive effects of *Abadin*, as the appeal to the Second Circuit was dismissed, and *SLMI II*, as the Tenth Circuit affirmed the district court on the issue of collateral estoppel. *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292 (10th Cir. 2014). In an abundance of caution, the Court limits its res judicata analysis to *Abadin* and *SLMI*.

27

28

1    prior cases and thus, could not have been raised in prior actions.  (Opp'n to Mot. to
2    Dismiss 20–21.)  However, the prior cases determined the validity of the assignment
3    clause giving rise to an assortment of intellectual property rights.  *SLMI II*, 2013 WL
4    4776026 at *4; *Abadin*, 2010 WL 1257519, at *6.  Indeed, in the operative clause of
5    the 1998 Agreement, Stan Lee agrees to "*assign*, convey and grant to the Company
6    forever, all right, title and interest I may have or control, now or in the future, in the
7    following: Any and all ideas, names, titles, characters, symbols, logos, designs,
8    *likenesses*, . . . *including [his] name and likeness*."  (Req. for Judicial Notice Ex. O 4,
9    ECF No. 20-2 (emphasis added).)  Thus, the fate of all intellectual property rights
10   rested on the enforceability of the assignment clause discussed.  As the 1998
11   Agreement is unenforceable, Finally, JC Lee did not suggest in her briefing that any
12   new evidence exists regarding this action.  Furthermore, the contractual obligation of
13   the assignment of rights is determined by the 1998 Agreement which has remained
14   unaltered since 1998.  Thus, the fourth factor weighs in favor of POW as well.  As all
15   four factors weigh in favor of POW, the Court finds that the identity of claims element
16   has been met.

17        2.    *Final Judgment on the Merits*

18        Second, the prior suits must have reached a final judgment on the merits.
19   *Stewart*, 297 F.3d at 956.  "[F]inal judgment on the merits is synonymous with
20   dismissal with prejudice."  *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d
21   683, 686 (9th Cir. 2005) (internal quotation marks omitted).  Claims premised on the
22   1998 Agreement have been dismissed with prejudice.  *See SLMI II*, 2013 WL
23   4776026 at *5 ("Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE
24   in its entirety."); *SLMI I*, 2012 WL 4048871, at *3 (granting motion to dismiss after
25   finding that *Abadin* addressed all claims on the merits and denied them with
26   prejudice).  Thus, this factor has been met.

27

28

### 3.     Identity or Privity Between Parties

Third, the parties in the current action must be identical to or in privity with the parties from the prior actions.  *Abadin* was filed by SLMI's shareholders derivatively on behalf of SLMI against Marvel Entertainment, Inc. and others.  *See Abadin,* 2010 WL 1257519.  In *SLMI II*, SLMI filed suit against the Walt Disney Corporation and others.  *See SLMI II*, 2013 WL 4776026.  In the matter before the Court, JC Lee, in her role as the trustee of Stan Lee's estate, files suit against POW.  As the parties are not identical, they must be in privity for res judicata to apply.  *Stewart*, 297 F.3d at 956.  "[P]rivity may exist if there is substantial identity between parties, that is, when there is sufficient commonality of interest."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (internal quotation marks omitted).  The Ninth Circuit has stated that "privity is a flexible concept dependent on the particular relationship between the parties."  *Id.* at 1081–82.  For example, "[p]rivity between parties exists when a party is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."  *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n.3 (9th Cir. 2002) (citing *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (internal quotations and citations omitted)).

Here, JC Lee asserts that she was not a party to the prior suits and argues, without support, that she is not in privity with SLMI.  (Opp'n to Mot. to Dismiss 20.)  However, she concedes that she has "joined forces" with SLMI and is the successor in interest to Stan Lee, the assignor of SLMI's rights per the parties to the 1998 Agreement.  (Opp'n to Mot. to Dismiss 20; Mot. to Dismiss 21 (citing FAC ¶¶ 23, 45–66).)  Indeed, JC Lee alleges that legal title to Stan Lee's "name and likeness and creator rights" remain with SLMI and files this suit seeking declaratory relief of SLMI's rights.  (FAC ¶¶ 10, 23, 25.)[6]  JC Lee seeks to enforce the same contractual

---

[6] In its Reply to its motion for sanctions, POW makes the astute point that JC Lee must be in privity with SLMI to seek the relief requested or she would lack standing to seek a declaration of SLMI's rights.  (Reply in Supp. of Mot. for Sanctions 8, ECF No. 40.)

provision as in *Abadin* and *SLMI*, making the same argument that by signing the 1998 Agreement, Stan Lee assigned his intellectual property to SLMI, and seeks the same relief.  Thus, JC Lee and SLMI are in privity.  *Stratosphere Litig. L.L.C.*, 298 F.3d at 1143; *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1053 (9th Cir. 2005) (listing assignors and assignees as an example of a relationship with privity).

Even where parties are in privity, the Court must consider whether the interests of the party absent in the prior action were adequately represented.  *Headwaters Inc.*, 399 F.3d at 1054.  In *Headwaters Inc.*, the Ninth Circuit considered the notice the nonparty had and the level of protection the district court afforded the nonparty's interests.  *Id.*  Here, JC Lee, a nonparty in *Abadin* and *SLMI*, asserts that her interest is to "vindicate and clear title to Stan Lee's intellectual property" as assigned by the 1998 Agreement.  (FAC ¶ 25.)  As the prior courts considered this very question and JC Lee is no stranger to this dispute, JC Lee's interests were adequately represented.  Accordingly, the Court finds the third factor satisfied.

As POW has established all three factors, the Court finds that all claims in this matter are barred by res judicata.[7]  Accordingly, the Court **GRANTS** the motion to dismiss.  The Court **DIMISSES WITH PREJUDICE** all claims in the FAC.

### IV.   MOTION FOR SANCTIONS

**A.   Legal Standard**

Rule 11 outlines procedural and substantive requirements to guide whether a court should sanction an attorney.  "[T]he central purpose of Rule 11 is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

---

[7] As both parties refer to res judicata as collateral estoppel interchangeably, the Court also considers the merits of POW's arguments on collateral estoppel grounds and finds that JC Lee's claims are barred by collateral estoppel for all the reasons just articulated.  *See In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000) (quoting *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992)) (listing the elements of collateral estoppel).

Under Rule 11, the party moving for sanctions must serve the motion on the opposing party pursuant to Rule 5 no less than twenty-one days before filing the motion with the court.  Fed. R. Civ. P. 11(c)(2).  This strictly-enforced safe harbor period allows the opposing party to withdraw or appropriately correct "the challenged paper, claim, defense, contention, or denial" without penalty.  Fed. R. Civ. P. 11(c)(2); *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 1986).  If the opposing party fails to remediate the concern, the moving party may file the motion with the court "describ[ing] the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).

Provided these procedural requirements are met, the court may sanction an attorney under Rule 11 for filing a pleading or other paper that is "frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); Fed. R. Civ. P. 11(b)(1–4).  Nonetheless, "[i]f, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed."  *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).

Imposing sanctions under Rule 11 "is an extraordinary remedy, one to be exercised with extreme caution."  *Operating Eng'r Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).  As such, courts have "significant discretion" when determining whether to award sanctions.  *See* Fed. R. Civ. P. 11(b), Advisory Committee Notes (1993 Amendment).

## B. Procedural Requirements[8]

The party seeking sanctions must satisfy the Rule 5 service requirements when serving the opposing party with a motion for sanctions.  Fed. R. Civ. P. 11(c)(2).

---

[8] JC Lee also asserts that this Motion is a masked attempt to seek reconsideration of its prior motion. (Opp'n to Mot. for Sanctions 14.)  It is not.  Though POW's first motion was denied on procedural grounds, POW is entitled to file a second Rule 11 motion as JC Lee has failed to cease the violating conduct.

Per Rule 5, the moving party may mail its papers to the last known address of the opposing party in which case "service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). When properly served, the opposing party has twenty-one days to withdraw or correct its papers without penalty. Fed. R. Civ. P. 11(c)(2). If the moving party serves the opposing party by mail, "3 days are added after the period would otherwise expire." Fed. R. Civ. P. 6(d). Here, POW waited thirty-four days to file the Motion after serving it by first-class mail on April 7, 2020. Accordingly, the Motion is timely.

JC Lee argues that POW failed to provide notice of a "file-ready" motion and therefore, never triggered the safe harbor period. (Opp'n to Mot. for Sanctions 3–4 (citing *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1150 (9th Cir. 2002) ("The movant serves the allegedly offending party with a filing-ready motion as notice that it plans to seek sanctions.").) Rule 11 states that the motion "must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). The Ninth Circuit has strictly held that parties seeking sanctions must serve the motion prior to the safe harbor period. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001); *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998).

Here, JC Lee concedes that POW provided the "notice of motion" and "memorandum of points and authorities" but argues that POW violated the "file-ready" requirement by failing to include its declaration and renewed request for judicial notice. (Opp'n to Mot. for Sanctions 3.) In support of her argument, JC Lee claims that the Central District Local Rule 7-5 defines a "file ready" motion to include "evidence upon which the moving party will rely." (Opp'n to Mot. for Sanctions 8 (citing C.D. Cal. L.R. 7-5).) However, this local rule simply describes the types of pleadings allowed and references neither Rule 11 nor its "file-ready" requirement. Courts that have denied motions for sanctions for lack of notice have done so where the party seeking sanctions completely failed to provide notice of the motion before filing it with the court. *Radcliffe*, 254 F.3d 772, 789; *Barber*, 146 F.3d at 710–11.

1    Here, POW served the entire memorandum of points and authorities not to mention

2    the informal notice JC Lee has had for over seven months.  Thus, the Court finds that

3    POW has satisfied the notice requirement.

4         As POW has satisfied the procedural requirements of a Rule 11 motion, the

5    Court turns to the substantive merits of the Motion.

6    **C.    Frivolous**

7         The Court may sanction an attorney or party under Rule 11 for filing a pleading

8    or other paper that is "frivolous."  *Estate of Blue*, 120 F.3d at 985.  "Frivolous" filings

9    are those that are "both baseless and made without a reasonable and competent

10   inquiry."  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.

11   1990) (en banc); *see Holgate*, 425 F.3d at 676.

12        *1.    Baseless*

13        Claims barred on numerous occasions by res judicata are baseless.  *Buster v.*

14   *Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) (affirming the district court's

15   determination that a case barred by res judicata is frivolous).  JC Lee argues that her

16   arguments are not frivolous but in fact zealous lawyering on the part of her attorney.

17   (Opp'n to Mot. for Sanctions 22–24.)  In JC Lee's opposition, she (or her attorney)

18   argues that it "is simply not true" that multiple courts have found rights under the

19   1998 Agreement to be unenforceable and barred by res judicata and that no other case

20   dealt with the assignment of rights provision.  (Opp'n to Mot. for Sanctions 12, 21.)

21   This is a direct misrepresentation to the Court.

22        The Court has previously determined that all the claims in the FAC are barred

23   by res judicata.  As a matter of policy, the doctrine of res judicata seeks to prevent

24   expenditure of judicial resources on repeat litigation and fosters conclusive resolution

25   of disputes.  *In re Schimmels*, 127 F.3d at 881.  As federal courts around the country

26   have addressed this very issue for over a decade, res judicata bars this action.  Thus,

27   JS Lee's claims here are baseless.  *Buster*, 104 F.3d at 1190.

28

2.     *Without a Reasonable and Competent Inquiry*

Even if a matter is factually and legally baseless, the movant must establish that the matter was filed without a reasonable and competent inquiry to justify Rule 11 sanctions. *Townsend*, 929 F.2d at 1362. JC Lee asserts that a reasonable inquiry was undertaken prior to filing this action. (Opp'n to Mot. for Sanctions 22–24; *see* Decl. of Neville C. Johnson, ECF No. 40.)[9] JC Lee's attorney declares that he and his firm spent "substantial time" reviewing the facts of the case, the pleadings, the applicable law, and the application of Rule 11 sanctions and believes that the case has "strong merit." (Decl. of Neville C. Johnson ¶¶ 2, 3.) The Court does not find this one-page declaration persuasive. Regardless, the Court considers the reasonableness of the conduct, not the subjective intent of the pleader or movant. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986). The Court finds it completely unreasonable to file a suit premised on an issue debated and analyzed in more than five federal district courts over the last decade. *See Abadin*, 2010 WL 1257519, at *4 ("Given the pleading history here in this District, the Colorado State Court proceedings, the three companion actions in the Central District of California, the class action suit and settlement, and a 5 year bankruptcy case, it is now time to call a halt."); *SLMI I*, 2012 WL 4048871, at *7 ("The Court therefore concludes that there is a compelling public interest in bringing this matter to a close.") Filing such a claim could only have been accomplished without a competent and reasonable inquiry

As the matter is factually and legally baseless and filed without a reasonable and competent inquiry, the Court **GRANTS** the Motion for Sanctions on the ground that the filing is frivolous.

**D.     Improper Purpose**

POW also asserts that the FAC was filed to harass POW by generating negative media publicity. (Mot. for Sanctions 18–21.) The signer of any pleading certifies that

---

[9] POW objects to nearly the entirety of the declaration submitted by JC Lee in support of her opposition. (*See* Objs to Decl. of Neville C. Johnson, ECF No. 41.) To the extent the Court relies on evidence to which POW objects, the objections are **OVERRULED**.

the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."   Fed. R. Civ. P. 11(b)(1).  A signer's "purpose" is to be tested by objective standards.  *Townsend*, 929 F.2d at 1365.  POW claims JC Lee included sensational and inflammatory extraneous allegations to fuel the media fire.  (Mot. for Sanctions 19.)   POW references a Hollywood Reporter article to further argue that JC Lee notified the media one day after filing the complaint but failed to serve POW for more than two months.  (Mot. for Sanctions 21.)  JC Lee fails to address these arguments.  (Opp'n to Mot. for Sanctions 24–25.)  As certain allegations are unnecessary and JC Lee fails to oppose POW's argument that those allegations were included only to sensationalize the complaint, the Court finds that JC Lee's conduct seems to demonstrate an improper purpose.

Furthermore, when attorneys are experienced but file meritless cases, "a strong inference arises that their bringing of an action . . . was for an improper purpose." *Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*, 790 F.2d 1421, 1427 (9th Cir. 1986).  JC Lee retained two law firms to represent her in this matter, Freund Legal and Johnson and Johnson LLP.  Lead counsel of Freund Legal, Jonathan Freund, has been licensed with the California State Bar Association since 1991.[10]  Neville Johnson of Johnson and Johnson LLP has been licensed since 1975. Jonathan Freund signed JC Lee's FAC.  (FAC at 20.)  It suffices to say that JC Lee's counsel has sufficient experience to know that a case barred by res judicata time and time again should not be filed.  Accordingly, the Court finds that the case was filed for an improper purpose.  For this additional reason, the Court **GRANTS** the Motion for Sanctions.

---

[10] The Court *sua sponte* takes judicial notice of the publicly-available information on the California State Bar webpage.  Fed. R. Evid. 201.

**E.      Appropriate Sanctions**

The Court must now determine appropriate sanctions.  "The purpose of Rule 11 sanctions is to deter sanctionable conduct, rather than to compensate for it."  Fed. R. Civ. P. 11(c)(4).

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.   Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11(c)(1).  Furthermore, the "court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(2); *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, No. CV 02-5493-LGB (JWJx), 2003 WL 21982477, at *14 (C.D. Cal. Mar. 12, 2003); *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 632 (11th Cir. 2019) (affirming an award of the attorney's fees in addition to monetary sanction against the law firm raising objectively frivolous claims).

Ordinarily, the person who signed or otherwise "presented" the pleading or paper will be sanctioned for the violation—the lawyer, not the client.  Fed. R. Civ. P. 11(c)(4).  However, the party may be held liable if the Rule 11 violation is one other than or in addition to frivolous contentions of law.  Fed. R. Civ. P. 11(c)(5)(A); *Segan LLC v. Zynga Inc*, 131 F. Supp. 3d 956, 965 (N.D. Cal. 2015) (holding plaintiffs' attorneys jointly and severally liable for Rule 11 sanctions for frivolous lawsuit for $100,000 of the $1.2 million fee award); *Schutts v. Bentley Nev. Corp.*, 966 F. Supp. 1549, 1566 (D. Nev. 1997) ("apportioning responsibility for one-sixth of Defendants' litigation expenses between Plaintiff and his counsel"). Here, the Court finds that the case was frivolous and filed for an improper purpose.  Thus, the Court sanctions both JC Lee and her attorneys.

POW requests the Court grant five million dollars in sanctions to adequately deter JC Lee from filing such frivolous claims in the future. (Mot. for Sanctions 22–23.)  POW supports its argument by asserting that JC Lee recently inherited $50 to $70 million from Stan Lee's estate and sanctions of a smaller amount would not adequately prevent her from refiling. (Mot. for Sanctions 23 (citing Mike Barnes, Stan Lee, Marvel Comics' Real-Life Superhero, Dies at 95, The Hollywood Reporter (Nov. 12, 2018), https://www.hollywoodreporter.com/heat-vision/stan-lee-dead-marvel-comics-reallife-superhero-was-95-721450).)

The Ninth Circuit has instructed that "[i]f sanctions are warranted by those circumstances, the court should not waiver in imposing them." *Matter of Yagman*, 796 F.2d 1165, 1182 (9th Cir.), opinion amended on denial of reh'g sub nom. *In re Yagman*, 803 F.2d 1085 (9th Cir. 1986). The primary purpose of sanctions is to deter subsequent abuses. *Id*; see e.g. *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1140 (9th Cir. 2015) (upholding the district court's $200,000 sanction based on the court's inherent authority); *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 623 (2d Cir. 2018) (affirming the Southern District of New York's $2.7 million discovery sanction against a party for willfully engaging in spoliation). In determining the amount of sanctions, the Court considers:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amendments), Subdivisions (b) and (c); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1126 n.4 (9th Cir. 2002) (citing to the advisory committee notes of the 1993 Amendments).

Here, though JC Lee herself has not engaged in similar conduct previously, she is representing rights she alleges belong to SLMI, who has been involved in over a dozen lawsuit in this identical issue.   As litigation of this issue was certainly newsworthy, the Court finds that JC Lee had knowledge of the prior actions.  Indeed, at the Court's hearing on the motion for sanctions, JC Lee claimed to have an active interest in Stan Lee's rights and stated that she communicated with her attorneys regarding the litigation.  Thus, JC Lee is a negligent, if not willful, participant in the frivolous and improper filings.

Furthermore, as enumerated above, cases based on the 1998 Agreement were filed across the country starting over a decade ago.  The very issue barred by res judicata is integral to each lawsuit, including the instant matter.   Thus, the sanctionable conduct persist as a pattern and infects the entire pleading.  Importantly, as the Court emphasized in the hearing, courts across the nation have expended significant resources adjudicating these matters.  The efforts of counsel and JC Lee to relitigate the issues demonstrate a lack of respect for the decisions of the federal judiciary.  The Court will consider this as well.

Finally, as JC Lee stated at the hearing, wealth is relative.  The Court considers JC Lee's financial resources in determining a sanction amount that will adequately deter her from repetition in the same case.  *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1305 (Fed. Cir. 2009) ("monetary sanctions must be tailored to a party's ability to pay") (collecting cases from the Second, Fifth, Seventh, and Eleventh Circuits).  POW asserts that she inherited $50 to $70 million from Stan Lee's estate and JC Lee did not refute this assertion, either in her opposition or at oral argument.   Nor does she contest the five million dollar sanction amount in her opposition.  Indeed, her counsel did not argue that such an amount would be excessive during the hearing despite the oral argument by Mr. Knopfle that POW meaningfully chose the five million dollar amount to deter future filings.  (*See* Opp'n to Sanctions.) *C.f. Jeff Tracy, Inc. v. Scottsdale Ins. Co.*, No. SA-CV-14:1532-DOC-AJWX, 2015

WL 12765541, at *12 (C.D. Cal. Dec. 7, 2015) (considering plaintiff's counsel's declaration demonstrating extreme financial hardship). Thus, the Court will consider JC Lee's financial resources in determining the amount in sanctions.

Considering the factors outlined in the advisory committee notes, the requested sanction amount by POW, JC Lee's prior engagement in this matter and her financial resources, the Court, intending to deter both JC Lee and her attorneys, **SANCTIONS** JC Lee in the amount of **one million dollars** and holds her attorneys **JOINTLY AND SEVERALLY** liable for **twenty-five percent** of the amount, or $250,000. The sanctions shall be paid to the Central District of California as a penalty. Fed. R. Civ. P. 11(c)(4). The Court finds this amount consistent with the Rule 11 considerations and commensurate with the egregiousness of the conduct as well as the burden this suit has imposed. The Court further permits counsel for POW to file a motion for attorney's fees. Fed. R. Civ. P. 11(c)(2).[11]

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** POW's Motion to Dismiss **WITH PREJUDICE**. (ECF No. 20.) The Court will enter Judgment. Furthermore, the Court **GRANTS** POW's Motion for Sanctions. (ECF No. 35.) The Court **SANCTIONS** JC Lee in the amount of **one million dollars** and holds her attorneys **JOINTLY and SEVERALLY** liable for **twenty-five percent** of the amount, or $250,000. The sanctions shall be paid to the court. Finally, POW may file a motion for attorney's fees for its fees expended in bringing the second motion for sanctions no later than **July 22, 2020**. Failure to file the motion for attorney's fees by the court's deadline may be deemed as a waiver of POW's right to obtain attorney's fees and costs with respect to its Rule 11 motion.

---

[11] JC Lee asserts that she is entitled attorney's fees for this second motion for sanctions. (Opp'n to Mot. for Sanctions 25–26.) As she is not the prevailing party, the Court **DENIES** her request.

1    Stan Lee, a superhero in his own right, served to inspire the everyday hero.  The
2    Court urges parties to treat his legacy with respect and cease engaging in meritless
3    litigation.

4
5    **IT IS SO ORDERED**

6
7    June 25, 2020
8
9                              _____
10                                  **OTIS D. WRIGHT, II**
11                             **UNITED STATES DISTRICT JUDGE**
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28